W. Chris Wicker  (State Bar No. 1037)
WOODBURN AND WEDGE
6100 Neil, Road, Suite 500
Post Office Box 2311
Reno, Nevada 89511
Telephone:  (775) 688-3000
Facsimile: (775) 688-3088
cwicker@woodburnandwedge.com

Attorneys for National Council of
La Raza, Las Vegas Branch of the NAACP
(Branch 1111), Reno-Sparks Branch of
the NAACP (Branch 1112)

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), and RENO-SPARKS BRANCH OF THE NAACP (BRANCH 1112),<br><br>                Plaintiffs,<br><br>        v.<br><br>ROSS MILLER, *in his official capacity as Secretary of State of the State of Nevada;* and MICHAEL WILLDEN, *in his official capacity as Director of the Department of Health & Human Services of the State of Nevada,*<br><br>                Defendants. | CIVIL ACTION NO.<br><br>_____<br><br>**COMPLAINT** |

Plaintiffs National Council of La Raza ("NCLR"), Las Vegas Branch of the NAACP ("Las Vegas NAACP"), and Reno-Sparks Branch of the NAACP ("Reno-Sparks NAACP"), by and through the undersigned counsel, for their Complaint against defendants Ross Miller, in his official capacity as Secretary of State of Nevada ("SOS"), and Michael Willden, in his

official capacity as Director of the Department of Health and Human Services of Nevada ("DHHS"), allege and state as follows.

## JURISDICTION AND VENUE

1.      This action is brought pursuant to 42 U.S.C. § 1973gg-9(b).

2.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a).

3.      This Court has personal jurisdiction over each defendant because each is a citizen of the State of Nevada.

4.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district and the principal place of business of each defendant is in this district.

5.      This action may be filed in this division, as the events giving rise to this action arose in Clark County, Washoe County, and Carson City.

6.      As described in detail below, an actual and justiciable controversy exists between plaintiffs and defendants.

## INTRODUCTION

7.      This action seeks declaratory and injunctive relief to redress defendants' past and ongoing violations of their obligations under Section 7 of the National Voter Registration Act of 1993 (the "NVRA"), 42 U.S.C. § 1973gg-5. The NVRA was adopted with widespread bipartisan support as part of an effort to make voter registration more widely available and accessible, thereby increasing the number of properly registered eligible voters for federal elections. 42 U.S.C. § 1973gg(b)(1). The statute also reflects Congress' intent to combat the disproportionate harm to voter participation by various groups, including racial minorities, caused by discriminatory and unfair registration laws and procedures. 42 U.S.C. § 1973gg(a)(3).

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-2-

8.      Section 7 of the NVRA reflects Congress's objective to ensure that registration "will be convenient and readily available [for] the poor and persons with disabilities who do not have driver's licenses and will not come into contact with the other principle [sic] place to register under this Act [motor vehicle agencies]."  H. R. Rep. No. 103-66, at 15 (1993) (House-Senate Conference Report).  To that end, Section 7 designates all public assistance offices as voter registration agencies.  42 U.S.C. § 1973gg-5(a)(2)(A).  Like all voter registration agencies, under the NVRA, public assistance offices must distribute a voter registration application and provide voter registration services with each application, recertification, renewal, or change of address, unless the applicant, in writing, declines to register to vote.  42 U.S.C. § 1973gg-5(a)(6).

9.      In particular, Section 7 of the NVRA mandates that all public assistance offices in a covered state provide a form that asks clients whether they wish to register to vote and includes certain specified information concerning the voter registration process, assist clients in completing a voter registration application (unless a client declines such assistance), and accept completed voter registration forms for delivery to the appropriate elections authority. 42 U.S.C. § 1973gg-5(a)(4)(A); 42 U.S.C. § 1973gg-5(a)(6)(B)-(C).

10.      "[N]oncompliance with section 7 [of the NVRA] means the disenfranchisement of millions of low income citizens and a widening of the gap between the registration rates of high- and low-income individuals."  *Hearing on the National Voter Registration Act, Section 7:  The Challenges that Public Assistance Agencies Face*, 110th CONG., 2d Sess. 42-796 (2008) (United States Representative Zoe Lofgren, former Chairwoman of the House Subcommittee on Elections).

11.      Nevada's failure to comply with Section 7 excludes from the political participation many of the state's most vulnerable citizens, citizens on whose well-being the state's policy decisions have an especially acute impact.  As a direct result of non-compliance

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-3-

with Section 7, thousands of low income citizens have been disenfranchised in Nevada. Nevada's systemic violations of Section 7 – caused by flawed practices and policies, insufficient oversight and inadequate enforcement – have contributed to an obvious income-based "voter registration gap." According to the United States Census data from 2010, only 47.6% of Nevada's low-income eligible citizens were registered to vote, as compared to 72.4% of high-income eligible citizens – a "voter registration gap" of 24.8%. This "voter registration gap" reveals the disenfranchisement of tens of thousands of eligible low-income Nevada citizens.

12.    Nevada's ineffectual public assistance voter registration program is the result of years of neglect. According to data reported to the Federal Election Assistance Commission ("EAC"), the state reached a peak of 39,444 voter registration applications through public assistance agencies during the 2001-2002 reporting period. Thereafter, voter registrations decreased substantially, with Nevada reporting a mere 1,677 applications to the EAC for the most recent (2009-2010) reporting period. Put another way, Nevada's own figures indicate that the state registered only 1/20[th] as many voters through public assistance agencies in 2009-2010 as it did eight years earlier. This drop off is particularly striking for several reasons. First, Nevada's population has increased dramatically over that period; the 2010 Census showed population growth of approximately 35% since 2000. Second, the size of the population on public assistance has increased even more substantially. For example, the number of monthly Food Stamp applications more than doubled between the 2001-2002 and 2009-2010 periods. Taken together, these numbers paint a dismal picture of Nevada's compliance with the NVRA's public assistance agency registration requirements.

13.    Nevada is well-aware of its non-compliance with the NVRA. Indeed, the Secretary of State's office was first contacted about NVRA violations in 2008, at which point the organization Dēmos advised the State of findings indicating non-compliance with the

public agency requirements of the NVRA.  Despite that knowledge and despite Demos'
efforts to assist the State, defendants have not taken sufficient steps to ensure compliance, as
demonstrated by a field investigation conducted in December 2011.  That investigation, which
included surveys at various public assistance agencies in Nevada, revealed widespread non-
compliance with the state's voter registration responsibilities.  Indeed, four out of five
interviewed individuals who specifically asked to register to vote during their interaction with
DHHS offices were not even given a voter registration application.

14.     As a direct result of defendants' ongoing violations of Section 7 of the NVRA,
thousands of eligible citizens have been denied the opportunity to register to vote and have
thereby been deprived of the right to vote.  To address defendants' chronic violations,
organizations such as plaintiffs NCLR, Las Vegas NAACP, and Reno-Sparks NAACP and
their members have expended and will continue to expend substantial resources to plan and
execute voter registration initiatives that target public assistance clients.  But for defendants'
violations, organizations such as plaintiffs NCLR, Las Vegas NAACP, and Reno-Sparks
NAACP would not have diverted their limited resources to such voter registration initiatives.

15.     Plaintiffs bring this action for declaratory and injunctive relief, asking this
Court to order defendants to comply with Section 7 of the NVRA.  Because the deadline to
register for the 2012 federal election is October 6, 2012, plaintiffs intend to ask this Court to
order defendants to immediately develop and implement remedial practices and policies to
ensure compliance with the NVRA well in advance of that registration deadline.

16.     Simply stated, plaintiffs ask this Court to order defendants to meet their
federally-required responsibilities to provide voter registration opportunities and assistance to
tens of thousands of eligible but unregistered low income Nevada citizens so that they can
exercise one of their most fundamental rights and participate in our democratic system.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

**PARTIES**

17.    Plaintiff National Council of La Raza ("NCLR") is a 501(c)(3) not-for-profit corporation, with its principal place of business located in Washington, DC.  NCLR has committed and continues to commit time and personnel to conducting voter registration drives in the State of Nevada.  The primary purpose of this activity is to reach out to the traditionally underserved and underperforming (in terms of levels of voter participation) communities in the state with a focus on the Latino community.

NCLR's constituency includes individuals and families who receive and/or will receive, and/or have applied and/or will apply for, public assistance benefits in Nevada, including the Supplemental Nutrition Assistance Program ("SNAP" or "Food Stamps"), Medicaid, Temporary Assistance for Needy Families ("TANF"), and/or Women, Infants, and Children ("WIC").  Many of NCLR's voter registration efforts focus on registering voters in low-income neighborhoods, including the registration of individuals who receive or apply for public assistance benefits.  Moreover, the voter registration efforts include updating the voter registration address of previously registered voters who have moved.  Although NCLR encourages its constituency to register to vote, that constituency includes individuals who have applied and/or will apply for, and/or receive and/or will receive, public assistance benefits who are not registered to vote or will have moved since registering to vote and will not have updated their voter registration address.

18.    Plaintiff Las Vegas Branch of the NAACP (Branch 1111) ("Las Vegas NAACP") is a 501(c)(4) non-profit organization registered with the state of Nevada and chartered by the National Association for the Advancement of Colored People, with its principal place of business located in Las Vegas, Nevada.  The Las Vegas NAACP has more than 700 members, including members who receive and/or will receive, and/or have applied and/or will apply for, public assistance benefits in Nevada, including SNAP, Medicaid,

TANF, and/or WIC.  The Las Vegas NAACP encourages voter registration and participation, particularly among minority and low-income citizens, and has committed and continues to commit time and personnel to conducting voter registration drives in the State of Nevada. Those voter registration efforts focus on registering voters in minority and low-income neighborhoods, including the registration of individuals who receive or apply for public assistance benefits.  Moreover, the voter registration efforts include updating the voter registration address of previously registered voters who have moved.  Although the Las Vegas NAACP encourages its members to register to vote, Las Vegas NAACP has members who have applied and/or will apply for, and/or receive and/or will receive, public assistance benefits who are not registered to vote or will have moved since registering to vote and will not have updated their voter registration address.

19.    Plaintiff Reno-Sparks Branch of the NAACP (Branch 1112) ("Reno-Sparks NAACP") is a 501(c)(4) non-profit organization registered with the state of Nevada and chartered by the National Association for the Advancement of Colored People, with its principal place of business located in Reno, Nevada.  The Reno-Sparks NAACP has approximately 150-200 members, including, upon information and belief, members who receive and/or will receive, and/or have applied and/or will apply for, public assistance benefits in Nevada, including SNAP, Medicaid, TANF, and/or WIC.  The Reno-Sparks NAACP encourages voter registration and participation, particularly among minority and low-income citizens, and has committed and continues to commit time and personnel to conducting voter registration drives in the State of Nevada.  Those voter registration efforts focus on registering voters in minority and low-income neighborhoods, including the registration of individuals who receive or apply for public assistance benefits.  Moreover, the voter registration efforts include updating the voter registration address of previously registered voters who have moved.  Although the Reno-Sparks NAACP encourages its

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

1   members to register to vote, the Reno-Sparks NAACP has members who have applied and/or

2   will apply for, and/or receive and/or will receive, public assistance benefits who are not

3   registered to vote or will have moved since registering to vote and will not have updated their

4   voter registration address.

5        20.    Defendant Ross Miller is the Secretary of State for the State of Nevada.  Mr.

6   Miller is the chief election official in Nevada and is responsible for conducting and

7   overseeing federal elections in the State.  In his official capacity, among other things, Mr.

8   Miller promulgates regulations; issues directives and advisories regarding procedures for

9   conducting federal elections; prescribes voter registration forms and makes them available for

10  distribution; establishes and maintains statewide qualified voter files; develops and

11  implements rules, practices and policies to enforce laws governing federal elections;

12  investigates, or causes to be investigated, compliance with governing election laws; and is

13  responsible for ensuring compliance with the NVRA.  He is the "chief election official"

14  responsible for coordination of Nevada's responsibilities under the NVRA.

15       21.    Defendant Michael Willden is the Director of the Nevada Department of

16  Health & Human Services ("DHHS").  DHHS administers the provision of benefits under

17  SNAP, Medicaid, and TANF through its Division of Welfare and Supportive Services

18  ("DWSS"), which is organized into local county offices around the State.  DHHS administers

19  the WIC program through its Nevada State Health Division ("NSHD"), Bureau of Child,

20  Family, and Community Wellness ("BCFCW").

### FACTUAL ALLEGATIONS

#### National Voter Registration Act of 1993

22       22.    The National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg

*et seq.*, has as its principal purpose "establish[ing] procedures that will increase the number of

1    eligible citizens who register to vote in elections for Federal office." 42 U.S.C. §

2    1973gg(b)(1).

3        23.    In furtherance of that principal purpose, the NVRA mandates, among other

4    things, that "each state shall designate as voter registration agencies – (A) all offices in the

5    state that provide public assistance." 42 U.S.C. § 1973gg-5(a)(2).

6

7        24.    At each voter registration agency, Section 7 of the NVRA requires that "the

8    following services shall be made available:

9        "(i)    Distribution of mail voter registration application forms . . . .

10       (ii)    Assistance to applicants in completing voter registration application forms,

11           unless the applicant refuses such assistance.

12       (iii)   Acceptance of completed voter registration application forms for transmittal to

13           the appropriate State election official."

14   42 U.S.C. § 1973gg-5(a)(4)(A); 42 U.S.C. § 1973gg-5(a)(6).  Completed voter registration

15

16   applications must be "transmitted to the appropriate State election official not later than 10 days

17   after the date of acceptance," 42 U.S.C. § 1973gg-5(d)(1), or within 5 days, if accepted "5 days

18   before the last day for registration to vote in an election." 42 U.S.C. § 1973gg-5(d)(2).   These

19   services must be offered by all public assistance offices "with each application for . . . [public]

20   assistance, and with each recertification, renewal, or change of address form relating to . . .

21   [public] assistance." 42 U.S.C. § 1973gg-5(a)(6).

22

23       25.    Section 7 of the NVRA also requires all public assistance offices to distribute

24   with each application for services, with each recertification or renewal, and with each change of

25   address form, a voter preference form. 42 U.S.C. § 1973gg-5(a)(6)(B). The voter preference

26   form provides specific information to clients regarding the voter registration process and asks,

27   "[i]f you are not registered to vote where you live now, would you like to apply to register to

28   vote here today?" *Id.* The specific information on the voter preference form includes, for

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

example, an explanation that the decision to register to vote will not affect eligibility for public assistance or the amount of benefits.  42 U.S.C. § 1973gg-5(a)(6)(B)(ii).

26.     The public assistance agency must provide that client with "the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance."  42 U.S.C. § 1973gg-5(a)(6)(C).

27.     Section 7's voter registration requirements (including the requirements regarding distribution of registration forms and voter preference forms, and the provision of assistance in completing a registration form) apply both to public assistance clients whose applications for public assistance, renewals or recertifications, or changes of address are processed entirely or in part through in-person transactions at DHS offices, and to clients whose applications for public assistance, renewals or recertifications, or changes of address are processed entirely through remote transactions (e.g., telephone, mail, or internet).

28.     The NVRA requires that "[e]ach State shall designate a State officer or employee as the chief State election official to be responsible for coordination of State responsibilities" under the NVRA.  42 U.S.C. § 1973gg-8.  As previously noted, in Nevada, the "chief State election official" is defendant Miller, the Secretary of State.

29.     The NVRA creates a private right of action for "a person who is aggrieved by a violation" of the NVRA.  42 U.S.C. § 1973gg-9(b)(1).  The NVRA requires that, prior to bringing an action to enforce the NVRA, an aggrieved person must give written notice to the "chief State election official" to identify the violation(s) and to provide the State with an opportunity to cure the violation(s) prior to the commencement of an action.

**Nevada Voter Registration Statutes & Regulations**

30     The State of Nevada is subject to the requirements of the NVRA. The NVRA applies to all States except a select few who qualify for one of the limited exclusions

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

contained in the Act. 42 U.S.C. § 1973gg-2. The State of Nevada does not qualify for any of the exclusions.

31.    Nevada has adopted statutes and regulations to implement the NVRA.

32.    Nevada has designated the Secretary of State as the chief state election official responsible for coordinating the responsibilities of the State under the NVRA, pursuant to the requirement of Section 10 of the NVRA, 42 U.S.C. § 1973gg-8, that each state designate such an official. Nev. Rev. Stat. § 293.124.

33.    Nevada law also requires each voter registration agency to designate one employee to be responsible for ensuring compliance with the NVRA, and that employee must ensure the provision of NVRA training to employees every six months and oversee the provision and collection of voter registration forms, including ensuring that the agency maintains an adequate supply of forms and other materials related to voter registration. Nev. Admin. Code § 293.4105. The Secretary of State also has responsibility for ensuring annual training to employees and provision of up-to-date training materials. *Id.*

34.    Nev. Rev. Stat. § 293.504 requires voter registration agencies to "distribute applications to register to vote which may be returned by mail with any application for services or assistance from the agency or submitted for any other purpose and with each application for recertification, renewal or change of address submitted to the agency that relates to such services, assistance or other purpose" unless the "person declines to register to vote and submits to the agency a written form that meets the requirements of 42 U.S.C. § 1973gg-5(a)(6)." Nev. Rev. Stat. § 293.504(2)-(3).

35.    Nevada law also requires voter registration agencies to "[p]rovide the same amount of assistance to an applicant in completing an application to register to vote as the agency provides to a person completing any other forms for the agency." Nev. Rev. Stat. § 293.504(2)(c).

36.     Each voter registration office must accept applications to register to vote, NEV. REV. STAT. § 293.504(2)(d), and transmit any such applications to the county clerk within 10 days after the application is accepted.  NEV. REV. STAT. § 293.504(4).  The applications must be forwarded daily during the 2 weeks immediately preceding the fifth Sunday preceding an election.  *Id.*

37.     Nevada voter registration agencies also must "[p]ost in a conspicuous place, in at least 12-point type, instructions for registering to vote," NEV. REV. STAT. § 293.504(2), and "place in a conspicuous position in each of its offices a sign which indicates that a person may register to vote in that office."  NEV. ADMIN. CODE § 293.410(1).

38.     Nevada has designated each office that provides public assistance as a voter registration agency.  NEV. REV. STAT. § 293.504(1)(a).

**Failure to Offer Voter Registration Opportunities to Public Assistance Agency Clients**

39.     Nevada must comply with the requirements of the NVRA.

40.     Defendant Miller, as Secretary of State, is the chief election official responsible for ensuring Nevada's compliance with the NVRA.  Among other things, Mr. Miller is responsible for ensuring that voter registration agencies, including offices through which persons apply for, recertify, renew, or change their addresses for public assistance benefits provide the voter registration services mandated by Section 7 of the NVRA.

41.     DHHS is a state agency responsible for the administration of public assistance in the State of Nevada, including, but not limited to, the administration of the SNAP, Medicaid, TANF, and WIC programs.  In particular, the provision of benefits under SNAP, Medicaid, and TANF is administered by DHHS's Division of Welfare and Supportive Services, which is organized into local county offices around the State.  The WIC program is operated through DHHS's Nevada State Health Division, Bureau of Child, Family, and Community Wellness.  As a result, Nevada DHHS local offices, including DWSS and

BCFCW offices, are mandatory voter registration agencies under Section 7 of the NVRA.

Defendant Willden, as Director of DHHS, is a state official responsible for ensuring that the

registration opportunities mandated by Section 7 of the NVRA are available through DHHS

and its relevant divisions.

42.     There is widespread ongoing noncompliance with the requirements of Section

7 with regard to the administration of public assistance programs by the State of Nevada,

through its DHHS public assistance offices.  Defendants have violated, and unless enjoined

will continue to violate, Section 7 of the NVRA by failing to provide persons who apply,

recertify, renew, or change their addresses in connection with public assistance benefits with a

voter registration application, a voter preference form, and assistance in completing a voter

registration application.  These failures also violate Nevada law implementing the NVRA.

NEV. REV. STAT. § 293.504.

43.     United States Census Bureau data strongly suggest that Nevada public

assistance offices are not performing their voter registration obligations under the NVRA.

According to the November 2010 United States Census Bureau Current Population Survey, in

2010, only 47.6% of eligible Nevada citizens living in a household with a yearly income of

less than $25,000 were registered to vote compared to 72.4% of eligible citizens living in a

household with a yearly income of more than $100,000 – a "voter registration gap" of 24.8%.

44.     Nevada's own reports to the U.S. Election Assistance Commission ("EAC")

reveal that Nevada public assistance offices received only 1,677 voter registration

applications in the 2009-2010 reporting period.  This represents a 95.7 percent decline since

2001-2002, when Nevada reported 39,444 registrations from public assistance offices.  By

contrast, following recent reforms in Ohio and Missouri to comply with the NVRA, the

number of voter registrations originating at public assistance agencies in those states has

increased dramatically.  Further, the overall trend in voter registration through public

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

assistance agencies in Nevada has been negative since implementation of the NVRA. The number of voter registration applications through public assistance agencies reported to the EAC during each reporting period is as follows:

| Year | Public Assistance Voter Reg. Applications |
|------|-------------------------------------------|
| 1995-1996 | 13,200 |
| 1997-1998 | No report |
| 1999-2000 | 2,883 |
| 2001-2002 | 39,444 |
| 2003-2004 | 6,389 |
| 2005-2006 | 3,307 |
| 2007-2008 | 4,301 |
| 2009-2010 | 1,677 |

45.    In 2008, the organization Dēmos approached Nevada about problems involving the state's compliance with the NVRA. In response to these discussions, Defendant Miller's office issued guidelines intended to improve compliance with the NVRA's strictures. *See Required Voter Registration Services in Agency Sites – Overview of Suggested Procedures*, STATE OF NEVADA, OFFICE OF THE SECRETARY OF STATE, dated Feb. 17, 2009. The policy guidance set forth certain procedures for training, employee responsibilities, form completion, and local office administrative responsibilities. It also noted "necessary policy changes" within DHHS, in particular the establishment of an Agency NVRA Coordinator for DHHS and the designation of Local NVRA Coordinators for each local voter registration agency, as well as procedures for data collection and monitoring, storage of voter preference forms, and maintenance of voter registration supplies. Despite this policy guidance, however,

DHHS has not taken serious steps to comply with the policy, and the Secretary of State's office has not taken adequate steps to ensure compliance.

46.     Recent interviews with clients and workers at public assistance offices indicate that Nevada public assistance offices regularly fail to offer voter registration.  In December 2011, interviews of public assistance clients and state workers at nine DHHS and WIC offices in Nevada's primary population centers of Carson City, Las Vegas, and Reno, as well as observations at those offices, confirmed that Nevada is violating Section 7 of the NVRA.

(a) *Failure to offer voter registration opportunities.*  Of the fifty-one public assistance clients interviewed following a covered transaction, only twelve of the interviewees (less than 25%) had been asked by office staff whether they wanted to register to vote.  Even more egregious was the service (or lack thereof) received by the five clients who informed DWSS and/or WIC that they wanted to register to vote by checking "Yes" to the voter preference question.  Of those five, only one received a voter registration application.  An office employee only spoke to two of those five clients about voter registration at all.  Finally, four clients left the voter preference question blank, and only one of them was asked by an employee if he or she would like to register to vote.

(b) *Failure to distribute voter registration applications.*  Office staff indicated that it was standard procedure not to ask clients if they wished to register to vote.  In each DWSS or WIC office visited, the clerks stated that voter registration applications are provided only to clients who check "Yes" in response to the question whether they "would…like to register to vote here today," despite the NVRA and Nevada law requirement that all persons engaging in covered transactions receive a voter registration form application unless they specifically decline, in writing, to receive such an application.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-15-

(c) *Failure to keep voter registration applications and materials in supply and generally available*.  Two of the sites visited did not have any voter registration applications to provide to clients who engaged in transactions covered by the NVRA.  One (WIC Sunrise Children's Foundation) had not had voter registration forms for over one year, while the other (WIC Flamingo) had not had them for over two years.  The failure to stock voter registration forms itself is a violation of the NVRA and state law and also shows a lack of attention to compliance with voter registration rules.  Moreover, none of the sites visited displayed voter registration applications in their waiting areas.

(d) *Failure to post information and instructions about registering to vote at the public assistance offices*.  Only two of the nine sites had signs posted informing clients they could register to vote, and none of the sites displayed instructions on how to register to vote, despite Nevada laws and regulations requiring voter registration agencies to post such information.

47.    On May 10, 2012, a letter was sent to defendant Miller, on behalf of the "National Council of La Raza, Las Vegas Branch of the NAACP (Branch 1111), and Reno-Sparks Branch of the NAACP (Branch 1112), persons eligible to register to vote who they represent, and others similarly situated" to "provide written notice that the State of Nevada is not in compliance with Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5."  The notice stated that, unless Nevada implemented a plan to remedy the violations of the NVRA within 20 days, NCLR, the Las Vegas NAACP, and the Reno-Sparks NAACP would commence litigation.  (A copy of the May 10, 2012 notice letter is attached hereto as **Exhibit** A.)  Defendant Willden was sent a copy of the notice on the same day.  The violations of the NVRA described in the notice letter have not been remedied.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-16-

48.     On May 22, 2012 a representative from the Nevada Secretary of State's Elections Division contacted a representative of plaintiffs, seeking an extension of time in which to respond to the May 10 notice letter and seeking to delay initial meetings with state officials until after the June 12 primary.  In a May 24 e-mail response to this request, plaintiffs' representatives agreed to permit the delay in meeting with state elections officers, provided that the state (1) provide a current organizational chart for the DHHS, the DWSS, and WIC, as well as any management evaluation forms for those Departments/Divisions, and (2) arrange a meeting with the person or persons within DHHS with the most knowledge regarding NVRA implementation on or before the first week in June.  On June 5, the Nevada Secretary of State's Elections Division responded to the May 24 proposal, indicating that they would not comply with the request.

### Harm to NCLR's Voter Registration Efforts.

49.     NCLR is the largest national Latino civil rights and advocacy organization in the United States.  As a means of improving opportunities for Hispanic Americans, NCLR has been a strong advocate for citizens to participate in the electoral process.  NCLR encourages Hispanic voter registration and participation, particularly among low-income citizens, including through a campaign called "ya es hora ¡VEY Y VOTA" ("It's Time, Go Vote").  NCLR has committed and continues to commit time and personnel to conducting voter registration drives in the State of Nevada.  The primary purpose of this activity is to reach out to the traditionally underserved and underperforming (in terms of levels of voter participation) communities in the state with a focus on the Latino community.

50.     NCLR regularly has conducted and continues to conduct voter registration drives in the State of Nevada (including, for example, registering over 21,500 voters in Nevada since 2008).  NCLR conducts voter registration activities in two ways.  The first is through attending community events such as music festivals, sporting events, cultural fairs

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

and national holidays and registering people as they congregate in crowds. NCLR also registers people to vote going door-to-door using the Voter Activation Network (VAN), which allows NCLR to see which houses do and do not have registered voters in cities and neighborhoods. Many of those voter registration efforts focus on registering voters in low-income neighborhoods. Moreover, the voter registration efforts include updating the voter registration address of previously registered voters who have moved.

51.    Due to defendants' ongoing violations of the NVRA, NCLR has expended additional resources, including staff and volunteer time, on efforts to assist individuals with voter registration (including updating prior voter registration) who should have been offered voter registration through Nevada's public assistance offices. NCLR reasonably anticipates, based on defendants' ongoing violations of the NVRA, that this diversion of resources to registration of individuals who should have been offered registration through public assistance offices will continue. These diverted resources otherwise would have been and would be spent on other activities of NCLR, including voter education and information, as well as voter registration efforts intended to register persons the NVRA is not designed to cover. These injuries to NCLR will continue in the future until defendants' violations of their NVRA obligations are remedied.

**Harm to the Las Vegas NAACP's Voter Registration Efforts and Its Members**

52.    Las Vegas NAACP seeks to achieve equality of rights in and around the Las Vegas area. It especially encourages participation in federal and state elections by traditionally underrepresented groups. Nevada's continuing violations of Section 7 of the NVRA have frustrated the Las Vegas NAACP's efforts, as many low-income citizens and citizens of color have been deprived of opportunities to register to vote at DHHS offices. But for defendants' violations of the NVRA, Las Vegas NAACP volunteers and members would

not have expended as much of their limited resources assisting these Nevada citizens with

voter registration.

53.    The Las Vegas NAACP organizes and conducts numerous voter registration

drives in Nevada (including, for example, conducting approximately four or five major and

ten to twelve smaller voter registration drives in Nevada in the last three years).  Las Vegas

NAACP voter registration drives have focused on minority and low income communities,

including significant efforts directed at the historic Westside of Las Vegas.  It devotes

substantial resources to voter registration drives every year, including recent and present

efforts registering voters at grocery stores, parks, and libraries in low-income neighborhoods.

In promoting these drives, Las Vegas NAACP organizers target, among others, families who

live in low income housing.  If public assistance offices throughout Nevada were complying

with the requirements of the NVRA, the Las Vegas NAACP would expend fewer resources

on voter registration drives in communities where DHHS clients should be offered voter

registration opportunities at DHHS offices.  But for defendants' violations of Section 7 of the

NVRA, the Las Vegas NAACP would be able to allocate substantial resources to other

activities central to its mission.  This diversion of the Las Vegas NAACP's limited resources

will continue unless and until defendants' violations are remedied.

54.    In addition, Las Vegas NAACP members, including individuals who have not

been and will not be offered the opportunity to register to vote through DHHS offices, are

harmed by defendants' violations of the law, and will continue to be so harmed until

defendants are required to comply with Section 7 of the NVRA.  This includes members who

are not registered to vote and members who are registered to vote but have moved or will

move and thus have an interest in promptly receiving information and assistance regarding

changing their voter registration to match their new address.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

**Harm to the Reno-Sparks NAACP's Voter Registration Efforts and Its Members**

55.     Reno-Sparks NAACP seeks to achieve equality of rights among Nevada residents in and around the Reno-Sparks area.  It especially encourages participation in federal and state elections by traditionally underrepresented groups.  Nevada's continuing violations of Section 7 of the NVRA have frustrated the Reno-Sparks NAACP's efforts, as many low-income citizens and citizens of color have been deprived of opportunities to register to vote at DHHS offices.  But for defendants' violations of the NVRA, Reno-Sparks NAACP volunteers and members would not have expended as much of their limited resources assisting these Nevada citizens with voter registration.

56.     The Reno-Sparks NAACP organizes and conducts numerous voter registration drives in Nevada (including, for example, conducting substantial voter registration efforts in Washoe County during each election cycle since 2004).  Reno-Sparks NAACP voter registration drives have focused on minority and low-income communities.  It devotes substantial resources to voter registration drives every year, including recent and present efforts working with student groups and faith-based groups to conduct voter registration, specifically targeting low-income populations based on Census data.  In promoting these drives, Reno-Sparks NAACP organizers target, among others, families who live in low-income housing.  If public assistance offices throughout Nevada were complying with the requirements of the NVRA, the Reno-Sparks NAACP would expend fewer resources on voter registration drives in communities where DHHS clients should be offered voter registration opportunities at DHHS offices.  But for defendants' violations of Section 7 of the NVRA, the Reno-Sparks NAACP would be able to allocate substantial resources to other activities central to its mission.  This diversion of the Reno-Sparks NAACP's limited resources will continue unless and until defendants' violations are remedied.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

57.     In addition, Reno-Sparks NAACP members, including individuals who have not been and will not be offered the opportunity to register to vote through DHHS offices, are harmed by defendants' violations of the law, and will continue to be so harmed until defendants are required to comply with Section 7 of the NVRA.  This includes members who are not registered to vote and members who are registered to vote but have moved or will move and thus have an interest in promptly receiving information and assistance regarding changing their voter registration to match their new address.

## CLAIMS FOR RELIEF

**Violation of Section 7 of the National Voter Registration Act of 1993**

58.     Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 57 as if fully set forth herein.

59.     As a consequence of their past and continuing failures to provide voter registration materials and services required by Section 7, defendants have violated and continue to violate the NVRA.

60.     Plaintiffs are aggrieved by defendants' past and continuing violations of the NVRA, and have no adequate remedy at law.  Declaratory and injunctive relief are required to remedy defendants' past and continuing violations of the NVRA and to ensure defendants' future compliance with the NVRA.

## PRAYERS FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court enter judgment in their favor and enter an order:

(i)     Declaring, pursuant to 28 U.S.C. § 2201 and 42 U.S.C. § 1973gg-9(b)(2), that defendants have violated Section 7 of the NVRA, 42 U.S.C. § 1973gg-5, by failing to provide the NVRA-required voter registration materials and services through public assistance offices, including DWSS and BCFCW;

(ii)    Enjoining defendants, their officers, agents servants, employees and successors in office, and all persons in active concert or participation with them, from failing to develop, implement and enforce practices and policies to ensure compliance with Section 7 of the NVRA, 42 U.S.C. § 1973gg-5;

(iii)    Directing defendants, under a court-approved plan with appropriate mandatory reporting and monitoring requirements, to take all actions necessary to remedy the past and continuing violations of Section 7 of the NVRA, including, without limitation, ensuring that all persons affected by defendants' violations of Section 7 of the NVRA are provided opportunities to register to vote or to change their voter registration addresses to enable them to vote in the 2012 federal election;

(iv)    Directing defendants, under a court-approved plan with appropriate mandatory reporting and monitoring requirements, to take all actions necessary to ensure future compliance with the requirements of Section 7 of the NVRA, 42 U.S.C. § 1973gg-5, including, without limitation, practices and policies for distribution of voter registration applications and voter preference forms; training and monitoring public assistance agency personnel to ensure that all public assistance offices are distributing a voter registration application form to each person who applies for public assistance benefits, and to each person who recertifies, renews, and/or changes an address for benefits; inquiring of all such persons, in writing, whether they want to register to vote or change their voter registration addresses, and providing to them the NVRA-required information concerning the voter registration process; assisting such persons in completing voter registration applications to the same level of assistance that is provided with other public assistance forms; accepting completed voter registration applications, and timely transmitting completed registration forms to appropriate election authorities; and retaining voter preference forms;

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

(v)   Awarding plaintiffs the costs and disbursements incurred in connection with this action, including, without limitation, their reasonable attorneys' fees, expenses, and costs, pursuant to 42 U.S.C. § 1973gg-9(c);

(vi)   Retaining jurisdiction over this action to ensure that defendants are complying with any order(s) issued by this Court and with their obligations under the NVRA; and

(vii)   Awarding such additional relief as to this Court seems just and proper.

Dated:  June 11, 2012

NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), RENO-SPARKS BRANCH OF THE NAACP (BRANCH 1112)

By their attorneys,

/s/ _____

W. Chris Wicker (Bar # 1037)
Woodburn and Wedge
6100 Neil Road, Suite 500
Reno, NV 89511
(775) 688-3011
wwicker@woodburnandwedge.com

Neil Steiner*
neil.steiner@dechert.com
Jamie Halavais*
jamie.halavais@dechert.com
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036
(212) 698-3822

David Rubino*
Dēmos
220 Fifth Avenue, 2nd Floor
New York, NY 10001
(212) 485-6239
drubino@demos.org

/ / /

/ / /

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-23-

Robert A. Kengle*
bkengle@lawyerscommittee.org
Alan Martinson*
amartinson@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law
1401 New York Avenue, N.W., Suite 400
Washington, D.C.  20005
(202) 662-8336

Sarah Brannon*
sbrannon@projectvote.org
Michelle Rupp*
mrupp@projectvote.org
Project Vote
1350 Eye Street, NW, Suite 1250
Washington, DC  20005
(202) 546-4173

Kim Keenan*
kkeenan@naacpnet.org
Anson Asaka*
aasaka@naacpnet.org
National Association for the Advancement of
Colored People, Inc.
NAACP National Office
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5792

*pro hac vice admission to be sought, will comply with LR IA 10-2 within 45 days

EXHIBIT A

EXHIBIT A

   

May 10, 2012

*Via Certified Mail*

Mr. Ross Miller
Secretary of State
Nevada State Capitol Building
101 North Carson Street, Suite 3
Carson City, NV 89701

      *Re:*    *Compliance with Section 7 of the National Voter Registration Act*

Dear Secretary Miller,

We write on behalf of the National Council of La Raza, Las Vegas Branch of the NAACP (Branch 1111), and Reno-Sparks Branch of the NAACP (Branch 1112), persons eligible to register to vote who they represent, and others similarly situated to notify you that the State of Nevada is not in compliance with Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5, which requires States, including Nevada, to provide the opportunity to register to vote with every application for public assistance and every public assistance recertification, renewal, and change of address. We urge you, as the State's chief election official, to take immediate steps, in conjunction with the Nevada Department of Health and Human Services ("DHHS"), to bring the State into compliance with Section 7.

As you know, your office was first contacted about these issues in 2008, when Demos, one of the undersigned organizations, advised your office of its findings concerning Nevada's noncompliance with the public agency requirements of the NVRA. We very much appreciate the subsequent discussions your office has had with Demos in an effort to improve Nevada's compliance, but unfortunately the results of our most recent field investigations conducted in December 2011 make clear that Nevada's public assistance offices still have not achieved compliance with their obligations under the NVRA.

The NVRA requires Nevada to "designate as voter registration agencies . . . all offices in the State that provide public assistance." *See* 42 U.S.C. § 1973gg-5(a)(2)(A). Each public assistance office must, at a minimum, (i) distribute voter registration application forms; (ii) assist applicants in completing the voter registration forms; and (iii) accept completed voter registration application forms and forward them to the appropriate election official. *See* 42 U.S.C. § 1973gg-5(a)(4)(A). Moreover, each office must (i) distribute a voter registration application form with each application for public assistance and with each recertification, renewal or change of address form; (ii) inquire of the applicant, in writing, whether he or she would like to register to vote or change his or her voter registration address at that time; (iii) provide simultaneously with the inquiry several statutorily required statements, in writing,

including that the decision to register or decline to register to vote will not affect the amount of public assistance provided by the agency; and (iv) provide assistance in completing the voter registration forms to the same degree the agency provides assistance in completing its own forms.  *See* 42 U.S.C. § 1973gg-5(a)(6).

Moreover, the NVRA provides that public assistance offices must *presumptively* distribute voter registration applications to all public assistance applicants and clients, unless the individual applicant or client affirmatively opts out of voter registration by declining "in writing" to register to vote.  42 U.S.C. § 1973gg-5(a)(6)(A); *Valdez v. Squier*, Nos. 11-2063 & 11-2084, 2012 U.S. App. LEXIS 3390, *19-29 (10th Cir. Feb. 21, 2012) ("[A]n applicant's failure to check either the 'YES' or 'NO' box on the declination form does not constitute a declination 'in writing.' [The NVRA] requires an applicant to affirmatively, by way of writing, 'opt out' of receiving a voter registration form.").

Our investigation demonstrates that Nevada is systematically failing to provide the voter registration services mandated by the NVRA at its public assistance offices.  This is borne out by the data Nevada has submitted to the United States Election Assistance Commission ("EAC") regarding the number of registration applications submitted at Nevada public assistance agencies, and by our field reviews.

The EAC data indicate that the number of voter registration applications submitted at Nevada public assistance offices decreased precipitously between the 1999-2000 and 2009-2010 reporting periods, from 39,444 in 1999-2000 to just 1,677 in 2009-2010, a reduction of more than 95%.

The huge decrease in voter registration applications at public assistance offices is particularly significant given that the number of initial food stamp applications in Nevada during this time frame nearly quadrupled, from 62,796 in 1999-2000 to 239,080 in 2009-2010.  Accordingly, it is clear that the decrease in voter registration applications did not reflect any reduction in public assistance caseloads.  It likewise did not reflect a lack of low-income residents in need of registration.  Census Bureau data from 2010 indicate that only 47.6% of low income voters in Nevada were registered to vote, while 72.4% of high income voters were on the rolls.

Observations in the field confirm that front line staff at Division of Welfare and Supportive Services ("DWSS") and Women, Infants, and Children ("WIC") offices are failing to regularly distribute voter registration applications to public assistance clients, as the NVRA requires. Recent visits to nine local DWSS offices in three counties showed that a significant percentage of public assistance applicants and clients were not provided any meaningful offer of voter registration, and very few offices provided the required voter registration notices to their clients.

In summary, our investigation has shown the following:

- In each DWSS or WIC office visited, the clerks stated that voter registration applications are provided only to clients who check "Yes" in response to the question whether they "would…like to register to vote here today."  As discussed above, this violates the NVRA, which requires that all persons engaging in covered transactions

be provided a voter registration application unless they specifically *decline*, in writing, to receive such an application.

- Two of the sites visited, WIC Flamingo and WIC Sunrise Children's Foundation, did not have voter registration applications to provide to clients who engaged in transactions covered by the NVRA. Our investigation revealed that one (WIC Sunrise Children's Foundation) has not had voter registration forms for over one year, while the other (WIC Flamingo) has not had them for over two years.

- Only nine of the fifty-one clients surveyed stated that a voter registration application was attached to or provided with their benefits application or other agency forms.

- Five of the clients surveyed had informed DWSS and/or WIC that they wanted to register to vote by checking "Yes" to the voter preference question. Of those five, only one was provided a voter registration application. An office employee only spoke to two of those clients about voter registration at all.

- Only two of the nine sites had signs posted informing clients they could register to vote, and no sites displayed the required instructions on how to register to vote. This despite the fact that Nevada law requires each agency to conspicuously place signs stating that individuals can register to vote at the public assistance office (NAC 293.410), and to post instructions on how to register in a minimum 12 pt. font, also in a conspicuous place (NRS 293.504).

These problems could (and should) have been prevented. This failure to comply with the NVRA's voter registration requirement is not acceptable. Nevada must recognize its obligations under the NVRA and also make sure the NVRA actually is implemented by making prompt changes so that all of its citizens, including the hundreds of thousands of its citizens who receive public assistance, are able to participate in elections. In short, Nevada must institute procedures to ensure that frontline workers perform their federally mandated responsibility to provide voter registration services.

This letter serves as a notice letter pursuant to 42 U.S.C. § 1973gg-9(b) in an attempt to obtain compliance with the public assistance provisions of the NVRA without litigation. Please advise us promptly of the steps you intend to take to remedy Nevada's violations of Section 7 of the NVRA. We appreciate your office's past willingness to discuss needed improvements to NVRA compliance, and we hope that you share our concern about the clear evidence that, despite these discussions, public assistance offices in Nevada still are not complying with their obligations under the NVRA. The undersigned counsel are prepared to meet with you and other state officials, at your earliest convenience, to assist in your development of a comprehensive plan for compliance. In the absence of such a plan, we will have no alternative but to initiate litigation at the conclusion of the statutory 20-day waiting period.

Sincerely,

_David Rubino_

David Rubino
Demos
220 Fifth Avenue
New York, NY 10001
(212) 485-6239

_Michelle Rupp_

Michelle Rupp
Project Vote
1350 I Street, NW
Suite 1250
Washington, DC 20005
(202) 546-4173 ext. 303

_Robert A. Kengle_

Robert A. Kengle
Lawyers' Committee for
Civil Rights Under Law
1401 New York Avenue, NW
Suite 400
Washington, DC 20005
(202) 662-8320

_Anson Asaka_

Anson Asaka
NAACP
4805 Mount Hope Drive
Baltimore, MD 21215
(410) 580-5789

cc:     Mike Willden
        Director
        DEPT. OF HEALTH & HUMAN SERVICES
        4126 Technology Way, Suite 100
        Carson City, Nevada 89706-2009