# EXHIBIT A

EXHIBIT A

   

May 10, 2012

*Via Certified Mail*

Mr. Ross Miller
Secretary of State
Nevada State Capitol Building
101 North Carson Street, Suite 3
Carson City, NV 89701

    Re:    *Compliance with Section 7 of the National Voter Registration Act*

Dear Secretary Miller,

We write on behalf of the National Council of La Raza, Las Vegas Branch of the NAACP (Branch 1111), and Reno-Sparks Branch of the NAACP (Branch 1112), persons eligible to register to vote who they represent, and others similarly situated to notify you that the State of Nevada is not in compliance with Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5, which requires States, including Nevada, to provide the opportunity to register to vote with every application for public assistance and every public assistance recertification, renewal, and change of address. We urge you, as the State's chief election official, to take immediate steps, in conjunction with the Nevada Department of Health and Human Services ("DHHS"), to bring the State into compliance with Section 7.

As you know, your office was first contacted about these issues in 2008, when Demos, one of the undersigned organizations, advised your office of its findings concerning Nevada's noncompliance with the public agency requirements of the NVRA. We very much appreciate the subsequent discussions your office has had with Demos in an effort to improve Nevada's compliance, but unfortunately the results of our most recent field investigations conducted in December 2011 make clear that Nevada's public assistance offices still have not achieved compliance with their obligations under the NVRA.

The NVRA requires Nevada to "designate as voter registration agencies . . . all offices in the State that provide public assistance." *See* 42 U.S.C. § 1973gg-5(a)(2)(A). Each public assistance office must, at a minimum, (i) distribute voter registration application forms; (ii) assist applicants in completing the voter registration forms; and (iii) accept completed voter registration application forms and forward them to the appropriate election official. *See* 42 U.S.C. § 1973gg-5(a)(4)(A). Moreover, each office must (i) distribute a voter registration application form with each application for public assistance and with each recertification, renewal or change of address form; (ii) inquire of the applicant, in writing, whether he or she would like to register to vote or change his or her voter registration address at that time; (iii) provide simultaneously with the inquiry several statutorily required statements, in writing,

including that the decision to register or decline to register to vote will not affect the amount of public assistance provided by the agency; and (iv) provide assistance in completing the voter registration forms to the same degree the agency provides assistance in completing its own forms. *See* 42 U.S.C. § 1973gg-5(a)(6).

Moreover, the NVRA provides that public assistance offices must *presumptively* distribute voter registration applications to all public assistance applicants and clients, unless the individual applicant or client affirmatively opts out of voter registration by declining "in writing" to register to vote. 42 U.S.C. § 1973gg-5(a)(6)(A); *Valdez v. Squier*, Nos. 11-2063 & 11-2084, 2012 U.S. App. LEXIS 3390, *19-29 (10th Cir. Feb. 21, 2012) ("[A]n applicant's failure to check either the 'YES' or 'NO' box on the declination form does not constitute a declination 'in writing.' [The NVRA] requires an applicant to affirmatively, by way of writing, 'opt out' of receiving a voter registration form.").

Our investigation demonstrates that Nevada is systematically failing to provide the voter registration services mandated by the NVRA at its public assistance offices. This is borne out by the data Nevada has submitted to the United States Election Assistance Commission ("EAC") regarding the number of registration applications submitted at Nevada public assistance agencies, and by our field reviews.

The EAC data indicate that the number of voter registration applications submitted at Nevada public assistance offices decreased precipitously between the 1999-2000 and 2009-2010 reporting periods, from 39,444 in 1999-2000 to just 1,677 in 2009-2010, a reduction of more than 95%.

The huge decrease in voter registration applications at public assistance offices is particularly significant given that the number of initial food stamp applications in Nevada during this time frame nearly quadrupled, from 62,796 in 1999-2000 to 239,080 in 2009-2010. Accordingly, it is clear that the decrease in voter registration applications did not reflect any reduction in public assistance caseloads. It likewise did not reflect a lack of low-income residents in need of registration. Census Bureau data from 2010 indicate that only 47.6% of low income voters in Nevada were registered to vote, while 72.4% of high income voters were on the rolls.

Observations in the field confirm that front line staff at Division of Welfare and Supportive Services ("DWSS") and Women, Infants, and Children ("WIC") offices are failing to regularly distribute voter registration applications to public assistance clients, as the NVRA requires. Recent visits to nine local DWSS offices in three counties showed that a significant percentage of public assistance applicants and clients were not provided any meaningful offer of voter registration, and very few offices provided the required voter registration notices to their clients.

In summary, our investigation has shown the following:

- In each DWSS or WIC office visited, the clerks stated that voter registration applications are provided only to clients who check "Yes" in response to the question whether they "would…like to register to vote here today." As discussed above, this violates the NVRA, which requires that all persons engaging in covered transactions

> be provided a voter registration application unless they specifically *decline*, in writing, to receive such an application.
>
> - Two of the sites visited, WIC Flamingo and WIC Sunrise Children's Foundation, did not have voter registration applications to provide to clients who engaged in transactions covered by the NVRA. Our investigation revealed that one (WIC Sunrise Children's Foundation) has not had voter registration forms for over one year, while the other (WIC Flamingo) has not had them for over two years.
>
> - Only nine of the fifty-one clients surveyed stated that a voter registration application was attached to or provided with their benefits application or other agency forms.
>
> - Five of the clients surveyed had informed DWSS and/or WIC that they wanted to register to vote by checking "Yes" to the voter preference question. Of those five, only one was provided a voter registration application. An office employee only spoke to two of those clients about voter registration at all.
>
> - Only two of the nine sites had signs posted informing clients they could register to vote, and no sites displayed the required instructions on how to register to vote. This despite the fact that Nevada law requires each agency to conspicuously place signs stating that individuals can register to vote at the public assistance office (NAC 293.410), and to post instructions on how to register in a minimum 12 pt. font, also in a conspicuous place (NRS 293.504).

These problems could (and should) have been prevented. This failure to comply with the NVRA's voter registration requirement is not acceptable. Nevada must recognize its obligations under the NVRA and also make sure the NVRA actually is implemented by making prompt changes so that all of its citizens, including the hundreds of thousands of its citizens who receive public assistance, are able to participate in elections. In short, Nevada must institute procedures to ensure that frontline workers perform their federally mandated responsibility to provide voter registration services.

This letter serves as a notice letter pursuant to 42 U.S.C. § 1973gg-9(b) in an attempt to obtain compliance with the public assistance provisions of the NVRA without litigation. Please advise us promptly of the steps you intend to take to remedy Nevada's violations of Section 7 of the NVRA. We appreciate your office's past willingness to discuss needed improvements to NVRA compliance, and we hope that you share our concern about the clear evidence that, despite these discussions, public assistance offices in Nevada still are not complying with their obligations under the NVRA. The undersigned counsel are prepared to meet with you and other state officials, at your earliest convenience, to assist in your development of a comprehensive plan for compliance. In the absence of such a plan, we will have no alternative but to initiate litigation at the conclusion of the statutory 20-day waiting period.

Sincerely,

___*David Rubino*___  
David Rubino  
Demos  
220 Fifth Avenue  
New York, NY 10001  
(212) 485-6239

___*Michelle Rupp*___  
Michelle Rupp  
Project Vote  
1350 I Street, NW  
Suite 1250  
Washington, DC 20005  
(202) 546-4173 ext. 303

___*Robert A. Kengle*___  
Robert A. Kengle  
Lawyers' Committee for  
Civil Rights Under Law  
1401 New York Avenue, NW  
Suite 400  
Washington, DC 20005  
(202) 662-8320

___*Anson Asaka*___  
Anson Asaka  
NAACP  
4805 Mount Hope Drive  
Baltimore, MD 21215  
(410) 580-5789

cc:    Mike Willden  
       Director  
       DEPT. OF HEALTH & HUMAN SERVICES  
       4126 Technology Way, Suite 100  
       Carson City, Nevada 89706-2009