W. Chris Wicker (State Bar No. 1037)
WOODBURN AND WEDGE
6100 Neil, Road, Suite 500
Post Office Box 2311
Reno, Nevada 89511
Telephone: (775) 688-3000
Facsimile: (775) 688-3088
cwicker@woodburnandwedge.com

Attorneys for National Council of
La Raza, Las Vegas Branch of the NAACP
(Branch 1111), Reno-Sparks Branch of
the NAACP (Branch 1112)

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), and RENO-SPARKS BRANCH OF THE NAACP (BRANCH 1112),<br><br>Plaintiffs,<br><br>v.<br><br>ROSS MILLER, *in his official capacity as Secretary of State of the State of Nevada;* and MICHAEL WILLDEN, *in his official capacity as Director of the Department of Health & Human Services of the State of Nevada,*<br><br>Defendants. | Case No. 3:12-cv-00316-RCJ-VPC<br><br>**PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION** |

Plaintiffs, NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), and RENO-SPARKS BRANCH OF THE NAACP (BRANCH 1112), hereby move, pursuant to 42 U.S.C. § 1973gg-9(b)(2) and Rule 65 of the Federal Rules of Civil Procedure, for a preliminary injunction requiring that Defendants, ROSS MILLER, *in his official capacity as Secretary of State of the State of Nevada* ("Miller"); and MICHAEL WILLDEN, *in his official capacity as Director of the Department of Health & Human*

-1-

*Services of the State of Nevada* ("Willden"), implement immediately and completely the mandatory provisions of Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5, and take remedial measures to correct the harm Defendants' previous violations of Section 7 have caused and continuing violations will cause. The grounds for this Motion are fully set forth in the accompanying Memorandum of Law. However, in brief summary:

Congress enacted the NVRA in order to increase the number of citizens registered to vote, and thereby enhance voter participation in federal elections.

The NVRA mandates that states increase voter registration opportunities in several ways: by making registration available by mail; by requiring that states include a voter registration form as part of all driver's license applications; and by requiring that voter registration services be provided at public assistance offices, disability offices, and other locations. 42 U.S.C. § 1973gg-3, 1973gg-5.

Section 7 of the NVRA requires, *inter alia*, that each state designate certain agencies, including "all offices in the State that provide public assistance" and offices providing services to persons with disabilities, as "voter registration agencies." 42 U.S.C. § 1973gg-5(a)(2). All voter registration agencies must distribute voter registration applications, assist with the completion of the applications unless the applicant refuses such assistance, and accept the completed applications for transmittal to the appropriate election official. 42 U.S.C. § 1973gg-5(a)(4)(A).

The NVRA became effective in 1995. The overall trend in voter registration through public assistance agencies in Nevada has been negative since implementation of the NVRA.

In 2008, the organization Dēmos approached Nevada about problems involving the state's compliance with the NVRA. In response to these discussions, Miller's office issued guidelines intended to improve compliance with the NVRA's strictures. *See Required Voter Registration Services in Agency Sites – Overview of Suggested Procedures*, State of Nevada, Office of the Secretary of State, dated Feb. 17, 2009. The policy guidance set forth certain

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

procedures for training, employee responsibilities, form completion, and local office administrative responsibilities. It also noted "necessary policy changes" within the Department of Health & Human Services ("DHHS"), in particular the establishment of an Agency NVRA Coordinator for DHHS and the designation of Local NVRA Coordinators for each local voter registration agency, as well as procedures for data collection and monitoring, storage of voter preference forms, and maintenance of voter registration supplies. Despite this policy guidance, however, DHHS has not taken serious steps to comply with the policy, and the Secretary of State's office has not taken adequate steps to ensure compliance.

Recent interviews with clients and workers at public assistance offices indicate that Nevada public assistance offices regularly fail to offer voter registration. In December 2011, interviews of public assistance clients and state workers at nine DHHS and Women, Infants and Children ("WIC") program offices in Nevada's primary population centers of Carson City, Las Vegas, and Reno, as well as observations at those offices, confirmed that Nevada is violating Section 7 of the NVRA.

On May 10, 2012, a letter was sent to Miller, on behalf of the "National Council of La Raza ("NCLR"), Las Vegas Branch of the NAACP (Branch 1111), and Reno-Sparks Branch of the NAACP (Branch 1112), persons eligible to register to vote who they represent, and others similarly situated" to "provide written notice that the State of Nevada is not in compliance with Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5." The notice stated that, unless Nevada implemented a plan to remedy the violations of the NVRA within 20 days, NCLR, the Las Vegas NAACP, and the Reno-Sparks NAACP would commence litigation. A copy of the May 10, 2012 notice letter is attached to the Complaint as Exhibit A. Willden was sent a copy of the notice on the same day. The violations of the NVRA described in the notice letter have not been remedied.

Voter registration agencies designated under Section 7 (public assistance agencies) have additional voter registration obligations during specific transactions, called "covered transactions," with clients and potential clients. Paragraph 6 of Section 7 defines a covered

-3-

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

transaction as "each application for such services or assistance, and . . . each recertification, renewal or change of address." Section 7 requires that during each covered transaction, the agency:

    A.    Distribute [a voter registration form] with each application for such service or assistance, and with each recertification, renewal, or change of address form relating to such service or assistance . . . unless the applicant, in writing, declines to register to vote;

    B.    Provide a form [referred to as a "voter preference form"] that includes –

        (i)    The question [referred to as a "voter preference question"], "If you are not registered to vote where you live now, would you like to apply to register to vote here today?"

        (ii)    If the agency provides public assistance, the statement, "Applying to register or declining to register to vote will not affect the amount of assistance that you will be provided by this agency.";

        (iii)    Boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote (failure to check either box being deemed to constitute a declination to register for purposes of subparagraph (C)), together with the statement (in close proximity to the boxes and in prominent type) "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME."

        (iv)    The statement, "If you would like help in filling out the voter registration application form, we will help you. The decision whether to seek or accept help is yours. You may fill out the application form in private."; and

        (v)    The statement, "If you believe that someone has interfered with your right to register or to decline to register to vote, your right to privacy in deciding whether to register or in applying to register to vote, or your right to choose your own political party or other political preference, you may file a complaint with _____ .", the blank being filled by the name, address, and telephone number of the appropriate official to whom such a complaint should be addressed; and

    C.    Provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance.

Thus, public assistance agencies are required with each covered transaction to provide a voter preference form that asks whether the client wishes to register and informs the client of certain specified information. If the client declines in writing - such as by checking the

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

"no" box on the voter preference form - then nothing further is required. If the client does not check either box, then the agency must provide the client with a voter registration application, but need not assist the client in completing the application. If the client checks the "yes" box, then the agency must provide a voter registration application and assistance in completing it, unless the client declines the assistance. In short, clients must affirmatively "opt out" of receiving a voter registration application; the provision of the application is not contingent upon an affirmative request, either written or verbal, from the client.

The evidence demonstrates that Nevada's written policies run afoul of this requirement. In addressing the voter preference question, Section A-146(7) of the Nevada TANF and SNAP Application Processing policy states that, "If there is no response on the form, it is treated as a declination." This runs contrary to both the plain language of the NVRA and the interpretation it has been given by all courts addressing the issue. The 10th Circuit's decision in *Valdez v. Squier*, 676 F.3d 935 (10th Cir. 2012), specifically holds that the NVRA requires states to provide voter registration applications to individuals who leave the voter preference question blank. Similarly, while not reaching the issue directly, the U.S. District Court for the Northern District of Georgia stated that if the state interprets a blank response as a no and does not offer a voter registration application, that "likely runs afoul of Section 7." *Georgia NAACP v. Kemp*, 2012 U.S. Dist. LEXIS 14326 (N.D. Ga. Jan. 30, 2012).

Defendants, who are collectively charged with responsibility for Nevada's compliance with the NVRA, have failed to ensure that the State is fulfilling its duties as mandated by Section 7. Public assistance agencies are not providing applicants, or those re-certifying, renewing, or changing an address for public assistance benefits, the opportunity to register to vote as the NVRA requires.

Accordingly, Plaintiffs seek injunctive relief to ensure that the State of Nevada complies with Section 7, and that the fundamental right to vote of every citizen is protected in Nevada.

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

These violations have interfered with the right to vote of low-income citizens of Nevada, depriving them of a full and effective participation in the political process. These violations also have caused Plaintiffs to expend resources by conducting voter registration assistance efforts that they would not otherwise have expended, thereby diverting resources Plaintiffs need for community organization, issues campaigns, and other programs in order to realize full achievement of their goals. Defendants' failure to abide by the requirements of the NVRA, therefore, has hampered and impeded Plaintiffs' mission, and continues to cause Plaintiffs irreparable harm.

This motion seeks a preliminary injunction to remedy past and prevent future violations of Section 7 of the NVRA and the irreparable harm caused by those violations.

Congress has already balanced the equities by expressly providing for a private action for injunctive relief to address violations of the NVRA, see 42 U.S.C. § 1973gg-9(b)(2), and reasonable cause exists for the Court to believe that a violation of Section 7 of the NVRA has occurred or is about to occur.

Moreover, all factors the Court would consider if this case did not involve a federal statute that expressly provides for injunctive relief weigh in favor of issuance of a preliminary injunction:

 A. Plaintiffs are likely to succeed on the merits;
 B. Plaintiffs are likely to suffer irreparable harm in the absence of preliminary relief;
 C. The balance of equities tips in favor of Plaintiffs;
 D. An injunction is in the public interest;
 E. Plaintiffs can demonstrate both probable success and possible irreparable injury; and
 F. Serious questions are raised and the balance of hardships tips sharply in the Plaintiffs' favor.

*Greater Yellowstone Coalition v. Timchak*, No. 08-cv-36018, 2009 WL 971474, at *1 (9th Cir. April 10, 2009).

WHEREFORE, Plaintiffs pray that the Court issue a preliminary injunction enjoining Defendants, their agents, servants, officers and others acting in concert with them to

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

Case 3:12-cv-00316-MMD-VPC   Document 24   Filed 07/06/12   Page 7 of 9

1 implement immediately and completely the mandatory provisions of Section 7 of the National
2 Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5, and to take remedial
3 measures to correct the harm Defendants' previous violations of Section 7 have caused and
4 continuing violations will cause.

5      Preliminary injunctive relief is necessary as time is of the essence because of the
6 upcoming presidential election in November and the State's October cutoff for registration to
7 vote in that election. Thus, Plaintiffs request that the Court convene a hearing on this matter at
8 its earliest convenience.

9      Plaintiffs' counsel have attempted to negotiate with opposing counsel regarding an
10 expedited discovery[1] and briefing schedule, however opposing counsel was not amenable to
11 stipulating to such an arrangement. As such, plaintiffs are herewith filing a separate motion
12 requesting that the Court order an expedited discovery schedule and hearing date on this
13 motion.

14     DATED this 6 day of July, 2012.

15                                 WOODBURN AND WEDGE

16                          By: _____
17                             W. Chris Wicker (Bar # 1037)
18                             6100 Neil Road, Suite 500
                              Reno, NV 89511
19                             (775) 688-3000
                              cwicker@woodburnandwege.com

20                             Neil Steiner*
21                             neil.steiner@dechert.com
                              Jamie Halavais*
22                             jamie.halavais@dechert.com
                              Dechert LLP
23

---

24 [1] Plaintiffs believe that limited expedited discovery would materially assist the Parties and the Court in deciding
25 the instant motion. Plaintiffs have proposed to the Defendants an approximately one month initial discovery period, including the following: 1) requests for production of highly relevant documents, drafts of which have
26 already been provided to Defendants' counsel, including correspondence, training manuals, policy documents and voter preference forms, focusing on documents and information covering the last four years; 2) a limited
27 number of depositions of state-level and local-level Nevada officials and employees, including depositions noticed pursuant to Fed.R.Civ.P. 30(b)(6); and 3) a limited number of written interrogatories, drafts of which have already been provided to Defendants' counsel, including interrogatories relating to the parties' contentions.
28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-7-

1
2   David Rubino*
    Dēmos
3   drubino@demos.org

4   Robert A. Kengle*
    bkengle@lawyerscommittee.org
5   Alan Martinson*
    amartinson@lawyerscommittee.org
6   Lawyers' Committee for Civil Rights
    Under Law
7
8   Sarah Brannon*
    sbrannon@projectvote.org
9   Michelle Rupp*
    mrupp@projectvote.org
10
11  Kim Keenan*
    kkeenan@naacpnet.org
12  Anson Asaka*
    aasaka@naacpnet.org
13  National Association for the Advancement of
    Colored People, Inc.
14
15  *pro hac vice admission to be sought, will
    comply with LR IA 10-2 within 45 days
16
17
18
19
20
21
22
23
24
25
26
27
28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000

-8-

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Woodburn and Wedge and that on this date, I caused to be sent via electronic mail, a true and correct copy of the PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION to:

Kevin Benson
OFFICE OF THE NEVADA ATTORNEY GENERAL
100 North Carson Street
Carson City, Nevada 89701-4717
*kbenson@ag.nv.gov*

DATED this 6 day of July, 2012.

By: /s/ Kelly N. Weaver
Kelly N. Weaver

-9-

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, Nevada 89511
Tel: (775) 688-3000