1  W. Chris Wicker  (State Bar No. 1037)
   WOODBURN AND WEDGE
2  6100 Neil, Road, Suite 500
   Post Office Box 2311
3  Reno, Nevada 89511
   Telephone:  (775) 688-3000
4  Facsimile: (775) 688-3088
   cwicker@woodburnandwedge.com
5
6  Attorneys for National Council of
   La Raza, Las Vegas Branch of the NAACP
7  (Branch 1111), Reno-Sparks Branch of
   the NAACP (Branch 1112)
8
9              **IN THE UNITED STATES DISTRICT COURT**
10
                    **DISTRICT OF NEVADA**
11
   NATIONAL COUNCIL OF LA RAZA,
12 LAS VEGAS BRANCH OF THE NAACP
   (BRANCH 1111), and RENO-SPARKS
13 BRANCH OF THE NAACP (BRANCH
14 1112),                                    Case No. 3:12-cv-00316-RCJ-VPC

15       Plaintiffs,
                                             **PLAINTIFFS' OPPOSITION TO**
16 v.                                        **DEFENDANTS' MOTION TO DISMISS**

17 ROSS MILLER, *in his official capacity as*
18 *Secretary of State of the State of Nevada;*
   *and* MICHAEL WILLDEN, *in his official*
19 *capacity as Director of the Department of*
   *Health & Human Services of the State of*
20 *Nevada,*

21       Defendants.

22

23       Plaintiffs, NATIONAL COUNCIL OF LA RAZA ("NCLA"), LAS VEGAS

24 BRANCH OF THE NAACP (BRANCH 1111) ("Las Vegas NAACP"), and RENO-SPARKS

25 BRANCH OF THE NAACP (BRANCH 1112) ("Reno-Sparks NAACP") (collectively,

26 "Plaintiffs"), by and through their attorneys, WOODBURN AND WEDGE, hereby

27 respectfully submit this Opposition to the Motion to Dismiss filed by Defendants, ROSS

28                                    -1-

1   MILLER (hereinafter "Miller") and MICHAEL WILLDEN (hereinafter "Willden")

2   (collectively, "Defendants").

3       Plaintiffs' Complaint asserts a single claim against Defendants for past and ongoing

4   violations of Section 7 of the National Voter Registration Act of 1993 ("NVRA"). 42 U.S.C.

5   § 1973gg et seq. Section 7 mandates that public assistance agencies, *inter alia*, distribute

6   voter registration applications to their clients with each application and recertification for

7   benefits, and with each submission of a change-of-address form, and assist their clients with

8   completing the voter registration application. Defendants are responsible for the State's

9   compliance with Section 7.

10      The Complaint alleges that Defendants' ongoing violations of the NVRA are a result

11  of policies that violate the requirements of Section 7, as well as Defendants' failure to ensure

12  distribution of voter registration applications to public assistance clients in the day-to-day

13  transactions that are subject to the Section 7 requirements. Nevada public assistance offices'

14  reported voter registration numbers have been dismal for years, and have been increasingly

15  so. Plaintiffs' investigation of public assistance offices revealed obvious explanations for

16  these dismal figures; that investigation showed numerous NVRA violations – of the nine

17  offices visited, two did not even have voter registration applications on site, and not a single

18  office complied with all of the requirements of Section 7. Plaintiffs have alleged a failure to

19  take adequate steps to correct the problems that contributed to these violations and that the

20  violations are ongoing.

21      Defendants do not challenge the sufficiency of Plaintiffs' factual allegations of

22  widespread violations, and have answered the Complaint. In fact, they acknowledge the

23  sufficiency of the allegations and the possible existence of violations when they ask that the

24  Complaint be dismissed so that they can have more time to try to fix the violations on their

25  own without being compelled to do so in advance of this year's election. Defs.' Mot. at 7.

26

27

28                                          -2-

1    Rather, they assert (incorrectly) that the Notice Letter[1] and Complaint do not identify any

2    violations within 120 days of the June 12 primary and, consequently, Plaintiffs did not have

3    standing to file the complaint when they did.  According to Defendants, they should have until

4    August 8, 2012 (90 days after the Notice Letter was sent) to attempt to change their policies

5    and remedy their past shortcomings, even though the notice provisions of the NVRA plainly

6    shorten the applicable notice period where, as here, the violations occur shortly before a

7    federal election.  Defendants' motion is premised entirely on the misguided notion that the

8    violations identified in the Notice Letter and Complaint are limited to a handful of isolated

9    incidents last December.  To the contrary, Plaintiffs have unambiguously indicated, in both

10   the Notice Letter and the Complaint, that NVRA violations were ongoing and were occurring

11   well within the 120-day pre-election window (and, indeed, within 30 days of the June 12

12   primary).  Thus, Plaintiffs have stated a valid claim for violation of Section 7 of the NVRA

13   sufficient to satisfy the NVRA notice requirement and confer standing to bring suit under the

14   NVRA.

## LEGAL BACKGROUND AND STATEMENT OF FACTS

15

16        **A.    The NVRA**

17        Congress enacted the NVRA in 1993 because "the right of citizens of the United

18   States to vote is a fundamental right," and "discriminatory and unfair registration laws and

19   procedures can have a direct and damaging effect on voter participation in elections for

20   Federal office and disproportionately harm voter participation by various groups, including

21   racial minorities."  42 U.S.C. § 1973gg(a).  Thus, Congress sought in the NVRA "to establish

22   procedures that will increase the number of eligible citizens who register to vote."  42 U.S.C.

23   § 1973gg(b).

24        The NVRA includes numerous provisions aimed at reducing the burdens involved in

25   registering to vote.  Among these provisions is Section 7, which requires public assistance

26   _____

     [1] The Notice Letter was attached to and incorporated into the complaint, so the Court must consider any
27   allegations therein for the purposes of deciding Defendants' motion. FED. R. CIV. P. 10(c); *Amfac Mort. Corp. v.
     Arizona Mall of Tempe, Inc.*, 503 F.2d 426, 429-30 (9th Cir. 1978).

28                                                    -3-

1    agencies to distribute voter registration applications as a matter of course to clients engaging

2    in certain covered transactions, except when a client declines voter registration "in writing,"

3    and to provide assistance in completing voter registration forms.    42 U.S.C. § 1973gg-

4    5(a)(6)(A).

5        **B.    The Parties**

6        Plaintiffs have committed and continue to commit time and personnel to conducting

7    voter registration drives in Nevada.  Compl. ¶¶17-19.  Many of Plaintiffs' voter registration

8    efforts focus on registering voters in low-income neighborhoods, including the registration of

9    individuals who receive or apply for public assistance benefits.  *Id.*  Further, Plaintiffs Las

10   Vegas NAACP and Reno-Sparks NAACP have members who receive or will receive, or have

11   applied or will apply for, public assistance benefits in the state.    Compl. ¶¶18-19.

12   Consequently, Plaintiffs have a strong interest in ensuring that Nevada is complying with the

13   NVRA.

14       Federal and state law recognizes that Defendants are responsible for ensuring

15   compliance with the NVRA.  Compl. ¶¶22-28, 30-38.  Defendant Ross Miller is the Secretary

16   of State and, as such, is the chief election official in Nevada and is responsible for conducting

17   and overseeing federal elections in the State.  He is the "chief election official" responsible

18   for coordination of Nevada's responsibilities under the NVRA.  Defendant Michael Willden is

19   the Director of the Nevada Department of Health & Human Services ("DHHS").   DHHS

20   administers the provision of benefits under the Supplemental Nutrition Assistance Program

21   ("SNAP" or "food stamps"), Medicaid, Temporary Assistance for Needy Families ("TANF"),

22   and the Women, Infants, and Children ("WIC") programs.

23       **C.    Nevada's Failure to Comply With the NVRA**

24       Contrary to Defendants' contentions, Defs.' Mot. at 5-7, the violations identified and

25   alleged were and are not limited to Plaintiffs' investigation in December 2011.  Rather, the

26   Complaint alleged ongoing violations and a failure to take steps necessary to ensure

27   compliance, and evidence even after the filing of the Complaint shows continuing violations

28                                    -4-

1    of Section 7 by public assistance offices in Nevada.

2        To be sure, the results of the December 2011 visits to nine DHHS[2] offices in Nevada's

3    primary population centers of Carson City, Las Vegas, and Reno, including observations at

4    those offices and interviews of public assistance clients, which are alleged in the Notice Letter

5    and Complaint, provide powerful support for Plaintiffs' claim that Defendants are violating

6    the NVRA.  Those allegations as explained in the Complaint are as follows:

7        1.   *Failure to offer voter registration opportunities.*  Less than half of the public

8        assistance clients interviewed had been asked by office staff whether they

9        wanted to register to vote, even though some of those clients had checked

10       "Yes" to the question asking whether they wanted to register to vote or had left

11       it blank.  Some of the clients did not receive voter registration applications,

12       even though they checked "Yes."

13       2.   *Failure to distribute voter registration applications.*  Office staff indicated that

14       voter registration applications are provided only to clients who check "Yes" in

15       response to the question whether they "would . . . like to register to vote here

16       today," despite the NVRA and Nevada law requirement that all persons

17       engaging in covered transactions receive a voter registration application form

18       unless they specifically decline, in writing, to receive such an application.

19       3.   *Failure to keep voter registration applications and materials in supply and*

20       *generally available.*  Several sites visited did not have any voter registration

21       applications.  One had not had voter registration forms for more than a year,

22       while another had not had them for more than two years.  The failure to stock

23       voter registration forms itself is a violation of the NVRA and state law and also

24       shows a lack of attention to compliance with voter registration rules.

25       4.   *Failure to post information and instructions about registering to vote at the*

26   
27   [2] All offices visited were either within DHHS's Division of Welfare and Supportive Services ("DWSS")—which administers such programs as SNAP, Medicaid, and TANF—or the Nevada State Health Division's Bureau of Child, Family, and Community Wellness, which administers the WIC Program.

28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, NV 9511
Tel: (775) 688-3000

1        *public assistance offices*.   Only two of the nine sites had signs posted

2        informing clients they could register to vote, and none of the sites displayed

3        instructions on how to register to vote, despite Nevada laws and regulations

4        requiring voter registration agencies to post such information.

5 *See* Compl. ¶46; *see also* Notice Letter at 2-3.

6      Defendants would have the Court believe that the NVRA violations identified and

7 alleged begin and end with these specific incidents.   The Notice Letter and Complaint,

8 however, are not so limited.

9      Nevada's own reports to the U.S. Election Assistance Commission ("EAC") reveal

10 that Nevada public assistance offices received only 1,677 voter registration applications in the

11 2009-2010 reporting period.  This represents a 95.7 percent decline since 2001-2002, when

12 Nevada reported 39,444 registrations from public assistance offices.  Further, the overall trend

13 in voter registration through public assistance agencies in Nevada has been negative since

14 implementation of the NVRA.  The number of voter registration applications through public

15 assistance agencies reported to the EAC during each reporting period is as follows:

16

| Year | Public Assistance Voter Reg. Applications |
|------|-------------------------------------------|
| 1995-1996 | 13,200 |
| 1997-1998 | No report |
| 1999-2000 | 2,883 |
| 2001-2002 | 39,444 |
| 2003-2004 | 6,389 |
| 2005-2006 | 3,307 |
| 2007-2008 | 4,301 |
| 2009-2010 | 1,677 |

Compl. ¶44; *see also* Notice Letter at 2.  The figures indicate a longstanding (and increasing)

problem, especially given the rise in population and applications for public assistance in the

state. Compl. ¶12.

-6-

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, NV 9511
Tel: (775) 688-3000

1    Moreover, the Notice Letter and Complaint also allege that the violations revealed in

2    the December 2011 investigation are part of Defendants' "ongoing" violations.  Indeed, the

3    Complaint alleges "ongoing" violations in numerous places.  *See* Compl. ¶¶7, 14, 42, 51; *see*

4    *also id.* ¶11 ("systemic violations of Section 7"); *id.* ¶14 ("chronic violations").  The Notice

5    Letter, meanwhile, begins by noting that Nevada is "not in compliance with Section 7 of the

6    [NVRA]."  Notice Letter at 1.    Further, the Notice Letter states that "Nevada's public

7    assistance offices still have not achieved compliance with their obligations under the NVRA,"

8    *id.* at 1, that Nevada is "systematically failing to provide voter registration services mandated

9    by the NVRA at its public assistance offices," *id.* at 2, and that public assistance agencies are

10    "failing to regularly distribute voter registration applications to public assistance clients." *Id.*

11    Defendants' violations of Section 7 of the NVRA continued after the Complaint was

12    filed as well, further demonstrating that the earlier surveys constituted but a snapshot of

13    Defendants' violations.[3]  For example, on June 19, 2012, just eight days after Plaintiffs filed

14    their Complaint, Denisha Phillips of Las Vegas visited the DWSS office at 1040 Owens

15    Avenue in Las Vegas for a covered transaction and was not asked about voter registration.

16    Declaration of Denisha Phillips, attached as Exhibit A.  The next day, Kendra Hulbert of

17    Mound House visited the DWSS office at 2533 N. Carson Street in Carson City and had a

18    similar experience.  Declaration of Kendra Hulbert, attached as Exhibit B.

19    Finally, the Complaint alleges the existence of "flawed practices and policies," Compl.

20    ¶11, and that DHHS "has not taken serious steps to comply" with the policy guidance the

21    Secretary of State's office issued in 2009, which called for "necessary policy changes" within

22    DHHS to bring the agency into compliance with the NVRA.  Compl. ¶45; *see also* Notice

23    Letter at 2 ("systematically failing to provide voter registration services . . .).

24    As a result of Defendants' violations, in 2010 only 47.6% of eligible Nevada citizens

25    living in a household with a yearly income of less than $25,000 were registered to vote

26

27    [3] If the Court deems post-Complaint conduct necessary for the Complaint to survive dismissal, Plaintiffs
respectfully request leave to add those allegations.

28                                                    -7-

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, NV 9511
Tel: (775) 688-3000

compared to 72.4% of eligible citizens living in a household with a yearly income of more than $100,000 – a "voter registration gap" of 24.8%. Compl. ¶43.

### D.    Notice of NVRA Violations

On May 10, 2012, a letter was sent to Defendant Miller on behalf of the "National Council of La Raza, Las Vegas Branch of the NAACP (Branch 1111), and Reno-Sparks Branch of the NAACP (Branch 1112), persons eligible to register to vote who they represent, and others similarly situated" to "provide written notice that the State of Nevada is not in compliance with Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg-5." In addition to the statements quoted above, the Notice Letter stated that, unless Nevada implemented a plan to remedy the violations of the NVRA within 20 days, the National Council of La Raza ("NCLR"), the Las Vegas NAACP, and the Reno-Sparks NAACP would commence litigation. Notice Letter at 3. Defendant Willden was sent a copy of the notice on the same day. Compl. ¶47.

On May 22, 2012 a representative from the Nevada Secretary of State's Elections Division contacted a representative of Plaintiffs, seeking an extension of time in which to respond to the May 10 notice letter and seeking to delay initial meetings between the parties' representatives until after the June 12 primary. In a May 24 e-mail response to this request, Plaintiffs' representatives asked the State to (1) provide a current organizational chart for the DHHS, the DWSS, and WIC, as well as any management evaluation forms for those Departments/Divisions, and (2) arrange a meeting with the person or persons within DHHS with the most knowledge regarding NVRA implementation on or before the first week in June. On June 5, the Nevada Secretary of State's Elections Division responded to the May 24 proposal, indicating that they would not comply with the request. Compl. ¶48. This litigation followed.

///

///

///

-8-

1

**STANDARD OF REVIEW**

2          On a motion to dismiss, in accordance with Rule 12(b)(6) of the Federal Rules of Civil

3     Procedure, the facts must be viewed in the light most favorable to the non-moving party.  A

4     claim may be dismissed only if "it appears beyond doubt that the plaintiff can prove no set of

5     facts in support of his claim which would entitle him to relief."  *Cook v. Brewer*, 637 F.3d

6     1002, 1004 (9th Cir. 2011).  "To survive a motion to dismiss, a complaint must contain

7     sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

8     face."  *Id.* (citations & quotations omitted).  "A claim has facial plausibility when the plaintiff

9     pleads factual content that allows the court to draw the reasonable inference that the defendant

10    is liable for the misconduct alleged."  *Id.*   The same standard applies to challenges to a

11    plaintiff's standing as well as to challenges to the substantive violations alleged.  *See Witte v.*

12    *United States*, No. CV 99-02513 DDP (RNBx), 1999 U.S. Dist. LEXIS 17590, *4, n.1 (C.D.

13    Cal Oct. 18, 1999).

14

**POINTS AND AUTHORITIES**

15          As an initial matter, Defendants' motion nowhere asserts that Plaintiffs are not

16    aggrieved parties, and thus Defendants' motion does not raise issues of constitutional

17    standing.  The only issue raised is whether Plaintiffs provided sufficient notice to give them

18    statutory standing.

19          I.      PLAINTIFFS HAVE STANDING TO BRING THIS ACTION

20          Plaintiffs served proper notice and have standing to pursue this litigation because their

21    May 10, 2012 letter (the "Notice Letter") notified Defendants of ongoing violations of Section

22    7 of the NVRA.  Plaintiffs therefore properly filed their Complaint after the 20-day notice

23    period had expired without Defendants correcting their violations of Section 7 of the NVRA.[4]

24    Defendants' violations have continued through and beyond the Nevada primary election held

25    on June 12, 2012.  Compl. ¶¶7, 14, 42, 51; Phillips Decl. (Ex. A); Hulbert Decl. (Ex. B).

26
27    _____

[4] Indeed, because Defendants' violations of Section 7 of the NVRA were ongoing in the thirty-day period prior
to the primary election, no notice was required prior to filing the Complaint. 42 U.S.C. § 1973gg-9(b)(3); *see
also infra* at pp. 12-13.

28                                              -9-

1  Thus, Plaintiffs have statutory standing to bring the instant action.

2        A.      **Plaintiffs Have Standing Under 42 U.S.C. § 1973gg-9(b)(2)**

3        Defendants' only argument for dismissal of the Complaint is that, because the specific

4  violations identified in the Notice Letter occurred in December 2011, Plaintiffs should have

5  given notice sooner and allowed Defendants a longer, 90-day period, to cure the violations

6  prior to filing suit.  *See* 42 U.S.C. § 1973gg-9(b)(2). Defendants' argument misses the point.

7  As the Complaint alleges and Notice Letter indicates, Defendants' violations of Section 7 of

8  the NVRA are ongoing and continuous.

9        Plaintiffs had standing to file the Complaint when they did, which follows from a

10  straightforward application of the statutory language.   Persons who are aggrieved by a

11  violation of the NVRA may provide written notice of the violation to the chief election

12  official of the State. 42 U.S.C. 1973gg-9(b)(1). Plaintiffs did so here when they sent a Notice

13  Letter to the Secretary of State, informing him of Nevada's ongoing violations of Section 7.

14  The December 2011 investigation results were included in the Notice Letter—as well as data

15  from the Election Assistance Commission and the Census Bureau—as concrete examples of

16  the ongoing violations.

17        If the violation occurred within 120 days before the date of an election for Federal

18  office, the State has 20 days after receipt of the notice to correct the violation.  If the violation

19  is not corrected within 20 days after receipt, then the aggrieved person may bring a civil

20  action in district court. 42 U.S.C. 1973gg-9(b)(2).  Here, the relevant federal election was the

21  June 12, 2012 federal primary election.  Thus, in order for Plaintiffs to benefit from the 20

22  day provision, violations must have occurred between February 13, 2012 and June 11, 2012.

23        Plaintiffs' Notice Letter of May 10, 2012 informed Defendants of violations occurring

24  between those dates.   Specifically, it indicated the existence of violations as of May 10,

25  stating in its very first sentence that "the State of Nevada *is not in compliance* with Section

26  7." Notice Letter at 1 (emphasis added).  That statement, buttressed by reasonable inferences

27  to be drawn from the alleged concrete results of the December 2011 investigation finding

28                                        -10-

1   widespread non-compliance, triggered the 20-day notice period, as it indicated violations of

2   the NVRA as of May 10. *See* 42 U.S.C. § 1973gg-9(b)(2). The Notice Letter, of course, went

3   further to note, among other things, that the state "is systematically failing" to provide

4   required voter registration services. Notice Letter at 2. Those further statements also

5   indicated present violations.

6          Moreover, the Complaint alleges "flawed practices and policies," Compl. ¶11, as well

7   as a failure to follow a policy directive noting "necessary policy changes" to bring DHHS into

8   compliance with Section 7. Compl. ¶45. Again, these allegations are supported by

9   reasonable inferences that the Court must draw from the alleged December 2011 investigation

10  results. On its face, a flawed policy constitutes an ongoing violation until remedied.[5] It

11  follows from these allegations that NVRA violations were occurring at the time of the

12  Complaint, which is sufficient in itself allow plaintiffs to file suit at that time, without

13  providing any notice at all. 42 U.S.C. § 1973gg-9(b)(3).[6] Thus, Plaintiffs' notice was

14  gratuitous, and Defendants cannot contend that the timing of that notice was a problem.

15         The Court need not look any further than this straightforward application of the

16  statutory language to determine that the Defendants' argument lacks merit. Nonetheless, the

17  case law on the issue of ongoing violations as applied to the facts of this case confirms the

18  sufficiency of the notice and allegations to confer standing.

19  ///

20  ///

21

22  [5] The alleged existence of "flawed practices and policies," Compl. ¶11, has the added benefit of being verifiable at least in part through Defendants' publicly available documents, as DHHS's own policy manuals indicate that,
23  in at least one respect – the treatment of voter preference forms that are left blank – DHHS's policies violate Section 7 of the NVRA. *See* "Nevada DWSS TANF and SNAP Application Processing Policy," attached as
24  Exhibit C, at § 146(7); "Nevada DWSS Child Care Policy Manual, Child Care Program Overview," Dec. 1, 2009, attached as Exhibit D, at § 123.4. *Cf. Valdez v. Squier*, 676 F.3d 935, 947 (10th Cir. 2012) (holding that
25  when an applicant does not answer the voter preference question, the agency must provide the applicant with a voter registration form).

26  [6] When violations occur within 30 days before an election for Federal office, such as the primary that occurred
27  on June 12, 2012, aggrieved persons, such as Plaintiffs, need not provide any notice before filing a complaint. 42 U.S.C. § 1973gg-9(b)(3).

28                                                      -11-

1

(i)     *Defendants' Violations of the NVRA Are Ongoing*

2       The alleged violations of Section 7 of the NVRA by Defendants are ongoing.  Compl.

3  ¶¶ 7, 14, 42, 51.  Ongoing violations may be demonstrated by "(1) proving violations that

4  continue on or after the date the complaint is filed, or (2) adducing evidence from which a

5  reasonable trier of fact could find a continuing likelihood of a recurrence in intermittent or

6  sporadic violations." *Sierra Club v. Union Oil Co. of Cal.* 853 F.2d 667, 671 (9th Cir. 1988).

7  In a case brought under the Clean Water Act, which has a similar notice provision to the

8  NVRA, the Ninth Circuit held that the absence of a required program is an ongoing violation

9  until such program is implemented.  *S.F. BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153,

10  1158 (9th Cir. 2002).  Here, too, Defendants' failure properly to implement voter registration

11  assistance programs required by the NVRA, despite pressure from Démos to do so, is an

12  ongoing violation of Section 7 of the NVRA.  Plaintiffs' investigation, as set forth in the

13  Notice Letter and the Complaint, demonstrates that the Defendants violated Section 7 of the

14  NVRA by systematically failing to implement required voter registration assistance programs.

15  In challenging Plaintiffs' Complaint on the theory that the violations were isolated past

16  violations, Defendants bear the burden of proving that these violations are not ongoing.

17  *Union Oil*, 853 F.2d at 671 ("The defendant must show that 'there is no reasonable

18  expectation that the wrong will be repeated'. . . and must make it 'absolutely clear that

19  allegedly wrongful behavior could not reasonably be expected to recur'") (citing *Gwaltney of

20  Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 50 (1987)) (internal citations omitted).

21  Defendants' motion falls far short of that high hurdle.

22       The Court herein must accept all factual allegations, and the reasonable inferences

23  drawn therefrom, as true for purposes of deciding the motion to dismiss.  Notably, Defendants

24  ///

25  ///

26  ///

27  ///

28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, NV 9511
Tel: (775) 688-3000

1   do not even assert that the violations specifically identified by Plaintiffs in the Notice Letter

2   did not occur or were remedied on or shortly after December of 2011.[7]

3                    (ii)    *The May 10 Letter Gave Proper Notice to Defendants*

4          The Notice Letter properly put Defendants on notice of their ongoing violations of

5   Section 7 of the NVRA.  Defendants could not credibly assert that they believed that the

6   December 2011 violations were isolated incidents that would not recur; instead, they argue

7   only that "[n]othing in the letter or the Complaint identifies any violation that occurred later

8   than December 2011." Defs.' Mot. at 5.  But Plaintiffs are not required to identify separate

9   incidents that violate the NVRA, only to give notice of the violations sufficient for

10  Defendants to correct them.[8]  The Notice Letter sufficiently expresses that the Defendants'

11  violations of the NVRA are not limited to the specific transactions identified in December

12  2011 and are ongoing.

13         When infractions are ongoing, "as long as a notice letter is reasonably specific as to

14  the nature and time of the alleged violations, the plaintiff has fulfilled the notice requirement."

15  *S.F. BayKeeper,* 309 F.3d at 1155.  The notice letter need not describe all details of each

16  violation; instead, it must be descriptive enough that the defendant can identify the issue and

17  correct the problem. *See Waterkeepers N. Cal. v. AG Indus. Mfg.*, 375 F.3d 913, 918 (9th Cir.

18  2004).

19         The Notice Letter here advised Defendants of ongoing violations in multiple offices,

20  noting that "Nevada is systematically failing to provide voter registration services mandated

21  by the NVRA at its public assistance offices" and that Defendants' offices "are failing to

22

---

23  [7] Instead, Defendants attempt to argue that if they had been given 90 days to respond the "Court's intervention would not be necessary at all."  However, this statement is belied by the fact that Plaintiffs' counsel, Démos,

24  raised issues concerning the agencies' Section 7 compliance with Defendants as early as 2008, Compl. ¶13, and although well over three years have passed, Nevada's violations of Section 7 of the NVRA are still ongoing.

25  Functionally, the State has been on notice of its failures for that entire time.  Any implication that the State would have remedied its violations if given another 58 days strains credulity.

26  [8] Under Defendants' theory, the only "violations" that one could insert in a valid notice letter would be violations that arise in specific transactions, as Defendants discount or ignore all other violations.  If that were the case,

27  states could escape litigation simply by remedying the violations that occurred in those specific transactions, hardly advancing the NVRA's stated goal of promoting voter registration.

28                                                    -13-

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, NV 9511
Tel: (775) 688-3000

1    regularly distribute voter registration applications to public assistance clients, as the NVRA

2    requires." Notice Letter at 2. Notifying defendants of their <u>systematic failures</u> and that they

3    were <u>failing to regularly comply</u> with their obligations under the NVRA, accompanied by

4    examples demonstrating the specific nature of the failures, Notice Letter at 2-3, was sufficient

5    to put Defendants on notice of ongoing violations. These statements, made in the May 10

6    notice letter, indicated present violations as of May 10, well within the 120-day window for a

7    shortened notice period. As the Ninth Circuit has held, "[i]ntermittent or sporadic violations

8    do not cease to be ongoing until the date when there is no real likelihood of repetition."

9    *Union Oil*, 853 F.2d at 671 (quoting *Gwaltney*, 844 F.2d at 172) (emphasis added in *Union*

10   *Oil*). Because the violations are ongoing, and Defendants have not even attempted to show

11   otherwise, Plaintiffs' Notice Letter was sufficient.

12                          (iii)    *Plaintiffs Timely Filed the Complaint*

13          Third, Plaintiffs filed the Complaint within the valid statutory time period. Violations

14   of the NVRA occurring within 120 days of an election require giving the Defendants notice

15   and a 20-day period to cure the violations before bringing a civil action, *see* 42 U.S.C. §

16   1973gg-9(b)(2), and violations occurring within thirty days of an election require no notice.

17   *See* 42 U.S.C. § 1973gg-9(b)(3). Here, the Plaintiffs' Notice Letter and Complaint allege

18   ongoing violations of the NVRA, supported by facts leading to a reasonable inference of such

19   violations. Defendants have not provided evidence that such violations were cured prior to

20   the conclusion of the notice period or the filing of the Complaint.[9] Therefore, Plaintiffs had

21   standing to file the instant Complaint.

22          Because Plaintiffs complied with the notice requirements of 42 U.S.C § 1973gg-9(b)

23   and have alleged ongoing violations of the NVRA, Defendants' Motion to Dismiss should be

24   denied.

25   ///

---

26   [9] Even if Defendants did provide such evidence, the Court would not consider it in the context of the present
27   motion to dismiss.

28                                          -14-

**CONCLUSION**

For the reasons stated above, Plaintiffs respectfully request that this Court deny Defendants' Motion to Dismiss the Complaint in this action, and such other and further relief as the Court believes is just and proper.

DATED this 20th day of July, 2012.

WOODBURN AND WEDGE

By: _____
W. Chris Wicker (Bar # 1037)
wwicker@woodburnandwedge.com

Neil Steiner*
neil.steiner@dechert.com

David Rubino*
Dēmos
drubino@demos.org

Robert A. Kengle*
bkengle@lawyerscommittee.org
Alan Martinson*
amartinson@lawyerscommittee.org
Lawyers' Committee for Civil Rights
Under Law

Sarah Brannon*
sbrannon@projectvote.org
Michelle Rupp*
mrupp@projectvote.org
Project Vote

Kim Keenan*
kkeenan@naacpnet.org
Anson Asaka*
aasaka@naacpnet.org
National Association for the
Advancement of Colored People, Inc.

*Attorneys of Record for Plaintiffs National Council of La Raza, Las Vegas Branch of the NAACP, and Reno-Sparks Branch of the NAACP*

**pro hac vice* admission to be sought

-15-

1

## **CERTIFICATE OF SERVICE**

2

      I hereby certify that I am an employee of Woodburn and Wedge and that on this date,

3

I caused to be sent via electronic mail, a true and correct copy of PLAINTIFFS'

4

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS to:

5

6

      Kevin Benson

7

      Office of the Nevada Attorney General
      100 North Carson Street

8

      Carson City, Nevada 89701-4717
      *kbenson@ag.nv.gov*

9

10

      DATED this ___ day of July, 2012.

11

12

      By: _____
              Kelly N. Weaver

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-16-

1

2

**EXHIBITS TO PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO DISMISS**

3    Exhibit A:   Declaration of Denisha Phillips, dated July 6, 2012, 2 pages.

     Exhibit B:   Declaration of Kendra Hulbert, dated July 6, 2012, 2 pages.

4    Exhibit C:   Nevada DWSS TANF and SNAP Application Processing Policy, 37

5                 pages.

     Exhibit D:   Nevada DWSS Child Care Policy Manual, Child Care Program

6                 Overview, 29 pages.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

WOODBURN AND WEDGE
6100 Neil Road, Ste. 500
Reno, NV 9511
Tel: (775) 688-3000