CATHERINE CORTEZ MASTO
Attorney General
KEVIN BENSON
Senior Deputy Attorney General
Nevada Bar No. 9970
Attorney General's Office
100 North Carson Street
Carson City, Nevada 89701-4717
(775) 684-1114
Attorneys for Ross Miller, Secretary
of State and Michael J. Willden, Director
of the Department of Health and Human
Services

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

NATIONAL COUNCIL OF LA RAZA, LAS ) CASE NO. 3:12-cv-00316-RCJ-VPC
VEGAS BRANCH OF THE NAACP )
(BRANCH 1111), and RENO-SPARKS )
BRANCH OF THE NAACP (BRANCH 1112), )
) **DEFENDANTS' REPLY IN SUPPORT OF**
Plaintiffs, ) **MOTION TO DISMISS**
)
vs. )
)
ROSS MILLER, in his official capacity as )
Secretary of State of the State of Nevada; and )
MICHAEL WILLDEN, in his official capacity )
as Director of the Department of Health & )
Human Services of the State of Nevada, )
)
Defendants. )
)

Defendants Ross Miller, Secretary of State, and Michael Willden, Director of the Department of Health and Human Services, by and through counsel, Catherine Cortez Masto, Attorney General, and Kevin Benson, Deputy Attorney General hereby replies to Plaintiffs' Opposition (#30) to Defendants' Motion to Dismiss (#22).

## INTRODUCTION

As discussed in the Defendant's Motion to Dismiss, the Plaintiffs' May 10, 2012 Notice Letter does not identify any violation that occurred within 120 of a federal election. Nor does the Complaint allege any such violations within that time period. Therefore, Defendants were entitled to a statutory

90-day period to cure any alleged violations under 42 U.S.C. § 1973gg-9(2)(b).

In response, Plaintiffs do not identify any specific violations that occurred within 120 days of the June 12, 2012 primary. Instead, they argue that they did not need to show any particular violation because their Notice Letter alleged ongoing, continuous violations. Therefore, according to Plaintiffs, it must be inferred that such violations continued into the 120-day period before the June 12, 2012 primary election. *See* Opps., p. 11. They further argue that, since the violations are allegedly ongoing, they must have also occurred within 30 days of the June 12 primary election, and therefore no notice was required at all. *See* Opps., p. 11, ll. 10-14.

Stripped down to its essence, the legal question is whether simply alleging an ongoing or continuous violation relieves a plaintiff of the notice and statutory time-to-cure periods provided under the NVRA.

The Court must reject Plaintiffs' arguments because they render the notice provisions of the NVRA nugatory and meaningless. Regardless of whether a continuous violation is alleged, a plaintiff must give notice of at least one discrete violation within the 120-day period before a federal election in order to take advantage of the shortened 20-day period to cure.

## POINTS AND AUTHORITIES

I.  <u>Alleging a "continuing violation" is not sufficient to satisfy the notice provisions of the NVRA.</u>

Under the NVRA, there are three distinct notice and time-to-cure periods. Subsection 3 of 42 U.S.C. § 1973gg-9(b) states that if the violation occurs within 30 days of a federal election, no notice and no time to cure is necessary before bringing suit. 42 U.S.C. § 1973gg-9(b)(3). Under Subsection 2, if the violation occurs within 120 days, then the defendant must be given 20 days to cure. 42 U.S.C. § 1973gg-9(b)(2). If the violation occurs more than 120 days before a federal election, the defendant has 90 days to cure the alleged violation. *Id.*

If the Court accepts Plaintiffs' "continuing violation" theory, then the result is that these three distinct categories are effectively wiped out of the law, and no notice or time to cure is ever required. All that is necessary is to simply allege that there is a continuing violation, without ever identifying any particular instance where the NVRA was violated. According to Plaintiffs, if a continuing violation is

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

alleged, it will necessarily always occur within 30 days of a federal election, and therefore no notice or time to cure is required. *See* Opposition, p. 11, ll. 13-14 (describing Plaintiffs' 20-day notice in this case as "gratuitous.").

Plaintiffs' position should be rejected because this would render the notice requirements completely meaningless. Courts should not assume that Congress intended to pass vain or meaningless legislation. *Int'l. Ass'n of Machinists v. BF Goodrich*, 387 F.3d 1046, 1057 (9th Cir. 2004). Nor should statutes be construed in a way that makes their provisions superfluous or meaningless. *United States v. Cabaccang*, 332 F.3d 622, 627 (9th Cir. 2003).

The cases Plaintiffs rely on do not support their argument that merely alleging a continuing violation is sufficient to bypass all of the notice requirements. They rely on three cases, all of which dealt with the Clean Water Act: *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153 (9th Cir. 2002); *Sierra Club v. Union Oil Co. of California*, 853 F.2d 667 (9th Cir. 1988); *Waterkeepers Northern California v. AG Industrial Mfg., Inc.*, 375 F.3d 913 (9th Cir. 2004). *See* Opps., pp. 12-13.

The Clean Water Act ("CWA") requires notice to be given 60 days before filing suit, in all citizen lawsuits. 33 U.S.C. § 1365(b). Additionally, regulations prescribe what the notice letter must contain. 40 C.F.R. § 135.3(a); *BayKeeper*, 309 F.3d at 1157. In none of those cases was it disputed that the plaintiffs did not wait the requisite 60 days. Unlike the NVRA, the CWA does not provide for different notice periods that depend on when the violation occurred. As discussed below, even when a continuing violation is alleged, plaintiffs under the CWA must always give at least 60 days' notice.

In *Union Oil*, the issue was whether the Clean Water Act allows a citizen to sue for "wholly past" violations, or whether it is necessary that there must be a continuing violation in order for federal courts to have jurisdiction over a citizen lawsuit. 853 F.2d at 669. That case was decided by the Ninth Circuit following reversal and remand by the U.S. Supreme Court to reconsider the Ninth Circuit's original holding in light of the Court's decision in *Gwaltney v. Chesapeake Bay Foundation*, 484 U.S. 49 (1987). *Id.* at 668.

In *Gwaltney*, the Court held that, unlike government regulators, citizens cannot sue for *past* violations; they may bring suit for civil penalties under the CWA only if they are also seeking to enjoin or otherwise abate an ongoing violation. 484 U.S. at 58-59. The Court construed the CWA's language

permitting citizens suits against "any person... who is alleged to be in violation" to mean that the person must *presently* be in violation, i.e., that there must be a continuing violation, rather than just a wholly past violation, in order for federal courts to have jurisdiction over citizen claims. *Id.* at 57, 64.

As the Court observed, if citizens were permitted to sue for a wholly past violation, the requirement to give 60 days' notice to the alleged violator would serve no purpose, since the violation would already have been remedied. *Id.* at 60. In such cases, "the requirement of notice to the alleged violator becomes gratuitous." *Id.* Thus the Court found that the notice provisions of the CWA supported its holding that citizen plaintiffs are not permitted to sue for only past violations. *Id.*

In *Union Oil*, the Ninth Circuit reinstated its previous decision after remand from the U.S. Supreme Court, finding that the citizen plaintiffs had adequately alleged a continuing violation, as the U.S. Supreme Court held was necessary for jurisdiction. 853 F.2d at 670. It applied the standard laid down in *Gwaltney* specific to citizen suits under the CWA. *Id.*

In short, the issue in *Gwaltney* and *Union Oil* was not whether a continuing violation relieved plaintiffs of complying with the 60-day period to cure. The issue was whether alleging a continuing violation was necessary for a private cause of action the CWA, or whether citizen plaintiffs could sue for only wholly past violations. Relying in part on the requirement to give 60 days' notice before suing, the Court concluded that there must be a continuing violation; otherwise, the notice requirements serve no purpose. Thus, if anything, these cases Defendants' position that, even if a continuing violation is alleged, they still must give notice before suing.

Furthermore, unlike the CWA, the NVRA clearly contemplates discrete, past violations. The NVRA repeatedly refers to persons "aggrieved," and when violations "occurred" in the past tense. *See* 42 U.S.C. § 1973gg-9(b). The CWA, by contrast, was written entirely in the present tense, and referred to potential future harm, which the Court characterized as "[o]ne of the most striking indicia" that citizens could only sue for on-going violations. *Gwaltney*, 484 U.S. at 59.

Under the particular statutory framework of the CWA, including its notice provisions, an allegation of a continuing violation was not just permitted, it was *necessary* for the court to have subject matter jurisdiction. In this case, by contrast, if simply alleging an on-going violation was sufficient notice for purposes of Subsection 3 (which does not require notice when a violation occurs within 30

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

4

days of a federal election), then the notice requirements under Subsection 2 would be effectively eviscerated.

This is demonstrated by Plaintiffs' argument that, because they alleged a continuous violation, they were actually not required to give any notice at all, since one could infer that a continuing violation would have occurred within 30 days of the June 12, 2012 primary election. *See* Opps., p. 11, ll. 10-13. In other words, according to Plaintiffs, no notice and time to cure is ever required under the NVRA, so long as the plaintiff simply alleges an on-going violation.

The plain language of the NVRA shows that this result was not Congress' intent. Congress would not have bothered to provide for three different levels of notice if it had intended that no notice is necessary for continuing violations. Nor would it have referred to violations in the past tense. Instead, Congress provided a specific "stepped" approach based on when the violation occurred: the closer to the election, the less time is allowed to cure. This is a sensible and careful approach that appropriately balances the interests of persons who might be aggrieved, while also affording a reasonable opportunity for the state to cure any alleged violations without facing litigation. *See Association of Community Organizations for Reform Now v. Miller*, 129 F.3d 833, 838 (6th Cir. 1997) (purpose of the NVRA's notice requirements are to allow an opportunity to cure before litigation is filed).

Additionally, even if a violation is continuous or on-going, that alone provides no reason to excuse compliance with the notice requirements. Even continuing violations may be simply the result of oversight or a misunderstanding of what is required, which may be easily remedied, if the defendant is given the chance. By contrast, the cases where courts have excused non-compliance with the NVRA's notice requirements either involve situations where a discrete violation was shown within 30 days of the election, or where the defendants have affirmatively stated that they will not comply with the NVRA, and have no intention of ever doing so.

For example, in *National Coalition for Students with Disabilities v. Scales*, 150 F.Supp.2d 845, 851-52 (D.Md. 2001), the court found that plaintiffs were not required to give notice because the complaint adequately alleged that a particular, named student was not given voter registration materials when she went to a disabilities office within 30 days of a federal election.

////

In *Miller*, 129 F.3d at 835, Michigan's governor issued an executive order declaring that the state would not comply with the NVRA unless federal funds were made available to do so. Under these circumstances, the court concluded that giving formal notice, especially where defendants already had actual notice, would be futile. *Id.* at 838.

In *Georgia State Conference of N.A.A.C.P. v. Kemp*, 841 F.Supp.2d 1320, 1333-34 (N.D.Ga. 2012), the plaintiffs sent a notice letter dated January 25, 2011, which alleged systemic and ongoing violations as a result of Georgia's policy that it only provided voter registration forms to public assistance clients who applied in person. In that case, the NAACP and other organizational plaintiffs waited more than 90 days to file suit, therefore the timing of filing the complaint was not at issue for those plaintiffs. *See id.*; *see also* Complaint (Docket #1) Case No. 1:11–CV–1849–CAP (filed June 6, 2011).

However, the court found one individual plaintiff, Murphy, failed to give proper notice, and his situation was not made known to the defendants until they were served with the complaint. *Id.* at 1335. Although he alleged that he was not offered voter registration forms during his contacts with public assistance agencies (*id.* at 1324), there was nothing alleging that he was a member of, or similarly situated to the NAACP or other organizational plaintiffs, or that he was represented by them, such that the January 25, 2011 letter could be found to have notified defendants of his situation. *Id.* at 1335. The court also noted that the particulars of his claim were unique to him. *Id.* The court therefore dismissed Murphy's claims for lack of proper notice. *Id.*

Accordingly, whether or not an ongoing violation is alleged, the NVRA requires that plaintiffs show at least one discrete violation that occurred within the 120-day time period in order to invoke the shorter 20-day period to cure. *See* 42 U.S.C. § 1973gg-9(b)(2). This effectuates all parts of the NVRA's notice requirements. It is also consistent with the NVRA's use of the past tense when referring to violations. But most importantly, it carries out the purpose of the notice requirements, which is to give the defendants a reasonable time to cure the alleged violations before facing litigation. *Miller*, 129 F.3d at 838.

In this case, there has not been any blanket refusal by Defendants to comply with the law, like in *Miller*. Nor have Plaintiffs shown any discrete violation within 30 (or even 120) days of the June

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

primary, like in *Scales*. Instead, this case is like *Kemp*, where the court found that notice was proper for the plaintiffs who waited the required 90 days, but dismissed the plaintiff who failed to give any notice, even though the other plaintiffs had alleged continuous and ongoing violations.

Since Plaintiffs in this case have not given notice of any violation of the NVRA that occurred within 120 days of the June 12, 2012 primary, the Defendants are entitled to 90 days to cure the alleged violations. 42 U.S.C. § 1973gg-9(b)(2). Thus the Plaintiffs have not complied with the notice requirements, regardless of whether they allege a continuing or ongoing violation. Notice is mandatory, and failure to give notice requires dismissal. *Broyles v. Texas*, 618 F.Supp.2d 661, 691-92 (S.D.Tex. 2009) (*aff'd* 381 Fed.Appx. 370 (5th Cir. 2010)).

II.   The existence of an allegedly "flawed" policy does not excuse giving proper notice.

First, whether or not the Complaint (as opposed to the Notice Letter) alleged continuous violations is irrelevant because the Complaint itself cannot serve as "notice" under the NVRA, unless it clearly alleges a specific violation that occurred within 30 days of a federal election. *See Broyles*, 618 F.Supp.2d at 691 (notice ineffective when the only "notice" to defendants came in the form of a summons and complaint); *cf. Scales*, 150 F.Supp.2d at 851-52 (notice was not necessary because the complaint alleged a discrete violation that occurred within 30 days of election).

Thus to the extent the Complaint states that the alleged violations are the result of current policies, the Complaint itself cannot be the basis for sufficient notice. *See* Opps., p. 11, ll. 6-14. Since the Complaint does not allege any discrete violation that occurred within 30 days before the June 12, 2012 primary, notice was still required. 42 U.S.C. § 1973gg-9(b)(2).

Second, contrary to Plaintiffs' arguments, even if the alleged violation is the result of a written policy, that does not excuse them from the notice requirements. *See* Opps., p. 11, ll. 10-13 (arguing that a flawed policy is, on its face, an ongoing violation that continues until the policy is remedied, and therefore no notice is required at all, because the policy will continue within 30 days of an election).

As discussed above, the NVRA's notice requirements are chiefly aimed at allowing defendants a time to cure the violations before facing litigation. *Miller*, 129 F.3d at 838. Fixing a "flawed policy" is exactly the kind of remediation that the NVRA contemplates and encourages. That purpose would be frustrated, however, if plaintiffs could file suit without notice whenever they discover what, in their

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

opinion, is an illegal policy.

This case is a prime example of why notice is required, even if the alleged violations result from a written policy.[1] Plaintiffs claim that DWSS' manual for processing applications is incorrect because it states that when clients fail to check either the "yes" or "no" box under the question asking if they would like to register to vote, that this is treated as a declination. *See* Opps., p. 11, n. 5. For the proposition that this practice is illegal, Plaintiffs rely on a Tenth Circuit decision that was decided February 21, 2012. *See Valdez v. Squier*, 676 F.3d 935 (10th Cir. 2012). No other circuit court before or since has held that failing to check either box is *not* a declination to register to vote. And of course, the Tenth Circuit's decision is not binding law in Nevada. Therefore it is very much an open question whether the policy is in fact "flawed" in any respect.

But more to the point: prior to the Tenth Circuit's recent decision, no one could have understood that a policy treating the failure to check either box as a declination was illegal, since the NVRA itself requires the forms to state that failure to check either box is a declination to register to vote. *See* 42 U.S.C. § 1973gg-5(a)(6)(B)(iii) (requiring forms to clearly state: "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE AT THIS TIME."). Additionally, the fact that the Tenth Circuit's decision is from another jurisdiction and is not binding in Nevada makes notice all the more important.

Giving notice to the defendants that their policy is or might be illegal, in light of a new interpretation of the law, allows defendants an opportunity to evaluate the policy, the law, and to take any necessary corrective action. Particularly where the change in law is recent and is not binding on defendants, excusing plaintiffs from giving any notice at all simply because a policy exists frustrates rather than furthers the Congressional intent to allow defendants a reasonable time to come into compliance before facing litigation.

Finally, Plaintiffs argue that the declarations of Ms. Phillips and Ms. Hulbert that they were not given the opportunity to register to vote on June 19, 2012 demonstrate the continuing nature of the violations. *See* Opps., p. 7, ll. 11-18. However, each of the alleged violations on June 19, 2012 occurred

---

[1] Defendants do not concede that there are or have been any violations of the NVRA. Rather, for purposes of this Motion to Dismiss, it is only assumed *arguendo*. Furthermore, the May 10, 2012 notice did not identify any written policy that allegedly violates the NVRA.

Office of the Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

more than 120 days from a federal election. Therefore they cannot be used to invoke a shorter time to cure period. *See* 42 U.S.C. § 1973gg-9(b)(2) (if violation occurred more than 120 days from a federal election, defendants have 90 days to cure).

Even if, as Plaintiffs contend, these incidents offer "evidence" of a continuing violation,[2] that is not sufficient to excuse them from the notice provisions. Alleging a particular violations *after* filing the Complaint does not serve the purpose of giving notice, since obviously at that point the Defendants have no opportunity to cure. This is no different than relying on allegations that appear for the first time in the Complaint, which, absent a discrete violation within 30 days of an election, is not proper notice under the NVRA. *See Broyles*, 618 F.Supp.2d at 691 (notice ineffective when the only "notice" to defendants came in the form of a summons and complaint).

## CONCLUSION

In sum, the NVRA has three very specific notice provisions. These provisions are designed to give defendants (who are invariably state agencies) different amounts of time to cure violations, depending on how long before the election it occurred. Sensibly, the NVRA permits a longer period to cure if the violations occurred longer than 120 days before the election. In this case, Plaintiffs have not identified a single violation that occurred within 120 days before the June 12, 2012 primary. Instead, they argue that they need not do so simply because they alleged an ongoing violation.

But this construction would render the notice requirements practically meaningless. It is also at odds with the plain language of the NVRA and the case law interpreting it. Nothing in the NVRA permits an exception to the notice requirements for ongoing or continuous violations. Nor have the courts held that alleging an ongoing violation is by itself sufficient to bypass the notice requirements.

////
////
////
////
////
////

---

[2] As discussed in the Defendants' opposition to the Motion for Preliminary Injunction, neither of these incidents shows any violation of the NVRA.

Office of the Attorney General
100 N. Carson St.
Carson City, NV
89701-4717

9

Instead, the NVRA requires plaintiffs to show at least one specific violation that occurred within 120 days of a federal election in order to trigger the shorter 20-day period to cure. Since Plaintiffs have failed to show such a violation in this case, Defendants respectfully request that this Court DISMISS Plaintiffs' Complaint in its entirety.

DATED this 30th day of July, 2012.

                      CATHERINE CORTEZ MASTO
                      Attorney General

By: _____
    KEVIN BENSON
    Senior Deputy Attorney General
    Bar No. 9970
    Attorney General's Office
    100 North Carson Street
    Carson City, Nevada 89701-4717
    Attorneys for Defendants
    ROSS MILLER, Secretary of State
    and MICHAEL J. WILLDEN, Director
    of the Department of Health and
    Human Services

## CERTIFICATE OF SERVICE

I declare that I am an employee of the State of Nevada and on this 30th day of July, 2012, I served a copy of the foregoing Defendants' Reply in Support of Motion to Dismiss, by U.S. District Court CM/ECF Electronic filing to:

W. Chris Wicker, Esq.
Woodburn and Wedge
Post Office Box 2311
Reno, Nevada 89511
Email: cwicker@woodburnandwedge.com

**Alan Martinson**
Lawyers' Committee for Civil Rights Under Law
1401 New York Avenue NW
Ste 400
Washington DC, 20005

**Michelle Rupp**
Project Vote
1350 Eye Street, NW
Ste 1250
Washington DC, 20005

I further declare that I am an employee of the State of Nevada and on this 30th day of July, 2012, I served a copy of the foregoing Defendants' Reply in Support of Motion to Dismiss, by mailing the foregoing document via United States Postal Service to the following:

**Anson Asaka**
National Association for the Advancement of Colored People
NAACP National Office
4805 Mount Hope Drive
Baltimore, MD 21215

**Sarah Brannon**
Project Vote
1350 Eye Street, NW
Ste 1250
Washington DC, 20005

**Jamie Halavais**
Dechert LLP
1095 Avenue of the Americas
New York, NY 10036

////

1  Kim Keenan
   National Association for the Advancement of Colored People,
2  NAACP National Office
   4805 Mount Hope Drive
3  Baltimore, MD 21215

4  Bob Kengle
   Lawyers' Committee for Civil Rights Under Law
5  1401 New York Avenue, NW
6  Ste 400
   Washington DC, 20005
7

8  David Rubino
   Demos
9  220 Fifth Avenue
   2d Floor
10 New York, NY 10001

11
   Neil Steiner
12 Dechert LLP
   1095 Avenue of the Americas
13 New York, NY 10036

14

15                                          _____
                                            Employee of the State of Nevada
16                                          Office of the Attorney General

Office of the
Attorney General
100 N. Carson St.
Carson City, NV
89701-4717