THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

DANIEL G. BOGDEN
United States Attorney

GREG ADDINGTON
Assistant United States Attorney

T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL (D.C. Bar # 458792)
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
NWB 7202
Washington, D.C. 20530
Telephone: (202) 305-7766
Facsimile: (202) 307-3961

Attorneys for the United States

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), and RENO-SPARKS BRANCH OF THE NAACP (BRACH 1112)<br><br>Plaintiffs,<br><br>v.<br><br>ROSS MILLER, in his official capacity as Secretary of State of the State of Nevada; and MICHAEL WILLDEN, in his official capacity as Director of the Department of Health & Human Services of the State of Nevada,<br><br>Defendants. | Case No. 3:12-cv-00316-RCJ-VPC<br><br>**STATEMENT OF INTEREST OF THE UNITED STATES** |

## INTRODUCTION

The United States files this Statement of Interest pursuant to 28 U.S.C. § 517 because this case presents an important question regarding the proper construction of the National Voter Registration Act of

1993 ("NVRA"), 42 U.S.C. § 1973gg *et seq.*

The NVRA, *inter alia*, expands the opportunity for voter registration at certain offices that provide public assistance or services to persons with disabilities, which are designated as voter registration agencies ("VRAs"). The Attorney General has enforcement responsibility for the NVRA, 42 U.S.C. § 1973gg-9(a). Resolution of this issue may affect the Department of Justice's enforcement responsibilities, states' obligations under the NVRA, and opportunities for citizens to receive voter registration forms.

Plaintiffs National Council of La Raza, Las Vegas Branch of the NAACP (Branch 1111), and Reno-Sparks Branch of the NAACP (Branch 1112) ("Plaintiffs") have moved for a preliminary injunction (ECF 25), in part, on the ground that a policy of Nevada's Department of Health & Human Services (DHHS) regarding distribution of voter registration forms on its face violates Section 7 of the NVRA, 42 U.S.C. § 1973gg-5 ("Section 7"). Under the policy, a DHHS office need not provide a voter registration form to an applicant, unless the applicant has affirmatively requested one.

As explained below, this policy violates the requirement of Section 7 that VRAs distribute a voter registration form to each applicant at a qualifying event unless the applicant "in writing, declines to register to vote." 42 U.S.C. § 1973gg-5(a)(6)(A). The Tenth Circuit in *Valdez v. Squier* recently held that the very same policy employed by New Mexico's Human Services Department violated Section 7. 676 F.3d 935, 943-47 (10th Cir. 2012), *aff'g Valdez v. Herrera*, 2010 U.S. Dist. LEXIS 142209 (D.N.M. Dec. 21, 2010). In opposing the motion for preliminary injunction, Defendants argue that *Valdez* was wrongly decided and that DHHS's policy complies with Section 7. (ECF 32) ("Opp."). The interpretation of Section 7 advanced by Defendants, however, ignores and nullifies statutory text in Section 7 and runs contrary to the statute's goal of providing and maximizing new opportunities for voter registration. Therefore, a preliminary injunction enjoining DHHS's policy limiting distribution of voter registration forms to applicants who affirmatively request a form should issue.

# STATUTORY FRAMEWORK

In 1993, Congress enacted the NVRA to expand the voter registration opportunities of United States citizens. Pursuant to the NVRA, citizens now may register to vote at the time they obtain a driver's license, by mail, or in interactions with certain offices that provide public assistance or disability services, which are designated voter registration agencies (VRAs). 42 U.S.C. §§ 1973gg-3-1973gg-5. Mandatory VRAs include "all offices in the State that provide public assistance." 42 U.S.C. § 1973gg-5(a).

Section 7 of the NVRA sets forth the duties of a VRA. 42 U.S.C. § 1973gg-5(a)(4)-(6) and (d). When an applicant seeks services or assistance from a VRA, including an application for benefits, a renewal or recertification of benefits, or a notice of a change of address (*i.e.* a "qualifying event"),[1] the VRA must (1) provide the applicant a voter registration form unless the applicant declines, in writing, the opportunity to register to vote; (2) provide the applicant a voter information form; (3) provide the applicant assistance in completing the voter registration form to the same extent the agency provides assistance in completing all other forms, unless the applicant declines such assistance; and (4) submit all completed registration applications received to the appropriate election official. 42 U.S.C. § 1973gg-5(a)(6), (d). VRA staff are prohibited from engaging in activity that has the "purpose or effect of * * * discourag[ing] the applicant from registering to vote." 42 U.S.C. § 1973gg-5(a)(5)(C); *see* 42 U.S.C. § 1973gg-5(a)(6)(B)(v) (notice of an applicant's right to file a complaint based on certain actions of a VRA official); § 1973gg-10(1) (criminal penalties for interference with attempting to register to vote or exercising any right under the NVRA).

The voter registration form is distinct from the voter information form; each form has different content and serves different purposes.[2] *See* 42 U.S.C. § 1973gg-5(a)(6)(A) and (B). A voter registration

---

[1] We use the term "applicant" to refer to any person who engages in a qualifying event with a VRA as set forth in 42 U.S.C. § 1973gg-5(a)(6)(A), including applicants, persons who are renewing or recertifying benefits or services, and persons who submit a change of address relating to such service or assistance.

[2] While the Tenth Circuit in *Valdez* refers to a "declination form," we refer to this document as a "voter information form."

form, as its name reflects, is required for a citizen to register to vote.[3] 42 U.S.C. § 1973gg-7. Significantly, a VRA must provide a voter registration form to each applicant during a qualifying event *"unless the applicant, in writing, declines to register to vote."* 42 U.S.C. § 1973gg-5(a)(6)(A) (emphasis added). In other words, subparagraph 5(a)(6)(A) requires the systematic distribution of a voter registration form, absent an applicant's affirmative declination of voter registration "in writing."

Separate from the requirements of subparagraph 5(a)(6)(A), subparagraph 5(a)(6)(B) requires VRAs to provide a voter information form to each applicant during a qualifying event. 42 U.S.C. § 1973gg-5(a)(6)(B). Subparagraph 5(a)(6)(B), 42 U.S.C. § 1973gg-5(a)(6)(B), identifies the requisite contents and instructions regarding this form. The voter information form must include:

> (i) the question, "If you are not registered to vote where you live now, would you like to apply to register to vote *here today*?"; [and]
>
> * * *
>
> (iii) boxes for the applicant to check to indicate whether the applicant would like to register or declines to register to vote (failure to check either box being deemed to constitute a declination to register *for purposes of subparagraph (C)*), together with the statement (in close proximity to the boxes and in prominent type), "IF YOU DO NOT CHECK EITHER BOX, YOU WILL BE CONSIDERED TO HAVE DECIDED NOT TO REGISTER TO VOTE *AT THIS TIME.*"

42 U.S.C. § 1973gg-5(a)(6)(B) (emphasis added by italics).

Subparagraph (C), 42 U.S.C. § 1973gg-5(a)(6)(C), states that a VRA must "provide to each applicant who does not decline to register to vote the same degree of assistance with regard to the completion of the registration application form as is provided by the office with regard to the completion of its own forms, unless the applicant refuses such assistance."

The voter information form also advises the applicant that she may receive assistance in completing the form or she may complete the form "in private." 42 U.S.C. § 1973gg-5(a)(6)(B)(iv). The form further informs the applicant that she may file with a designated point of contact a complaint

---

[3] A VRA may use a national voter registration form that is developed by the Election Assistance Commission or its own version that requires the equivalent information. 42 U.S.C. § 1973gg-5(a)(6)(A)(i) and (ii); *see* 42 U.S.C. § 1973gg-7 (mail registration form).

4

alleging interference with her rights to register or not register to vote, her right to privacy in making this decision, or her right to choose a political party. 42 U.S.C. § 1973gg-5(a)(6)(B)(v).

Subsection (d), 42 U.S.C. § 1973gg-5(d), requires transmittal of "a completed registration application accepted at a voter registration agency" to the appropriate election official within a certain time period. Subsection (d) does not require applicants to submit completed voter registration forms to a VRA, nor does it require VRAs to collect completed registration forms from applicants. *See id.*

## ARGUMENT

Under DHHS's policy, when an applicant leaves a voter information form blank, it is treated as a declination of voter registration, and thus, the agency need not provide the applicant with a voter registration form. Defendants' contention that this policy complies with the NVRA finds no support in the statute's text or structure. Section 7 does not make distribution of a voter registration form contingent upon an applicant's affirmative request. Instead, the plain language of Section 7 mandates that VRAs provide applicants with a voter registration form when they engage in a qualifying event "unless the applicant, in writing, declines to register to vote." 42 U.S.C. § 1973gg-5(a)(6)(A). Moreover, Defendants' position if adopted would undermine the NVRA's statutory objectives and congressional intent.

The only courts that have decided this question have held that an applicant's failure to complete a voter information form does not constitute a declination "in writing" of voter registration or otherwise relieve a VRA of providing a voter registration form to the applicant. *Valdez v. Squier*, 676 F.3d 935, 943-47 (10th Cir. 2012), *aff'g Valdez v. Herrera*, 2010 U.S. Dist. LEXIS 142209 (D.N.M. Dec. 21, 2010); *see also Ga. State Conference of the NAACP v. Kemp*, 841 F. Supp. 2d 1320, 1332-33 (N.D. Ga. 2012) (if Georgia interprets a blank response on a voter information form as declining voter registration and does not provide the applicant a voter registration form, that policy would "likely run[] afoul of Section 7"). This Court should likewise conclude that DHHS's policy violates the NVRA because DHHS does not provide a voter registration form to all persons who should receive it.

5

*A. Principles of Statutory Interpretation*

The starting point for statutory interpretation is the statute itself. *See Dodd v. United States*, 545 U.S. 353, 357 (2005). The Court "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Id.* (quoting *Connecticut Nat'l Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). When not defined by the statute, terms should be "accorded their plain and ordinary meaning, which can be deduced through reference sources such as general usage dictionaries." *UMG Recordings, Inc. v. Shelter Capital Partners*, 667 F.3d 1022, 1041 (9th Cir. 2011). Dictionaries provide courts guidance on the meaning of words considered plain and obvious, in addition to those that are ambiguous. *See, e.g., Dodd*, 545 U.S. at 358 (dictionary meaning of "if" considered).

In addition, a statute should be interpreted "such that all its language is given effect, and none of it is rendered superfluous." *UMG Recordings, Inc.*, 667 F.3d at 1041; *see Lyon v. Chase Bank USA*, 656 F.3d 877, 890 (9th Cir. 2011) (effect should be given to every word Congress used); *TRW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (text should be construed so that no word or phrase is rendered superfluous). Further, courts "start with the premise that 'the words of a statute must read in their context and with a view to their place in the overall statutory scheme.'" *Lyon*, 656 F.3d at 890 (quoting *Am. Bankers Ass'n v. Gould*, 412 F.3d 1081, 1086 (9th Cir. 2005)). The "goal in interpreting a statute is to understand the statute 'as a symmetrical and coherent regulatory scheme' and to 'fit, if possible, all parts into a . . . harmonious whole.'" *Lyon*, 656 F.3d at 890 (quoting *Am. Bankers Ass'n*, 412 F.3d at 1086).

When statutory text is ambiguous, legislative history may provide guidance on Congress's intended meaning of the challenged phrase. *See Tides v. Boeing Co.*, 644 F.3d 809, 814 (9th Cir. 2011).

*B. Section 7 Requires VRAs to Provide Applicants a Voter Registration Form Unless the Applicant Declines Voter Registration "In Writing."*

Subparagraph 5(a)(6)(A) of the NVRA governs the circumstances under which DHHS must distribute voter registration forms. Under its plain language, subparagraph 5(a)(6)(A) mandates that DHHS "shall" provide a voter registration form to an applicant during a qualifying event "unless the applicant, in writing, declines to register to vote." 42 U.S.C. § 1973gg-5(a)(6)(A). While the NVRA

does not define the phrase "in writing," the plain or ordinary meaning of that phrase is "[t]he state or condition of having been written or penned; written form." Oxford English Dictionary, Online Edition, 2012, *http://www.oed.com/view/Entry/230775?rskey=uSqrlW&result=2&isAdvanced=false#eid14009491* (last visited September 4, 2012). A failure to record any word or notation is therefore not a response "in writing" under the dictionary definition. The *absence* of a written notation on a voter information form is not a declination in writing, any more than it is an acceptance in writing.

As the Tenth Circuit noted, Congress nowhere indicated that it intended the phrase "in writing" as used in subparagraph 5(a)(6)(A) to mean anything other than its ordinary definition. *Valdez*, 676 F.3d at 945-46. Thus, unless an applicant has affirmatively opted out of voter registration in written form, DHHS must provide the applicant a voter registration form and its policy to the contrary violates subparagraph 5(a)(6)(A).

*C. An Applicant's Failure to Complete a Voter Information Form Does Not Constitute a Declination "In Writing" of a Voter Registration Form Under Section 7.*

Congress used specific, different language in 42 U.S.C. § 1973gg-5(a)(6)(A), (B), and (C) to address the distinct content of the voter registration form and the voter information form, and a VRA's obligations regarding these forms. Subparagraph 5(a)(6)(A) states that a VRA "shall" distribute a voter registration form to an applicant during a qualifying event unless the applicant, "in writing, declines to register to vote." 42 U.S.C. § 1973gg-5(a)(6)(A). Subparagraph 5(a)(6)(B) specifies the text of a voter information form and explains to applicants the consequences that apply at that moment, when applicants are engaged in a qualifying event with the VRA. Giving meaning to all statutory text, an applicant's failure to complete a voter information form does not constitute a declination, in writing, to register to vote for purposes of subparagraph 5(a)(6)(A). *Valdez*, 676 F.3d at 947.

The voter information form includes the query, "[i]f you are not registered to vote where you live now, would you like to apply to register to vote *here today*?" and boxes to check "yes" or "no." 42 U.S.C. § 1973gg-5(a)(6)(B)(i) and (iii) (emphasis added). Subparagraph 5(a)(6)(B)(iii) explains that

7

"failure to check either box [is] deemed to constitute a declination to register for purposes of subparagraph (C)," under which a VRA must assist an applicant in completing a voter registration form, "unless the applicant refuses such assistance." 42 U.S.C. § 1973gg-5(a)(6)(B)(iii) and (a)(6)(C). That assistance is available when the applicant has contact with the VRA. The capitalized sentence of subparagraph 5(a)(6)(B)(iii) states that an applicant who does not indicate a preference on the voter information form has declined to register to vote *at this time*. The phrases "at this time" and "here today" focus on the applicant's opportunity to register to vote at the moment she has contact with the VRA, just as the opportunity to receive a VRA's assistance occurs when the applicant interacts with the VRA. Thus, failure to indicate a response on the voter information form is a declination to register "at this time" and a declination of a VRA's assistance, at that time.

The temporal limitations "here today" and "at this time" are included in subparagraph 5(a)(6)(B) and the information form, yet are not included in subparagraph 5(a)(6)(A)'s command that an applicant must receive a registration form "unless the applicant, in writing, declines to register to vote." Thus, as the Tenth Circuit concluded, "If an applicant is passive, i.e. does not check either the "YES" or "NO" box on the [information form] and thereby indicate his or her intent in writing, [the VRA] must, in accordance with the mandate of subsection (A), still provide him or her with a voter registration form, but is relieved from providing the applicant with assistance in completing that form." *Valdez*, 676 F.3d at 947.

*D. Defendants' Arguments In Support of Their Policy Misconstrue and Ignore the Statutory Text of Section 7.*

Defendants argue that under subparagraph 5(a)(6)(B)(iii), failure to complete a voter information form constitutes a declination of both a voter registration form and assistance in completing the form. Opp. at 19-20. This interpretation, however, would render superfluous the text in subparagraph 5(a)(6)(B)(iii) stating that "failure to check either box [is] deemed to constitute a declination to register for purposes of subparagraph (C)," under which VRAs must provide assistance in completing a voter registration form "unless the applicant refuses such assistance." 42 U.S.C. § 1973gg-5(a)(6)(B)(iii) and (C). If an applicant, by leaving a voter information form blank, is deemed to have declined a voter

8

registration form, the applicant plainly has no need for assistance in completing the form. Hence, Defendants' interpretation would obviate any basis for the text in subparagraph 5(a)(6)(B)(iii) indicating that failure to complete a voter information form constitutes a declination of a VRA's assistance in completing a registration form.

Further, nothing in subparagraph 5(a)(6)(B)(iii) qualifies the requirement of subparagraph 5(a)(6)(A) that a VRA distribute a voter registration form during each qualifying event, unless the applicant declines voter registration "in writing." Congress expressly stated in subparagraph 5(a)(6)(B) that failure to check either box is deemed a declination of a VRA's assistance in completing a voter registration form. 42 U.S.C. § 1973gg-5(a)(6)(B)(iii). Had Congress likewise intended a blank form to constitute a declination "in writing" for purposes of subparagraph 5(a)(6)(A), it would have so indicated. *Valdez*, 676 F.3d at 946.

Defendants also argue that their interpretation of subparagraph 5(a)(6)(B)(iii) does not render the phrases "at this time" and "here today" superfluous because an applicant who declines a voter registration form by leaving a voter information form blank may choose to register to vote when returning to the VRA's office to renew or recertify benefits. Opp. at 18. This interpretation should be rejected out of hand as it assumes, erroneously, that applicants will necessarily engage in a subsequent qualifying event and receive an additional voter registration opportunity at that time. In addition, by implying that applicants may only register to vote during a qualifying event, Defendants' argument ignores language in Section 7 indicating that applicants may receive a voter registration form and complete it in private without a VRA's assistance. Voter information forms must state that applicants "may fill out the application form in private," thus contemplating that some applicants may complete a voter registration application outside of the qualifying event. 42 U.S.C. § 1973gg-5(a)(6)(B)(iv); *see Valdez*, 676 F.3d at 947 ("[A]n applicant who chooses not to register to vote 'at that time' might still be interested in receiving a mail voter registration form and completing it at another time and/or location."). Likewise, the forms must apprise applicants that they may file a complaint based on any perceived interference of their "right

to privacy in deciding whether to register or in applying to register to vote." 42 U.S.C. § 1973gg-5(a)(6)(B)(v).

Subparagraph 5(a)(4)(A)(iii) and subsection 5(d), which require VRAs to accept completed registration forms and transmit them to the appropriate election official within a certain time period, further undermine Defendants' position. These provisions require VRAs to make themselves available to collect completed voter registration forms but do not mandate the collection of all such forms or require applicants to submit completed registration forms to VRAs. *See* 42 U.S.C. § 1973gg-5(a)(4)(A)(iii) and (d). Instead, Section 7 assumes that some applicants, subsequent to the qualifying event and receipt of a voter registration form, will complete the registration form in private and independently transmit it to an election official.[4] Accordingly, the phrases "at this time" and "here today" in subparagraph 5(a)(6)(B)(iii) should be interpreted to mean that an applicant's failure to complete a voter information form declines voter registration and assistance while the applicant is present in the VRA's office, but does not release the VRA from its obligation under subparagraph 5(a)(6)(A) to provide the applicant a voter registration form.

Finally, Defendants argue that if a blank voter information form is not deemed a declination of a voter registration form under subparagraph 5(a)(6)(B)(iii) on the ground that the applicant has only declined to register "at that time," it would lead to the absurd result of requiring VRAs to provide all applicants with a voter registration form, including those who check "no" on a voter information form. Opp. at 18-19. This argument, however, ignores the plain language of subparagraph 5(a)(6)(A), which provides that VRAs need not distribute a voter registration form when an applicant declines, in a written form, to register to vote. 42 U.S.C. § 1973gg-5(a)(6)(B); *see Valdez*, 676 F.3d at 947 ("if an applicant checks the "NO" box on the information form, he or she would be deemed to have declined, in writing, the opportunity to receive a voter registration form and [VRAs] would thus be relieved, under the

---

[4] The legislative history explains that an applicant may transmit a completed voter registration application directly to the appropriate county or state election official, rather than returning it to the agency for transmittal. H. R. Rep. No. 103-9, at 13 (1993).

language of subsection (A), from providing the application with a voter registration form").

   *E. The NVRA's Objectives and Legislative History Support the Conclusion That DHHS's Policy Violates Section 7.*

Even if the text or statutory structure of Section 7 were ambiguous or inconsistent, this Court may consider the NVRA's legislative history to see if it provides guidance on the intended interpretation. *See Tides*, 644 F.3d at 814. In fact, the NVRA's purposes and its legislative history further demonstrate that DHHS's policy is contrary to the terms and objectives of the NVRA.

Two primary objectives of the NVRA are to "establish procedures that will increase the number of eligible citizens who register to vote" and "enhance[] the participation" of eligible voters by expanding the opportunities for voter registration. *See* 42 U.S.C. § 1973gg(b)(1)-(2), 42 U.S.C. §§ 1973gg-3-1973gg-5; H.R. Conf. Rep. No. 103-66, at 15-16 (1993) (H. Conf. Rep. 66). The Conference Committee resolved the House and Senate's disagreement on whether state agencies that provide public assistance should be designated mandatory or voluntary VRAs in favor of mandatory designation. *See* H. Conf. Rep. 66 at 18-19. The Conference Committee concluded that a primary purpose of expanding voter registration opportunities would be unmet if these agencies were not mandatory VRAs. *See* H. Conf. Rep. 66 at 19. A substantial percentage of eligible voters seek and receive public services, do not drive, and often have no other contact with public agencies; thus, these agencies are a primary avenue for voter registration for many citizens. *See id.*

At the same time, Congress was concerned about the potential for intimidation by public officials, whether real or perceived by applicants for public benefits. *See* H. Conf. Rep. 66 at 19. Thus, the Conference Committee added a provision to address the prohibition on intimidation by VRA officials. *See* 42 U.S.C. § 1973gg-5(a)(5)(D); H. Conf. Rep. 66 at 19. Significantly, Congress also modified subparagraph 5(a)(6)(B), which originally referred to a VRA's voluntary obligation to provide a form that would accompany the voter registration form, to require distribution of the voter information form and to specify its content. *See* H. Conf. Rep. 66 at 19-20. In recognition of the applicant's potential fear and discomfort, Congress explained:

11

the [information form] is intended to deal with concerns raised about the inclusion of certain agencies in an agency-based registration program and the possibility of intimidation or coercion. Concern was expressed that in agencies that provide benefits, staff might suggest that registering to vote could have some bearing on the availability of services or benefits provided by that agency. In addition to the provisions in the House bill relating to coercion and intimidation, [subparagraph B] includes specific provisions to address that situation.

*Id.*

An applicant for services may be embarrassed or have other reasons that would inhibit her interest in registering to vote at a VRA, or receiving assistance from a VRA representative. That same applicant, however, may feel comfortable completing a voter registration form at a later time, in her home, or somewhere away from the perceived, conspicuous eye of an agency that is determining her eligibility for public benefits. Thus, there is a significant purpose underlying the voter information form and subparagraph 5(a)(6)(B)'s focus on an offer of assistance at the time the applicant is in contact with the VRA, and its notice to the applicant that the opportunity to register extends beyond that moment should she wish to complete the voter registration form "in private," and at another time. 42 U.S.C. § 1973gg-5(a)(6)(B)(iv). Because there is no time limit on completing the registration form, an individual may well decide she does not want to register at the VRA "today," but still wants the voter registration form to take home or elsewhere to complete. Allowing an applicant's failure to respond on the voter information form, which may be due to ambivalence, confusion or other concerns, to constitute a declination of a registration form is contrary to the statutory goals of expanding and maximizing opportunities for voter registration.

In sum, Congress made clear that designated VRAs must provide applicants who engage in a qualifying event a voter registration form, except when the applicant affirmatively, in writing, states she does not want to register to vote. The statutory mandate that expands opportunities for voter registration is unduly and unlawfully restricted in Nevada if an individual will only receive a voter registration form by affirmatively requesting the same.

12

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that this Court find the Nevada Department of Health & Human Services' policy of treating an applicant's blank voter information form as a declination of a voter registration form to be in violation of Section 7 of the NVRA.

Date: September 4, 2012

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

DANIEL G. BOGDEN
United States Attorney
District of Nevada

/s/ Elizabeth S. Westfall
T. CHRISTIAN HERREN, JR.
MEREDITH BELL-PLATTS
ELIZABETH S. WESTFALL (D.C. Bar # 458792)
Attorneys, Voting Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
NWB 7202
Washington, D.C.  20530
Telephone:  (202) 305-7766
Facsimile:  (202) 307-3961

GREG ADDINGTON
Assistant United States Attorney
(Bar No. 6875)
United States Attorney's Office
100 West Liberty
Suite 600
Reno, NV 89501
Telephone:  (775) 784-5438

## CERTIFICATE OF SERVICE

This is to certify that I have on this day electronically filed the foregoing STATEMENT OF INTEREST OF THE UNITED STATES with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all parties in this matter via electronic notification or otherwise. This 4th day of September 2012.

/s/ Greg Addington
GREG ADDINGTON
Assistant United States Attorney