# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| NATIONAL COUNCIL OF LA RAZA, LAS VEGAS BRANCH OF THE NAACP (BRANCH 1111), and RENO-SPARKS BRANCH OF THE NAACP (BRANCH 1112),<br><br>    Plaintiffs,<br><br>v.<br><br>BARBARA K. CEGAVSKE, *in her official capacity as Secretary of State of the State of Nevada; and* RICHARD WHITLEY, *in his official capacity as Director of the Department of Health & Human Services of the State of Nevada,*<br><br>    Defendants. | Case No. 3:12-cv-00316-MMD-VPC<br><br>**Stipulation and [Proposed] Order** |

## STIPULATION AND ORDER

Pursuant to the Settlement Agreement entered into on March 11, 2016 (the "Agreement," attached as Exhibit A) among the National Council of La Raza, Las Vegas Branch of the NAACP (BRANCH 1111), and Reno-Sparks Branch of the NAACP (BRANCH 1112) (collectively "Plaintiffs") and Barbara Cegavske (as successor to Ross Miller), in her official capacity as Secretary of State, and Richard Whitley (as successor to Michael Willden), in his official capacity as Director of the Department of Health & Human Services (collectively "Defendants"), Plaintiffs and Defendants hereby stipulate as follows, subject to approval of the Court:

1. Based on the settlement of the case, all pending deadlines and hearing dates are vacated and this case is administratively closed for statistical purposes pending further order of the Court.

2.   This Court has and shall retain jurisdiction over this matter to enforce the Agreement entered into between the parties, the terms of which are incorporated herein by reference.

3.   This Court shall retain jurisdiction to decide an application for attorney fees and costs pursuant to 52 U.S.C. § 20510(c), which shall be filed in accordance with a schedule to be agreed upon by the parties.  The deadline for motions for attorney's fees set forth in Local Rule 54-16(a) is superseded by this order and shall not apply.  The parties shall file their proposed schedule no later than March 18, 2016.

4.   Upon the later of (a) the conclusion of the Term of the Agreement or (b) entry of a final, non-appealable order in any enforcement proceeding under Section XI of the Agreement, this action shall be dismissed with prejudice.

ATTORNEY GENERAL

_____s/ W. Chris Wicker_____
W. Chris Wicker (Bar # 1037)
WOODBURN & WEDGE
Sierra Plaza
6100 Neil Road, Suite 500
Reno, Nevada 89511-1149
(775) 688-3000
wwicker@woodburnandwedge.com

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York New York 10036-6797
(212) 698-3822
neil.steiner@dechert.com

Stuart Naifeh†
Scott Novakowski*
DEMOS
220 Fifth Avenue, 2nd Floor
New York, NY 10001
(212) 633-1405
snaifeh@demos.org
snovakowski@demos.org

By : ___s/ Lori M. Story_____
Lori M. Story
Senior Deputy Attorney General
100 N. Carson Street
Carson City, NV 89701
(775) 684-1114
lstory@ag.nv.gov

*Attorney for Defendants*

Robert A. Kengle*
Brendan Downes†
LAWYERS' COMMITTEE FOR
    CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
(202) 662-8600
bkengle@lawyerscommittee.org
bdownes@lawyerscommittee.org

Sarah Brannon*
Michelle Rupp*
PROJECT VOTE
805 15th Street NW, Ste. 250
Washington, DC 20005
(202) 546-4173
sbrannon@projectvote.org
mrupp@projectvote.org

Bradford M. Berry†
Anson Asaka*
NAACP
4805 Mt. Hope Drive
Baltimore MD 21215
aasaka@naacpnet.org

*Attorneys for Plaintiffs*

*admitted *pro hac vice*

†*pro hac vice* admission pending or to be sought

14th
SO ORDERED this ___ day of March 2016.

BY THE COURT:

_____
MIRANDA M. DU
U.S. DISTRICT JUDGE

## EXHIBIT TO STIPULATION AND ORDER

EXHIBIT A:   Settlement Agreement

EXHIBIT A

EXHIBIT A

*EXECUTION COPY*

## SETTLEMENT AGREEMENT

## I.     INTRODUCTION

National Council of La Raza, Las Vegas Branch of the NAACP (BRANCH 1111), and Reno-Sparks Branch of the NAACP (BRANCH 1112) (collectively, "Plaintiffs"), through their undersigned counsel, filed a Complaint in this action on June 11, 2012 alleging violations of Section 7 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20506, by Barbara Cegavske (as successor to Ross Miller), in her official capacity as Secretary of State, and Richard Whitley (as successor to Michael Willden), in his official capacity as Director of the Department of Health & Human Services (collectively, "Defendants"). The Plaintiffs and Defendants (together, the "Parties") now desire to resolve this action without further litigation and expense. Plaintiffs allege systemic past and ongoing violations of Section 7 of the NVRA and have sought declaratory and injunctive relief from the Court. The Defendants deny any and all liability. By entering into this Settlement Agreement, Defendants do not admit any liability or any violation of the NVRA or any other law, and Plaintiffs do not admit that Defendants have a valid defense to the allegations of Plaintiffs' Complaint. Accordingly, the Parties agree to the following terms in full and final resolution of Plaintiffs' claims. Pursuant to the terms of this Settlement Agreement, the Defendants shall implement and maintain the procedures and practices set forth in Sections II through VIII, below. Except where otherwise indicated, these procedures and practices shall be implemented immediately upon execution of the Agreement. The Defendants' agreement to implement these procedures and practices is not and shall not be interpreted as an acknowledgment that any of these particular procedures and practices are not already in place.  Defendants represent and warrant that the obligations undertaken pursuant to this Agreement are in accordance with all applicable state and federal laws and regulations.

## II.    DEFINITIONS

   A. "Covered Transaction" means those transactions identified in 52 U.S.C. § 20506(a)(6)(A), i.e. applications, recertifications, renewals, and changes of address, whether in-person or remotely, as applicable, including but not limited to via the telephone, facsimile, mail, or electronically.

   B. "Days" means calendar days.  If an action must take place within a certain number of days and the deadline would fall on a weekend or holiday, it is sufficient to take the required action on the first business day after the weekend or holiday.

   C. "DHHS" means the Nevada Department of Health and Human Services, and includes, without limitation, its offices, including local agencies, agents, employees, and Third Party Contractors providing Covered Transactions, as well as attorneys, trustees, investigators, representatives, officers, contractors, and consultants of any of them.

   D. "Local Agency Offices" means all local offices overseen or operated by DHHS that provide Public Assistance Benefits through Covered Transactions, including any employees, agents, and Third Party Contractors, and their agents and employees.

*EXECUTION COPY*

E. "Local Election Official" means all county clerks, all city clerks or all county election departments, including the officers, agents, employees and representatives of the same.

F. "NVRA" means the National Voter Registration Act of 1993, 52 U.S.C. § 20501 *et seq.*

G. "Public Assistance Benefits" means those benefits that are subject to Section 7 of the NVRA as set forth by the United States Department of Justice guidance *NVRA Questions and Answers*, currently available at http://www.justice.gov/crt/about/vot/nvra/nvra_faq.php, which are administered by DHHS, including, but not limited to: the Supplemental Nutrition Assistance Program (SNAP, formerly the food-stamp program), the Special Supplemental Nutrition Program for Women, Infants, and Children (WIC), the Temporary Assistance for Needy Families (TANF) program (formerly the Aid to Families with Dependent Children or AFDC program), the Medicaid program (including Medicaid – MAABP, Medical Assistance to the Aged, Blind and Disabled), the Child Care and Development Program, and the Energy Assistance Program.

H. "Public Assistance Client" or "Client" means each person who engaged in a Covered Transaction with a DHHS Office covered by Section 7 of the NVRA, or who does so in the future.

I. "Remote Transaction" means any interaction wherein a Client applies for Public Assistance Benefits, renews or recertifies for Public Assistance Benefits, or submits a change of address via the telephone, facsimile, mail, or electronically.

J. "Secretary" means Defendant Barbara Cegavske and her successors in their official capacities as Secretary of State of Nevada, including the attorneys, agents, trustees, investigators, representatives, employees, officers, contractors, and consultants of any of them.

K. "Section 7" means Section 7 of the NVRA, 52 U.S.C. § 20506.

L. "Third Party Contractors" means any third parties with which DHHS contracts that provide Covered Transactions.

M. "Voter Preference/Notice Form" means the form required pursuant to Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(B), that includes boxes for Public Assistance Clients to check to indicate whether the applicant would like to register or declines to register to vote and/or any version of a form asking Public Assistance Clients if they would like to register to vote.

*EXECUTION COPY*

N. "Voter Preference Question" means the following question, mandated by Section 7 of the NVRA, 52 U.S.C. § 20506(a)(6)(B)(i): "If you are not registered to vote where you live now, would you like to apply to register to vote here today?"

O. "Voter Registration Form" or "Voter Registration Application" means the mail voter registration application form described in Section 9 of the NVRA, 52 U.S.C. § 20508(a)(2), or the equivalent Nevada voter registration application form, that shall be coded to indicate that DHHS is the source of the application.

## III.    STAFFING

A. Secretary of State NVRA Coordinator

To the extent that it has not already done so, the Secretary shall designate a staff position whose duties include being the "State NVRA Coordinator" and shall notify Plaintiffs' counsel as to the identity of that individual within fourteen days after execution of this Agreement and upon any change of the identity of the State NVRA Coordinator during the term of this Agreement. The State NVRA Coordinator shall coordinate and oversee statewide compliance with the requirements of Section 7 of the NVRA. The State NVRA Coordinator's responsibilities shall include:

1) providing support and guidance (including technical expertise) to DHHS, including the DHHS NVRA Coordinators (defined below), to assist them in identifying what is required to implement and comply with Section 7 of the NVRA, state implementing law, regulations, and policy, and the provisions of this Agreement;

2) serving as a liaison among the Secretary, DHHS and Local Election Officials regarding NVRA compliance at DHHS offices;

3) timely review of the DHHS reports on NVRA compliance (completed pursuant to Section VI.B below);

4) collecting from Local Election Officials and compiling, on a monthly basis, the number and the sources of Voter Registration Applications received by Local Election Officials that are attributable to DHHS;

5) prompt reporting of suspected or known compliance problems at particular DHHS offices to the DHHS NVRA Coordinator and the relevant Local NVRA Site Coordinator(s) (defined below) for offices not in compliance with this Agreement or Section 7 of the NVRA;

6) consulting regularly with the DHHS NVRA Coordinator regarding office-level compliance and any corrective action plans; and

7) ensuring that DHHS offices have an adequate supply of coded Voter Registration Applications.

B. DHHS NVRA Coordinator

To the extent that it has not already done so, DHHS shall designate a "DHHS NVRA Coordinator" to ensure implementation of Section 7 of the NVRA within DHHS, to

monitor compliance with Section 7 of the NVRA and this Agreement statewide, and to assist DHHS Local Agency Offices in identifying and finding solutions to problems. DHHS shall notify Plaintiffs' counsel as to the identity of that individual within fourteen days after execution of the Agreement and upon any change of the identity of the DHHS NVRA Coordinator during the term of this Agreement. The DHHS NVRA Coordinator's responsibilities shall include:

1) maintaining an up-to-date list of Local NVRA Site Coordinators (defined below). If the DHHS NVRA Coordinator learns at any time that a Local NVRA Site Coordinator position is unfilled in any DHHS or Local Agency Office, DHHS shall appoint an individual to fill that position within fifteen days of the date of discovery;

2) maintaining familiarity with all DHHS voter registration requirements, procedures, and materials such that (s)he is qualified and prepared to assist Local NVRA Site Coordinators with questions or challenges related to the agency's administration of NVRA-compliant voter registration services;

3) coordinating and overseeing compliance with the requirements of Section 7 and the provisions of this Agreement. Such coordination shall involve regular communication with the Secretary's State NVRA Coordinator and the Local NVRA Site Coordinators to ensure that DHHS, including Third Party Contractors, fully complies with the requirements of Section 7 and the provisions of this Agreement;

4) conducting reviews of compliance with Section 7 and the provisions of this Agreement at DHHS Local Agency Offices as discussed below (see Section VI);

5) providing corrective action guidance to Local NVRA Site Coordinators for employees and/or offices not in compliance with Section 7 or the requirements of this Agreement;

6) reviewing the DHHS monthly reports that are created pursuant to Section VI.B;

7) ensuring that DHHS conducts the NVRA education and training program, as prescribed in Section IV below; and

8) monitoring requests for resupply of coded Voter Registration Applications and Voter Preference/Notice Forms from Local NVRA Coordinators to the Secretary of State.

C. To the extent that it has not already done so, DHHS shall also designate a "Local NVRA Site Coordinator" for each Local Agency Office to ensure implementation of and compliance with Section 7. DHHS shall notify Plaintiffs' counsel as to the identities of these individuals within fourteen days after execution of the Agreement and upon any change of the identity of a Local NVRA Site Coordinator during the term of this Agreement. Plaintiffs and their counsel will not contact any persons so identified at any time and will keep this information confidential. Local NVRA Site Coordinators' responsibilities shall include:

1) reading and understanding all DHHS voter registration requirements, procedures, and materials as applicable to his/her Local Agency Office;

*EXECUTION COPY*

2) implementing corrective actions, as directed by the DHHS NVRA Coordinator (see Sections VI.E-G, below);

3) coordinating and overseeing implementation and compliance with the requirements of Section 7 and the provisions of this Agreement at the Local Agency Offices, including providing support, guidance and ensuring that timely training to DHHS employees at their respective offices takes place regarding proper DHHS NVRA procedures;

4) answering questions from the public relating to voter registration at Local Agency Offices;

5) ensuring that signs are posted in prominent locations in their Local Agency Offices and advising the public of the right to register to vote at that site (see Section VII);

6) ensuring that Local Agency Offices transmit all filled-out Voter Registration Applications, along with the Voter Registration Materials Transmittal Form, to the appropriate Local Election Officials pursuant to the time frames specified by Nevada Revised Statute § 293.504(4);

7) ensuring that his or her assigned offices have an adequate supply of coded Voter Registration Applications for distribution in the manner required by this Agreement, either (1) through access to an electronic version of the Voter Registration Application that may be printed on demand, or (2) by maintaining a supply of paper Voter Registration Applications equal to two times the average monthly traffic of Public Assistance Clients at that office and notifying the Secretary of State NVRA Coordinator and DHHS NVRA Coordinator when supplies are low.  In the event of option 2, the Local NVRA Site Coordinator must still ensure that the office has Voter Registration Applications available for anyone who comes to the office and wishes to register to vote;

8) compiling and transmitting all data for the monthly reports (described in Section VI below) to the DHHS NVRA Coordinator; and

9) any other responsibilities imposed by Nevada Administrative Code § 293.4105(2) or other relevant Nevada law or regulation, to the extent not listed above.

In addition to the foregoing responsibilities in this Section, Local NVRA Coordinators shall be responsible for ensuring that the appropriate supervisory employees at each Local Agency Office implement their responsibilities as they pertain to NVRA compliance.

## IV.    TRAINING

A. All training materials shall reflect the requirements of Section 7, related Nevada state laws and regulations, and this Agreement, including, but not limited to, identifying public assistance programs subject to the NVRA and informing employees that, for each Covered Transaction, the NVRA requires them to:

1) distribute a Voter Registration Applications, unless a Public Assistance Client specifically declines a Voter Registration Application in writing.  In cases where a

*EXECUTION COPY*

Public Assistance Client leaves the Voter Preference Question blank, a Voter Registration Application shall be distributed;

2) provide a Voter Preference/Notice form;

3) provide the same level of assistance to all Clients in completing Voter Registration Application forms as is provided with respect to every other service or application for benefits (unless the Client specifically refuses such assistance), including providing language assistance and ensuring that any Client who requests assistance has filled out all required information and signed the Voter Registration Application;

4) accept filled-out Voter Registration Application forms from Clients; and

5) transmit each filled-out Voter Registration Application to the appropriate Local Election Official within the time frame prescribed by Nevada Revised Statute § 293.504(4).

Plaintiffs have reviewed Defendants' current training materials and provided comments and suggestions to Defendants. Defendants will provide revised training materials to Plaintiffs' counsel within thirty days of the execution of this Agreement.

The Secretary shall update or create new training materials when needed, and provide proposed updates to Plaintiffs' counsel for review and comment at least fourteen days prior to distribution of the updated materials. Updated materials shall be provided in a "redline" format indicating areas of recommended changes. Plaintiffs' counsel will provide any comments or suggestions on the training materials to Defendants within seven days of receipt, and Defendants will consider those suggestions in good faith.

Upon request by the Defendants, Plaintiffs will provide materials that they possess that may assist in the development of any training materials.

B. The Secretary's State NVRA Coordinator shall be responsible for assisting in the development of training materials for DHHS and for providing election-related expertise, guidance and support to DHHS related to the training process (e.g., to communicate any changes in federal or state law that relate to voter registration at Public Assistance offices, or to address any problems with NVRA compliance, as determined by the procedures set forth in Section V of this Agreement).

C. DHHS shall continue to provide electronic, on-demand NVRA training for all Local NVRA Site Coordinators and all pertinent DHHS employees, who shall be required to take the training twice per year. To the extent that it is not already in place, DHHS shall arrange a method by which completion of the training will be memorialized. All newly appointed Local NVRA Site Coordinators and all newly-hired DHHS employees shall receive training equivalent to the semi-annual NVRA training program as soon as practicable after their appointment or hire if the Local NVRA Site Coordinator or employee has not previously received the semi-annual training. Records of these trainings shall be provided to Plaintiffs' counsel twice a year during the term of this Agreement.

*EXECUTION COPY*

D. DHHS and the Secretary shall maintain the NVRA training materials and other NVRA support information in an electronic format that is easily accessible by Local NVRA Site Coordinators and employees engaging in Covered Transactions.

E. Any Third Party Contractors conducting any Covered Transaction related to Public Assistance Benefits pursuant to an agreement with the DHHS shall likewise be provided the training materials created in accordance with Section IV.

## V.   DISTRIBUTION OF VOTER PREFERENCE/NOTICE FORM AND VOTER REGISTRATION APPLICATIONS TO PUBLIC ASSISTANCE CLIENTS

A. Generally.  DHHS shall distribute a coded Voter Registration Application with each application for Public Assistance Benefits and with each renewal, recertification, redetermination, or change of address related to such Benefits, except in cases where a Public Assistance Client declines in writing to receive a Voter Registration Application by checking "no" to the Voter Preference Question. When a Public Assistance Client answers the Voter Preference Question "yes," or when the Client leaves the Voter Preference Question blank, a coded Voter Registration Application will be distributed during the course of that Covered Transaction, for all remote and in-person transactions. During in-person Covered Transactions this means that the Voter Registration Application will be provided immediately.

B. Coded Voter Registration Application Forms.  All paper and PDF/electronic file Voter Registration Applications distributed to Public Assistance Clients by DHHS, whether during an in-person Covered Transaction or provided as a result of a Remote Transaction, shall be coded to indicate that DHHS is the source of the application, unless the application is downloaded by a DHHS Client from the Secretary of State's Voter Registration site. Coding is currently achieved through the application number, but may be changed to a different method, such as the use of bar codes, if all Parties agree.  The Secretary agrees to explore technologies that would enable coding of Online Voter Registration Applications that originate with a Covered Transaction.

C. DHHS Forms.   All applications for benefits, applications for renewal and recertification, and change of address forms shall include the Voter Preference/Notice Form, including the Voter Preference Question, as an integrated part of the DHHS forms.  All applications for benefits, applications for renewal and recertification, and change of address forms used by the Division of Welfare and Supportive Services shall also include a coded Voter Registration Application as an integrated part of the DHHS forms.

D. All regulations, policies and procedures regarding agency-based voter registration promulgated by the Secretary or DHHS, including *inter alia* the "Nevada DWSS TANF and SNAP Application Processing Policy § 146(7)", "Nevada DWSS Child Care Policy Manual § 123.4", and "Nevada WIC Policy § CR-11", shall direct that a Voter Registration Application be provided to every Client who answers "yes" to or leaves blank the Voter Preference Question.

*EXECUTION COPY*

In any event, the practice of distributing Voter Registration Applications—including distribution when a Client leaves the Voter Preference Question blank—shall begin immediately upon execution, if not already occurring, in accordance with the terms set by this Agreement.

E.  Distribution of Voter Preference/Notice Forms and Voter Registration Applications During Remote Transactions

1.  To the extent that DHHS conducts a Covered Transaction with a Public Assistance Client exclusively via phone, for example, a change of address reported by a Client to the Customer Service Center via phone, DHHS shall mail to all such Clients a Voter Preference/Notice Form and a Voter Registration Application. The Voter Preference/Notice Form can be incorporated into the cover letter sent with the Voter Registration Application.

2.  DHHS shall include a Voter Registration Application and Voter Preference/Notice Form whenever it transmits to a Client documents used to conduct a Covered Transaction by mail or other remote means not expressly provided for elsewhere in this Agreement.

3.  DHHS shall include the Voter Registration Application and Voter Preference/Notice Form within any downloadable or electronically accessible Public Assistance Benefits applications, renewal or recertification forms, or any change of address forms.

4.  When a Client submits a change of address to DHHS by mail and checks "yes" in response to the Voter Preference Question or leaves the Voter Preference Question blank, DHHS shall promptly mail a Voter Registration Application to the Client, to the extent that a Voter Registration Application was not already provided as part of the change of address form.

5.  The Voter Preference/Notice Form shall be incorporated into any Covered Transaction conducted electronically, whether through the ACCESS online portal or otherwise.

If the Client checks "yes" in response to the Voter Preference Question, the Client will be immediately directed to a screen on which the Client may click a link to complete the Online Voter Registration Application, with the screen indicating that a Nevada DMV-issued driver's license or identification card is required to register to vote online. Regardless of the Client's response to the Voter Preference Question, beginning no later than 60 days from the Execution Date of this Agreement, DHHS shall mail a coded Voter Registration Application to all Clients conducting a Covered Transaction electronically.

*EXECUTION COPY*

    6. Any Voter Registration Application mailed pursuant to this subsection shall be coded to indicate that DHHS is the source of the Application.

F.   Regardless of what method is used, when a Voter Registration Application is mailed as a result of a Covered Transaction, it must be accompanied by an explanatory notice containing, at a minimum, 1) a statement of why the Client is receiving the mailing; 2) a statement that Clients may obtain assistance in completing the Voter Registration Application by going to a DHHS Local Agency Office or by calling a telephone number operated by DHHS or the Secretary; and 3) a statement that the Client may submit a completed Voter Registration Application to Local Election Officials or to a DHHS Local Agency Office.

G.  Assistance

    1. DHHS and its employees shall provide the same degree of assistance with Voter Registration Applications as is provided for DHHS's own forms, unless declined by the Client. Such assistance shall include, but is not limited to, providing language assistance and reviewing Voter Registration Applications to ensure that all required information—including the signature box—is complete. During in-person Covered Transactions, the review must take place before the Client leaves the office.

    2. An explanatory letter regarding the availability of assistance, as prescribed in Section V.F above, shall be included every time a Voter Registration Application is mailed to a Public Assistance Client.

    3. The online Voter Registration Application shall include a statement indicating the Client may obtain assistance in completing the Voter Registration Application by calling a telephone number operated by the Secretary.

H.  Maintenance of Voter Preference Question responses – All responses to the Voter Preference Question will be maintained in each Client's file for thirty-seven months after receipt, and DHHS shall provide to the Secretary of State access to all such voter preference question responses.

I.   Transmission:  Completed Voter Registration Applications shall be transmitted to Local Election Officials not later than 10 days after the date of acceptance. Completed Voter Registration Applications shall be transmitted daily if accepted during the two weeks immediately preceding the fifth Sunday before an election, as required by Nevada Revised Statute § 293.504(4).  If the completed Voter Registration Application is accepted within 5 days before the last day for registration to vote in an election, the Application shall be transmitted no later than 5 days after the date of acceptance.  Each Local Agency Office shall include a Voter Registration Material Transmittal Form whenever sending completed Voter Registration Applications to Local Election Officials.

*EXECUTION COPY*

## VI.    MONITORING AND OVERSIGHT

A.  Tracking

1. Effective 60 days after the Execution Date of this Agreement, DHHS or DHHS Local Agency Offices shall collect the following data by calendar month and Local Agency Office:

1) The total number of Covered Transactions, including in-person and Remote Transactions, by type (application, renewal/recertification/redetermination, or change of address);

2) The number of Voter Registration Applications transmitted by DHHS to Local Election Officials;

3) The total numbers of each response to the Voter Preference Question ("Yes," "No," and blank; phone-only transactions in which an answer to the Voter Preference Question is not provided shall be counted as "blank.") for all Covered Transactions

4) The numbers of each response to the Voter Preference Question ("Yes," "No," and blank) for Covered Transactions conducted through ACCESS.

2. Within 30 days of the implementation of Section VI.A, DHHS shall notify Plaintiffs' counsel, in writing, of the means by which each of these data points are to be collected.  For example, responses to the Voter Preference Question for in-person transactions are tracked on a tally sheet by DHHS case managers.  DHHS will notify Plaintiffs' counsel of any change in how the data are collected within 30 days of implementation of the change.

3. The Local Election Officials shall review the Voter Registration Materials Transmittal Form received with all completed Voter Registration Application and confirm that the totals provided on the Transmittal Form are consistent with the total number of completed Voter Registration Applications actually received.

4. The Secretary or the State NVRA Coordinator shall collect from Local Election Officials or from the statewide voter registration database, the number of Voter Registration Applications received by Local Election Officials coded to indicate that the Voter Registration Application originated with DHHS.  If this is not currently occurring, within 30 days of the Execution Date of this Agreement, the Secretary of State shall being collecting this data.

B.  Effective the date of this Agreement, on a monthly basis, the DHHS NVRA Coordinator shall provide to the Secretary and Plaintiffs' counsel a report containing the following data, aggregated by DHHS Local Agency Office, for the preceding month:

1) The total number of Covered Transactions, including in-person and Remote Transactions, by type (application, renewal/recertification/redetermination, or change of address);

2) The number of Voter Registration Applications transmitted by DHHS to Local Election Officials;

3) The total numbers of each response to the Voter Preference Question ("Yes," "No," and blank; phone-only transactions in which an answer to the Voter Preference Question is not provided shall be counted as "blank.") for all Covered Transactions

4) The numbers of each response to the Voter Preference Question ("Yes," "No," and blank) for Covered Transactions conducted through ACCESS.

The data shall be provided to the Secretary and Plaintiffs' counsel no later than the 15th of the month following that for which it has been collected, e.g. data for the month of September shall be provided by October 15. If the 15th of the month falls on a weekend or holiday, these reports shall be provided on the next business day thereafter.

The data shall be provided to Plaintiffs' counsel in an Excel spreadsheet format or a type-written electronic tabular format that can be easily converted to Excel, and submitted via email to Plaintiffs' counsel.

C. Effective the date of this Agreement, on a monthly basis, the Secretary shall provide to Plaintiffs' counsel a report containing: (i) the number of Voter Registration Applications received by Local Election Officials that are attributable to DHHS (i.e., are coded to reflect they originated with a DHHS office), aggregated by county; and (ii) a general summary of efforts undertaken by the Secretary and/or DHHS to advance Section 7 compliance or promote the provision of voter registration services at DHHS.

D. Data Analysis

1. DHHS - On a monthly basis, the DHHS NVRA Coordinator shall analyze the data collected in Section VI.A by:

1) comparing the number of Voter Registration Applications transmitted to Local Election Officials by each DHHS Local Agency Office for the current month with that Office's number of Voter Registration Applications transmitted to Local Election Officials in prior months;

2) creating a ratio for each DHHS Local Agency Office that compares the number of Voter Registration Applications transmitted to Local Election Officials by that Office with the total number of Covered Transactions in that Office;

3) comparing the ratio of transmitted Voter Registration Applications to total Covered Transactions for each Office with that Office's previous ratio; and

4) comparing the ratio of transmitted Voter Registration Applications to total Covered Transactions across all Offices.

Where a potential compliance problem is identified for an office, the DHHS NVRA Coordinator shall contact the appropriate office to investigate the cause. Potential problems to be investigated or reviewed include, but are not limited to: (i) offices exhibiting unusually low ratios of transmitted Voter Registration Applications to Covered Transactions as compared to their ratios during previous

reporting periods or to the ratios across all offices in the state; (ii) offices exhibiting potential compliance problems based on information obtained from a site visit, any other auditing procedure, office managers or supervisors, or other appropriate sources; and (iii) offices that are the subject of a complaint from the public regarding the provision of voter registration.  If the potential compliance problems are based on (i) above and there are more than three such offices during the month, DHHS shall contact the three offices showing the most significant compliance issues within 30 days to investigate the cause, and in succeeding months, will review the remaining offices from the list of more than three.

2. Secretary of State – On a monthly basis, the Secretary's State NVRA Coordinator shall analyze the data collected by the Secretary in Section VI.A.4 and that provided by DHHS in Section VI.B by:

1) comparing the number of Voter Registration Applications received by Local Election Officials that are attributable to DHHS for each county for the current month with that  county's number of Voter Registration Applications received by Local Election Officials that are attributable to DHHS in prior months;

2) creating a ratio that compares the statewide number of Voter Registration Applications received by Local Election Officials that are attributable to DHHS to the statewide number of total Covered Transactions conducted by DHHS, including all remote and in-person applications, recertifications/renewals/redeterminations, and changes of address (provided by DHHS pursuant to Section VI.B above); and

3) comparing the ratio of statewide Voter Registration Applications received by Local Election Officials that are attributable to DHHS to the statewide number of total Covered Transactions conducted by DHHS to that same ratio in prior months.

Plaintiffs' counsel may provide the Secretary with a list of up to two offices per quarter that Plaintiffs believe require further review and possible corrective action, with an explanation of the reason for review.  In such a case, the Secretary shall promptly notify DHHS, which shall conduct a review of any such offices to determine whether corrective measures are needed and shall communicate the results to Plaintiffs' counsel within thirty days after the conclusion of the review.

E.   Individual Corrective Actions

If a DHHS employee or Third Party Contractor determines, at any point, that a Client did not receive a Voter Registration Application as required under Section 7 of the NVRA, Nevada implementing statutes and regulations, or this Agreement, the employee shall notify the Local NVRA Site Coordinator immediately.  Within five days of receiving such notice, the Local NVRA Site Coordinator shall send a remedial mailing to the Client that includes a Voter Registration Application and explanatory notice.  The explanatory notice shall advise the Client that (i) (s)he is receiving the mailing because (s)he may not have been offered the opportunity to

*EXECUTION COPY*

apply to register to vote, (ii) that the mailing does not affect the individual's registration status if the individual is already registered to vote at the individual's current address, (iii) that receipt of the mailing does not indicate any information about the individual's eligibility to register to vote, and (iv) that assistance in completing the form is available from DHHS employees and/or Third Party Contractors. DHHS shall maintain a copy of the letter.

F.   Additional Compliance Measures

DHHS shall ensure that any complaints made by the public regarding the provision of voter registration by Local Agency Offices shall be forwarded to the Local NVRA Site Coordinator and also forwarded to the Secretary, subject to confidentiality laws.

DHHS shall take appropriate action, subject to personnel laws, when it is determined that a particular office or individual employee(s) at a particular office is/are not complying with Section 7 or the provisions of this Agreement, or otherwise are in need of further action(s) to assure compliance.

By December 15 of each year, the State NVRA Coordinator shall provide the DHHS NVRA Coordinator with a complete list of voter registration deadlines for the coming year that includes the two-week period prior to each deadline during which Voter Registration Applications must be transmitted daily.  The State NVRA Coordinator shall notify the DHHS NVRA Coordinator promptly of any additional registration deadlines as they are established throughout the year for federal elections. The DHHS NVRA Coordinators shall distribute the list to the Local NVRA Site Coordinators, respectively, who shall in turn distribute the list to all personnel in their Local Agency Office who interact with Clients during Covered Transactions.

If Local Election Officials find problems with the total number of Voter Registration Applications received as compared to the totals provided on the Voter Registration Materials Transmittal Form, they shall contact the Local Agency Coordinator to inquire about the discrepancy and report these findings to the Secretary of State NVRA Coordinator and the DHHS NVRA Coordinator.

G.   Personnel Policy

DHHS NVRA Coordinators and pertinent DHHS employees shall be periodically reviewed for compliance with the NVRA's requirements, including through annual employee performance reviews as appropriate.  Any potential corrective action, if needed, shall be made in accordance with the DHHS's existing procedures.

H.   Compliance Reviews

DHHS shall monitor compliance with Section 7 by integrating NVRA compliance into DHHS regular review procedures for Local Agency Offices.  DHHS will develop a checklist of items to include in on-site reviews, including checking for visible

*EXECUTION COPY*

signage indicating the availability of voter registration (see Section VII), checking for the availability of voter registration applications (see Section V), and checking to make sure that DHHS employees and Third Party Contractors are offering voter registration opportunities to Clients in accordance with Section 7 and this Agreement (see Section V).  Such reviews shall take place at each Local Agency Office no less than once every calendar year.

## VII.   DHHS OFFICE SIGNAGE

Within fourteen days of the execution of this agreement, each DHHS office shall prominently post a sign or signs pursuant to Nevada Revised Statute § 293.504 and Nevada Administrative Code § 293.410 advising the public of the opportunity to register to vote when an individual submits a benefits application, recertification, renewal, or a change of address and encouraging and providing instructions for them to do so.

## VIII.   THIRD-PARTY CONTRACTORS/PROVIDERS:

To the extent that third-party entities, pursuant to future agreements with DHHS, contract to provide covered services under section 7 of the NVRA which are administered by DHHS, said agreements will contain language mandating compliance with the terms of the NVRA and applicable state law related to voter registration.  DHHS will promptly notify Plaintiffs' counsel of any legal issues that arise that would prohibit a Third Party Contractor from complying with Section or this Agreement.

## IX.   ATTORNEYS' FEES AND EXPENSES

Plaintiffs shall be entitled to their reasonable attorneys' fees and expenses incurred in this litigation as determined by the Court.  Nothing in this section shall affect the Parties' right to seek reasonable attorneys' fees under Section XI below.

## X.   CONFORMING VOTER REGISTRATION POLICIES & REGULATIONS

Any and all written policies that govern DHHS employee interactions with clients or reference voter registration shall be reviewed and modified to incorporate the requirements set forth in Sections III, IV, V, VI, VII, and VIII of this Agreement.

## XI.   ENFORCEMENT

A. The United States District Court for the District of Nevada shall have continuing jurisdiction to enforce the terms of this Agreement, pursuant to an order substantially in the form attached to this Agreement as Exhibit A.

B. If any Party believes that another Party is in breach of this Agreement, or any other dispute arises under this Agreement, either Party shall, within 30 days of the Party becoming aware of any asserted breach or dispute, notify the other Party in writing of the asserted breach or dispute. The Parties will work cooperatively and make best

*EXECUTION COPY*

efforts to promptly remedy the identified breach or dispute without judicial intervention. If reasonable good faith efforts to resolve the asserted breach or dispute fail, or a period of time exceeding 60 days from the date of notice has passed without resolution, the Parties may pursue any and all legal remedies available as per this Section.

C. If the Court grants a motion for relief, the prevailing party in any such motion for relief shall be entitled to recover its reasonable attorneys' fees and costs, as determined by the Court.

## XII.   NOTICES

For purposes of this AGREEMENT, notices shall be sent by first class mail and email to the following:

For Barbara Cegavske, to:

| | |
|---|---|
| Wayne Thorley | Lori M. Story |
| Deputy of Elections | Senior Deputy Attorney General |
| 103 N. Carson Street, Suite 3 | 100 N. Carson Street |
| Carson City, NV  89701 | Carson City, NV  89701 |
| wthorley@ag.nv.gov | lstory@ag.nv.gov |

For Richard Whitley, to:

| | |
|---|---|
| Richard Whitley | Linda C. Anderson |
| Director | Chief Deputy Attorney General |
| Nevada DHHS | Nevada Attorney General's Office |
| 4126 Technology Way, Suite 100 | 555 East Washington Ave. |
| Carson City, NV  89706-2009 | Las Vegas, Nevada  89101 |
| rwhitley@dhhs.nv.gov | landerson@ag.nv.gov |

For National Council of La Raza, Reno-Sparks Branch of the NAACP, and Las Vegas Branch of the NAACP, to:

| | |
|---|---|
| Neil Steiner | Lisa Danetz |
| Dechert LLP | Legal Director |
| 1095 Avenue of the Americas | Demos |
| New York, NY 10036-6797 | 220 Fifth Avenue, 2nd Floor |
| neil.steiner@dechert.com | New York, NY 10001 |
| | ldanetz@demos.org |
| | |
| Sarah Brannon | Ezra Rosenberg |
| Director, Public Agency | Co-Director, Voting Rights Project |
| Voter Registration Project | Lawyers' Committee for Civil Rights |
| Project Vote | Under Law |

*EXECUTION COPY*

|  |  |
|---|---|
| 1420 K Street, Ste. 700 | 1401 New York Ave NW, Ste. 400 |
| Washington, DC 20005 | Washington, DC 20005 |
| sbrannon@projectvote.org | erosenberg@lawyerscommittee.org |

Notice shall be considered received five business days after mailing to the address provided.

## XIII.  DISMISSAL AND RELEASE

A.  Effective upon execution of this Agreement by all Parties, all pending deadlines and hearing dates shall be vacated, and this action shall be administratively closed for statistical purposes.

B.  Effective upon the dismissal of this action pursuant to this Section, and during the period in which Defendants remain in compliance with this Agreement, Plaintiffs release Defendants from any and all claims and causes of action asserted in the Complaint, or that could have been asserted in the Complaint, arising at any time up to the effective date of such dismissal.  Nothing herein shall limit Plaintiffs' rights or remedies under Section XI ("Enforcement") above.

C.  In the event that the Court determines there has been any material breach of this Agreement by Defendants, any and all such claims and causes of action shall be restored and the release under Section XII.B shall no longer apply.

D.  Upon the later of (a) the conclusion of the Term of this Agreement or (b) entry of a final, non-appealable order in any enforcement proceeding under Section XI("Enforcement") above, this action shall be dismissed with prejudice.

## XIV.  TERM

This Agreement shall become effective on the date of execution and shall remain in effect for three years.

## XV.  EXECUTION IN COUNTERPARTS

This Agreement may be executed in two or more counterparts, each of which shall constitute an original instrument and all of which together shall constitute one and the same Agreement.

*EXECUTION COPY*

## XVI.  BINDING EFFECT

The persons signing this Agreement represent that they have the authority to enter into this Agreement on behalf of the respective parties they represent and that this Agreement shall be binding upon the Parties.

Nevada Secretary of State

Date: 3/11/16

Barbara Cegavske

Approved as to form for Secretary of State

Date: 3/11/16

Senior Deputy Attorney General

Nevada Division of Health and Human Services

Date: 3/11/16

Richard Whitley, Director

Approved as to form for Department of Health and Human Services

Date: 3/11/16

Chief Deputy Attorney General

*EXECUTION COPY*

National Council of La Raza

_____  Date: ____3/11/16____

Clarissa Martinez De Castro, Deputy Vice President

*EXECUTION COPY*

Las Vegas Branch of the NAACP (BRANCH 1111)

_____   Date: ___3-11-2016___
Roxann McCoy, President

*EXECUTION COPY*

Reno-Sparks Branch of the NAACP (BRANCH 1112)

Patricia Y. Gallimore, President _____ Date: _____3/10/2016_____

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

NATIONAL COUNCIL OF LA
RAZA, LAS VEGAS BRANCH OF THE
NAACP (BRANCH 1111), and RENO-
SPARKS BRANCH OF THE NAACP
(BRANCH 1112),

        Plaintiffs,

    v.

    BARBARA K. CEGAVSKE, *in her
official capacity as Secretary of State of the
State of Nevada; and* RICHARD
WHITLEY, *in his official capacity as
Director of the Department of Health &
Human Services of the State of Nevada,*

        Defendants.

Case No. 3:12-cv-00316-MMD-VPC

**Stipulation and [~~Proposed~~] Order**

## STIPULATION AND ORDER

Pursuant to the Settlement Agreement entered into on March 11, 2016 (the "Agreement," attached as Exhibit A) among the National Council of La Raza, Las Vegas Branch of the NAACP (BRANCH 1111), and Reno-Sparks Branch of the NAACP (BRANCH 1112) (collectively "Plaintiffs") and Barbara Cegavske (as successor to Ross Miller), in her official capacity as Secretary of State, and Richard Whitley (as successor to Michael Willden), in his official capacity as Director of the Department of Health & Human Services (collectively "Defendants"), Plaintiffs and Defendants hereby stipulate as follows, subject to approval of the Court:

    1.  Based on the settlement of the case, all pending deadlines and hearing dates are vacated and this case is administratively closed for statistical purposes pending further order of the Court.

2.   This Court has and shall retain jurisdiction over this matter to enforce the Agreement entered into between the parties, the terms of which are incorporated herein by reference.

3.   This Court shall retain jurisdiction to decide an application for attorney fees and costs pursuant to 52 U.S.C. § 20510(c), which shall be filed in accordance with a schedule to be agreed upon by the parties.  The deadline for motions for attorney's fees set forth in Local Rule 54-16(a) is superseded by this order and shall not apply.  The parties shall file their proposed schedule no later than March 18, 2016.

4.   Upon the later of (a) the conclusion of the Term of the Agreement or (b) entry of a final, non-appealable order in any enforcement proceeding under Section XI of the Agreement, this action shall be dismissed with prejudice.

ATTORNEY GENERAL


By : _____

_____

| | |
|---|---|
| W. Chris Wicker (Bar # 1037) | Lori M. Story |
| WOODBURN & WEDGE | Senior Deputy Attorney General |
| Sierra Plaza | 100 N. Carson Street |
| 6100 Neil Road, Suite 500 | Carson City, NV 89701 |
| Reno, Nevada 89511-1149 | (775) 684-1114 |
| (775) 688-3000 | lstory@ag.nv.gov |
| wwicker@woodburnandwedge.com | |

*Attorney for Defendants*

Neil Steiner*
DECHERT LLP
1095 Avenue of the Americas
New York New York 10036-6797
(212) 698-3822
neil.steiner@dechert.com

Stuart Naifeh†
Scott Novakowski*
DEMOS
220 Fifth Avenue, 2nd Floor
New York, NY 10001
(212) 633-1405
snaifeh@demos.org
snovakowski@demos.org

Robert A. Kengle*
Brendan Downes†
LAWYERS' COMMITTEE FOR
    CIVIL RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
(202) 662-8600
bkengle@lawyerscommittee.org
bdownes@lawyerscommittee.org

Sarah Brannon*
Michelle Rupp*
PROJECT VOTE
805 15th Street NW, Ste. 250
Washington, DC 20005
(202) 546-4173
sbrannon@projectvote.org
mrupp@projectvote.org

Bradford M. Berry†
Anson Asaka*
NAACP
4805 Mt. Hope Drive
Baltimore MD 21215
aasaka@naacpnet.org

*Attorneys for Plaintiffs*

*admitted *pro hac vice*

†*pro hac vice* admission pending or to be sought

SO ORDERED this ___ day of March 2016.

BY THE COURT:

_____
MIRANDA M. DU
U.S. DISTRICT JUDGE