UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NATIONAL COUNCIL OF LA RAZA, *et al*,<br><br>Plaintiffs,<br><br>v.<br><br>BARBARA K. CEGAVSKE, in her official capacity as Secretary of the State of Nevada; RICHARD WHITLEY, in his official capacity as Director of the Department of Health and Human Services of the State of Nevada,<br><br>Defendants. | Case No. 3:12-cv-00316-MMD-VPC<br><br>ORDER |

**I.   INTRODUCTION**

Before the Court is Plaintiffs' Motion to Set Attorneys' Fees and Costs ("Motion"), brought pursuant to the National Voter Registration Act of 1993, 52 U.S.C. § 20510 ("NVRA"). (ECF No. 117.) Defendants oppose the Motion, arguing that Plaintiffs are not entitled to fees and costs, or alternatively, that the amount they seek is unreasonable. (ECF No. 120.) The Court has reviewed these documents as well as Plaintiffs' reply. (ECF No. 121.) Plaintiffs' Motion is granted in the manner discussed below.

**II.   BACKGROUND**

Plaintiffs' Motion comes at the end of a lengthy and atypical journey through the federal courts. Relevant to this Order, Plaintiffs filed suit against Defendants on June 11,

2012, alleging violations of the NVRA. (ECF No. 1.) Defendants filed a Motion to Dismiss on July 3, 2012. (ECF No. 22.) A few days later Plaintiffs filed a Motion for Preliminary Injunction. (ECF No. 24.) Before briefing was completed on the preliminary injunction motion, the parties, who were engaging in settlement discussions, stipulated to withdraw both motions. (ECF Nos. 60, 61.) The Court did not address the stipulation, but subsequently, on December 19, 2012, issued an order dismissing the case. The order was based on Defendants' withdrawn Motion to Dismiss, as well as a *sua sponte* determination that Plaintiffs lacked standing. (ECF No. 70.) The Court also denied a number of unopposed *pro hac vice* applications from attorneys representing Plaintiffs. (ECF No. 57.)

The parties ceased ongoing settlement discussions, and Plaintiffs appealed the dismissal. (ECF No. 71; ECF No. 117-1 ¶ 6.) Though Defendants had withdrawn their Motion to Dismiss, they defended the dismissal on appeal, both through briefing and oral argument. On September 3, 2015, the Ninth Circuit issued an opinion reversing dismissal, remanding the case for further proceedings, and reassigning the case to a different district court judge. (ECF No. 80.)

After the case was remanded, the parties resumed settlement negotiations. They executed an agreement ("Settlement Agreement") on March 11, 2016, and filed the same with the Court on March 14, 2016. (ECF Nos. 113-14.) The Settlement Agreement requires the Secretary of State and the Director of Health and Human Services to take certain steps to ensure compliance with the NVRA, including designating coordinators to oversee and report on compliance, developing training materials, and collecting and compiling data on their efforts. (*Id.*) The Settlement Agreement gives this Court continuing jurisdiction to enforce its terms. (*Id.*)

**III.    STANDARD GOVERNING AWARD OF FEES**

The parties seeking attorney's fees must establish that the fees are reasonable. The district court "has a great deal of discretion in determining the reasonable of the fee." *Prison Legal News v. Schwarzenegger,* 608 F.3d 446, 453 (9th Cir. 2010).

///

Reasonable attorney's fees are based on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *See Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1119 (9th Cir. 2000). The court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." *Hensley*, 461 U.S. at 433. Next, the court decides whether to adjust the lodestar calculation based on an evaluation of the factors articulated in *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975), which have not been subsumed in the lodestar calculation. *See Fischer*, 214 F.3d at 1119 (citation omitted).

> The factors the Ninth Circuit set forth in *Kerr* are:
> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr*, 526 F.2d at 70. Factors one through five are subsumed in the lodestar calculation. *See Morales v. City of San Rafael*, 96 F.3d 359, 364 n. 9 (9th Cir. 1996). Further, the sixth factor, whether the fee is fixed or contingent, *may not* be considered in the lodestar calculation. *See Davis v. City & Cnty. of S.F.*, 976 F.2d 1536, 1549 (9th Cir. 1992), *vacated in part on other grounds*, 984 F.2d 345 (9th Cir. 1993). Once calculated, the "lodestar" is presumptively reasonable. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 728 (1987). Finally, only in "rare and exceptional cases" should a court adjust the lodestar figure. *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal quotations omitted). *See also Fischer*, 214 F.3d at 1119 n. 4 (stating that the lodestar figure should only be adjusted in rare and exceptional cases).

**IV.   ANALYSIS**

    **A.   Whether Plaintiffs Are Entitled to Fees**

As a threshold matter, Defendants argue that Plaintiffs are not entitled to fees at all. Defendants argue that the Settlement Agreement does not guarantee an award of fees

and costs and that Plaintiffs are not the "prevailing party" under the NVRA. (ECF No. 120 at 9-10.)

The Settlement Agreement states: "Plaintiffs shall be entitled to their reasonable attorneys' fees and expenses incurred in this litigation as determined by the Court." (ECF No. 114 at 19.) Plaintiffs contend this provision means the parties agree that they are entitled to fees and the Court need only determine the *amount*. Defendants contend the provision means that the Court must determine whether Plaintiffs are entitled to fees in the first place, and, if so, determine the appropriate amount. At the very least, Defendants argue that the term is ambiguous and must be construed against Plaintiffs, who drafted the language.

The Court need not address Defendants' ambiguity argument because it is clear that Plaintiffs are entitled to fees and costs as the prevailing party under the NVRA. To be considered a prevailing party for fee shifting purposes, a party must secure a court order effectuating a change in the legal relationship between it and the opposing party. *Saint John's Organic Farm v. Gem Cty. Mosquito Abatement Dist.*, 574 F.3d 1054, 1058 (9th Cir. 2009) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001)). The judicially enforceable relief must be "on the merits of [the party's] claim." *Id.* (citing *Richard S. v. Dep't of Dev. Servs. of Cal.*, 317 F.3d 1080, 1086 (9th Cir.2003)).

The Settlement Agreement is judicially enforceable. It explicitly grants this Court "continuing jurisdiction to enforce the terms of this Agreement." (ECF No. 114 at 19.) The language of the Settlement Agreement is similar to the language approved by the *Saint John's* court. 574 F.3d at 1059. The Settlement Agreement also changes the legal relationship between the parties. It grants both parties an enforceable right to enforce its terms and collect attorneys' fees and costs if successful. (*Id.* at 19-20.) Therefore, even assuming that the Court must jump through the additional analytic hoop of determining that Plaintiffs are statutorily entitled to fees before determining that they are contractually entitled, the Court reaches the same conclusion: Plaintiffs clearly are entitled to their fees.

**B.   Whether Plaintiffs Are Entitled to Fees Incurred on Appeal**

**1.   Ninth Circuit Rule 39-1.6**

Defendants next argue that Plaintiffs forfeited any right to fees incurred on appeal because they failed to comply with Ninth Circuit Rule 39-1.6(a), which states:

> Absent a statutory provision to the contrary, a request for attorneys' fees shall be filed no later than 14 days after the expiration of the period within which a petition for rehearing may be filed, unless a timely petition for rehearing is filed. If a timely petition for rehearing is filed, the request for attorneys fees shall be filed no later than 14 days after the Court's disposition of the petition.

Indeed, the Ninth Circuit has held that this rule has teeth and reversed an attorney fees award where a party sought to recover fees in the district court for the time spent successfully defending a grant of summary judgment on their behalf in the Ninth Circuit. *Cummings v. Connell*, 402 F.3d 936, 948 (9th Cir. 2005), amended, No. 03-17095, 2005 WL 1154321 (9th Cir. May 17, 2005). However, Plaintiffs correctly respond that they did not become a "prevailing party" — and therefore legally entitled to fees at all — until after the Settlement Agreement was approved. Their case, then, is unlike *Cummings* and like *Yamada v. Snipes*, 786 F.3d 1182, 1210 (9th Cir. 2015), where the Ninth Circuit distinguished *Cummings* and held that a party who only becomes entitled to fees *after* the time identified in Rule 39-1.6 can seek fees incurred in connection with the appeal in the district court. For these reasons, Ninth Circuit Rule 39-1.6 is no impediment to Plaintiffs' Motion.

**2.   Unique Circumstances**

Defendants additionally argue that the parties should bear their own costs and fees for the appeal because Defendants withdrew their Motion to Dismiss and did not opposed Plaintiffs' *pro hac vice* applications. (ECF No 120 at 13.) Defendants emphasize that they specifically did not have a stake in the outcome of any decision about Plaintiffs' *pro hac vice* applications and should not be on the hook for the hours Plaintiffs spent litigating the district court's denials. (*Id.* at 14.) Defendants do not provide any authority which would support carving up the litigation in the way they propose. Rather, they seem to rely on the

general argument that including such fees would be unreasonable, and perhaps inequitable, because such fees were not attributable to their conduct during litigation. This argument is misplaced because the purpose of fee shifting provisions "are not … to punish defendants. Attorney's fees are awarded to encourage meritorious civil rights actions by ensuring reasonable compensation for victorious plaintiffs' attorneys." *Corder v. Gates*, 947 F.2d 374, 383 (9th Cir.1991).

A "reasonable" fee is a fee that is "sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). Here, Plaintiffs settled a multi-year civil rights case after a successful appeal. An award of fees in this instance says nothing about Defendants' conduct in litigation, it simply compensates Plaintiffs' counsel for the time spent zealously representing their clients' interests. Moreover, a *sua sponte* dismissal for lack of standing is not uncommon in litigation; in fact, it is one of the many risks a plaintiff must consider when bringing suit. In order to ensure that capable attorneys are induced to take on meritorious civil rights cases, fee shifting provisions must account for the uncertainty inherent in litigation. Consequently, plaintiffs, acting as private attorney generals, should be compensated for successfully litigating these types of cases so long as the fees incurred satisfy the reasonableness standard. For these reasons, the Court finds that the time Plaintiffs spent appealing the district court's adverse rulings is compensable.

**C. Lodestar**

**1. Rate**

Plaintiffs argue that they are entitled to the rates charged in their home markets because local counsel were unavailable. (ECF No. 117 at 22.) In support of their argument Plaintiffs provide a declaration from local counsel W. Chris Wicker, wherein he asserts that few if any local attorneys have experience with Section 7 of the NVRA. (ECF No. 117-9 ¶¶ 5,6.) Defendants argue that Plaintiffs are entitled to only the local rates, which are

///

///

significantly lower or, if they are entitled to the home market rates, the Court should apply the *Laffey Matrix* rather than the rates proposed by Plaintiffs.[1] (ECF No. 120 at 22.)

Typically, prevailing parties are entitled to fees based on the prevailing market rates in the forum district. However, if local counsel is unavailable because the case requires a unique amount of "experience, expertise, or specialization" attorneys may recover fees based on the prevailing rates in their home markets. *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)

Wicker's declaration addresses only a small section of the relevant legal market, and is not sufficient to demonstrate that local counsel were unavailable in this instance. Plaintiffs' Complaint alleges the events giving rise to the claim occurred in Clark County, Washoe County, and Carson City. (ECF No. 1 ¶ 5.) LR IA 1-8(a) allows a case to be filed in the unofficial division where the action arose. Consequently, this case could also have been filed in the unofficial southern division, which includes the significantly larger Las Vegas legal market. It is not self-evident that there are no attorneys in that market who were capable of bringing this case, and Plaintiffs have not provided the Court any further evidence upon which to base such a conclusion. Therefore, the Court finds that Plaintiffs have not shown that local counsel was unavailable, and the Court will apply local rates.

Plaintiffs propose local rates ranging from $125 to $400 an hour for the various attorneys, paralegals, and investigators who contributed to the litigation. (ECF No. 117 at 12-13.) Defendants quibble with the amount of proof offered to support these local rates (Wicker's Declaration) and specifically with the rates charged by Jocelyn Hanamirian and Negin Hadaghian. (ECF No. 120 at 23.)

"Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases ... are satisfactory evidence of the prevailing market rate." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008). The Court finds that the rates identified by Wicker are generally in line with rates

---

[1] The *Laffey Matrix* is a document prepared by the Civil Division of the U.S. Attorney's Office for the District of Columbia for purposes of calculating fee awards.

7

the Court has approved in the past. *See, e.g.*, *Plaza Bank v. Alan Green Family Trust*, No. 2:11-CV-00130-MMD, 2013 WL 1759580, at *2 (D. Nev. Apr. 24, 2013) (finding rates of $425-$475 for partners and $250-$325 for associates reasonable). The Court agrees that Hadaghian's rate should be adjusted downwards based on her status as a law clerk rather than licensed attorney, and will calculate her time at a rate of $150 rather than $200 per hour (resulting in a total reduction of $2,429.00). However, according to the declaration of Neil Steiner, Hanamirian is a 2012 law school graduate, and therefore her proposed rate is appropriate. (ECF No. 117-1 ¶ 16.)

### 2. Hours Expended

Plaintiffs submit that they have expended more than 2,028 hours of attorney and paralegal time on this case. (ECF No. 117 at 11.) Applying local market rates, and factoring in a 10% reduction for duplication and inefficiency, Plaintiffs calculate a total fees award of $589,032.90. (*Id.* at 12.) Defendants argue that the amount of hours Plaintiffs have proposed is unreasonable and excessive, that Plaintiffs have "over lawyered" the case, and that they have engaged in block billing.

#### a. Excessive Hours and Number of Lawyers

Defendants argue that the number of hours Plaintiffs have proposed is unreasonable and a result of needless overstaffing. (ECF No. 120 at 18.) Specifically, Defendants point to the amount of time Plaintiffs have billed for tasks like telephone conferencing with co-counsel, strategy meetings, emails, and reviewing each other's' filings. (*Id.* at 24-25.)

The Court agrees that assembling a team of attorneys from two private law firms and three public interest organizations spanning Boston, New York, Washington DC, and Reno is not the most efficient way to litigate a case, even a complicated one. On one hand, Plaintiffs' legal team is comprised of an impressive team of seasoned litigators and civil rights experts — the type of team a plaintiff might put together if money were no object. On the other hand, money is *the* object of Plaintiffs' motion, and the Court has a duty to

///

determine whether hours are unreasonable because of overstaffing or other redundancies. *See Hensley*, 461 U.S. at 434.

"[A] district court can impose a small reduction, no greater than 10 percent—a "haircut"—based on its exercise of discretion and without a more specific explanation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Court finds that, while Plaintiffs have voluntarily reduced their hours by 10%, a further 10% across-the-board reduction is warranted to address the inefficiencies identified by Defendants. A paying client would likely not have tolerated at least some of the billing identified by Defendants. The Court will assess the additional 10% cut before imposing the additional reductions identified below.

### b. Block Billing

Defendants point to a few examples of what they believe constitutes block billing—billing that lumps activities together and makes it difficult for the Court to determine whether the hours spent on a given activity were reasonable. Plaintiffs have not responded to Defendants' argument. A court may reduce the hours billed for block billing. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). Courts in this circuit, relying on a report by the California State Bar's Committee on Mandatory Fee Arbitration, have reduced block billed time by 20%. *See Welch*, 480 F. 3d at 948; *Banas v. Volcano Corp.*, 47 F. Supp. 3d 957, 968 (N.D. Cal. 2014). The Court agrees that in a number of instances, Plaintiffs block billed in such a way that the Court is unable to determine whether the time expended was reasonable. Therefore, the Court will impose a 20% reduction (rounded to the nearest tenth of an hour) in the following billed hours:

| Date | Attorney | Hours Billed | After Reduction |
|---|---|---|---|
| 6/13/2012 | Halavais, Jamie | 2.7 | 2.2 |
| 6/14/2012 | Halavais, Jamie | 5.7 | 4.0 |
| 7/06/2012 | Halavais, Jamie | 6.7 | 5.4 |
| 8/10/2012 | O'Gorman, Debra | 3.0 | 2.4 |
| 9/14/2012 | O'Gorman, Debra | 2.5 | 2.0 |
| 4/22/2013 | O'Gorman, Debra | 7.0 | 5.6 |

9

The total reduction for block billing amounts to $2,225, which consists of 3.5 less hours for Halavais at a rate of $350 per hour and 2.5 less hours for O'Gorman at a rate of $400 per hour.

### c. Local Counsel

Defendants argue that local counsel did not bill with the appropriate level of specificity and erroneously billed for hours spent on an unrelated case. (ECF No. 119 at 25-26.) As an initial matter, Plaintiffs have not responded to Defendants' allegation that W. Chris Wicker's billing of 1.2 hours on 7/24/2012 appears to be for an unrelated case. Therefore, the Court will discount the $480 billed for that time. The Court also agrees that Woodburn and Wedge either engaged in block billing or otherwise vague descriptions that leave the Court unable to determine whether the time expended was reasonable, and will impose a 20% reduction (rounded to the nearest tenth of an hour) for the following billed hours:

| Date | Hours Billed | After Reduction |
|---|---|---|
| 6/12/2012 | 2.2 | 1.8 |
| 7/3/2012 | 2.5 | 2.0 |
| 7/05/2012 | 2.1 | 1.7 |
| 8/14/2012 | 0.8 | 0.6 |
| 8/15/2012 | 0.8 | 0.6 |
| 1/3/2013 | 2.0 | 1.6 |
| 1/4/2013 | 1.0 | 0.8 |
| 1/17/2013 | 1.0 | 0.8 |
| 3/10/2015 | 2.5 | 2.0 |
| 3/11/2015 | 1.6 | 1.3 |
| 9/3/2015 | 2.5 | 2.0 |

The block billing and vague billing reduction amounts to 3.8 hours at a rate of $400 per hour, for a total reduction of $1,520. Adding the $480 referenced above brings the total to $2,000.

///

### D. Remaining *Kerr* Factors

Defendants argue that the *Kerr* factors not already lumped into the lodestar analysis support a downward adjustment of any fee award. Specifically, Defendants argue that the case did not involve difficult or novel questions, the success claimed by Plaintiffs is questionable, and Plaintiffs lacked a long-standing professional relationship with their clients. (ECF No 119 at 14-27.) The Court finds that the remaining relevant Kerr factors do not justify a departure from the lodestar calculation.

Even assuming, for the sake of argument, that Defendants are correct about the relative simplicity of the legal issues and nature of the relationship between Plaintiffs' attorneys and their clients, the remaining *Kerr* factors tilt in the opposite direction. Plaintiffs obtained an enforceable settlement agreement which ensures that Defendants will comply with the provisions of the NVRA, and sets out mechanisms for their clients to monitor Defendants' compliance. As discussed above, courts routinely consider this type of relief "success on the merits" in civil rights fee shifting cases. Though Defendants argue that voter registration numbers have not significantly changed due to the settlement, the first order goal of Plaintiffs' suit was to ensure the state's compliance with the NVRA, which they have. (*See* ECF No. 1 at 21-23.) Moreover, the case spanned several years and demanded a great deal of time and resources. Furthermore, the "the experience, reputation, and ability" of Plaintiffs' legal team clearly weighs in their favor under the *Kerr* analysis. The litigation team includes attorneys with significant litigation experience, including civil rights and NVRA litigation specifically. In sum, the Court concludes that the remaining *Kerr* factors do not establish the "rare and exceptional circumstances" in which a court should depart from the lodestar calculation.

### E. Summary

Based on the adjustments discussed above, the Court has determined that Plaintiffs' proposed total based on local rates ($589,032.90), should be reduced by 10% across-the-board ($58,903.29), by $2,429 for the adjustment to Hadaghian's rate, and by

an additional $4,225 based on improper billing. This produces a total fee award of $523,475.61.

**F.    Costs**

Plaintiffs also seek $27,036.34 in out of pocket expenses, including filing fees, transcript costs, legal research, travel and copying. (ECF No. 117 at 27-28.) Defendants argue that Plaintiffs failed to seeks costs associated with their appeal in a timely manner and furthermore that local rules preclude claims for costs associated with *pro hac vice* admission, travel expenses, computer research fees, and paralegal or investigative services. (ECF No. 120 at 28-29 (citing LR 54-11).) Plaintiffs respond that they are seeking fees under the NVRA's fee shifting provision, and so the local rules are inapplicable. The Court agrees.

Defendants' procedural argument fails, again, because Plaintiffs did not become entitled to fees and costs until they entered the Settlement Agreement. Furthermore, LR 54-11 lists a number of categories of costs that should "ordinarily" not be allowed. However, the Ninth Circuit has expressly allowed successful civil rights plaintiffs to collect out-of-pocket costs for a number of items under LR 54-11. *See Davis v. Mason Cty.*, 927 F.2d 1473, 1488 (9th Cir. 1991) (travel costs); *see also Woods v. Carey*, 722 F.3d 1177, 1180 n.1 (9th Cir. 2013) (noting that recoverable costs normally charged to fee-paying clients include photocopying, paralegal expenses, and travel and telephone costs.)

Because Plaintiffs' Motion is brought under the fee shifting provision of 52 U.S.C. § 20510, rather than Fed. R. Civ. P. 54(d)(1) and LR 54-1, the Court finds Defendants' argument unavailing. The costs identified by Plaintiffs are appropriate and compensable. Therefore, the Court will grant their request for $27,036.34 in out-of-pocket expenses.

**V.    CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion or reconsideration as they do not affect the outcome of the Motion.

It is therefore ordered that Plaintiffs' Motion to Set Attorney Fees and Costs (ECF No. 117) is granted consistent with the reasoning in this order. Plaintiffs are entitled to fees in the amount of $523,475.61 and costs in the amount of $27,036.34. The Clerk is directed to enter judgement in favor of Plaintiffs and close this case.

DATED THIS 21st day of June 2017.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE